16-55286

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**JACOB GREGOIRE,**

Plaintiff-Appellee,

v.

**CALIFORNIA HIGHWAY PATROL, an agency of the State of California; SERGIO FLORES,**

Defendants-Appellants.

On Appeal from the United States District Court
for the Southern District of California

No. 3:14-cv-01749-GPC-DHB
The Honorable Gonzalo P. Curiel,
United States District Judge

**APPELLANTS' OPENING BRIEF**

XAVIER BECERRA
Attorney General of California
KRISTIN G. HOGUE
Senior Assistant Attorney General
RICHARD F. WOLFE
Supervising Deputy Attorney General
DOUGLAS E. BAXTER
Deputy Attorney General
State Bar No. 201351
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 738-9567
  Fax:        (619) 645-2581
  Email:  Douglas.Baxter@doj.ca.gov
*Attorneys for Defendants - Appellants*
*California Highway Patrol and Sergio*
*Flores*

# TABLE OF CONTENTS

**Page**

Introduction .................................................................. 1

Statement Of Jurisdiction ............................................. 2

      A.    Jurisdiction of the District Court ................................... 2

      B.    Jurisdiction of the Court of Appeals ............................. 3

      C.    Timeliness of Appeal ................................................. 4

Issues Presented for Review .......................................... 4

Primary Statutory Authority ......................................... 5

Statement of the Case ................................................... 5

Statement of Facts ........................................................ 7

Events at Traffic Accident Scene Prior to Arrival of Fire Trucks ................. 7

Fire Trucks Arrived On Scene, Blocked Two Lanes, and Created What CHP Officer Colunga Considered to be a Hazard ............................. 10

Officer Flores Arrived and Determined Mr. Gregoire's Truck Was Unnecessary to Protect the Scene and Instead Posed a Hazard ................... 13

Mr. Gregoire Repeatedly Refused to Follow Orders to Move the Fire Truck That Was Causing a Hazard and Was Lawfully Arrested ............... 17

Summary of Argument .................................................. 20

Argument ...................................................................... 22

      I.    Officer Flores is Entitled to Qualified Immunity Because Mr. Gregoire Cannot Demonstrate That Officer Flores Violated Clearly Established Law in Arresting Mr. Gregoire .................................................................. 22

            A.    Standard of Review .................................................. 22

            B.    Fundamental Principles of Qualified Immunity Analysis .................................................................. 23

i

**TABLE OF CONTENTS**
**(continued)**

Page

C.    Mr. Gregoire Cannot Defeat the Second Prong of Qualified Immunity Analysis By Simply Asserting It is Clearly Established That a Warrantless Arrest Without Probable Cause is a Violation of the Fourth Amendment ...................................................... 26

D.    Officer Flores Was Not Clearly on Notice That His Scene Assessment Activities and Resulting Orders to Move the Fire Truck Were Not Lawful ................... 28

    1.    Probable Cause Analysis for Statutory Basis of Arrest ............................................................. 28

    2.    Absence of Clearly Established Law Governing Law Enforcement Officers' Assessment of Management Needs For Traffic Accident Scenes ..................................... 30

    3.    Officer Flores' Scene Analysis and Exercise of Authority ....................................................... 32

    4.    Officer Colunga's Scene Analysis and Actions ............................................................... 40

        (i)    Relevancy of Officer Colunga's Information ................................................ 40

        (ii)    Application of Officer Colunga's Observations and Actions to Determination of Lawfulness of Orders and Probable Cause to Arrest .................... 42

    5.    Officer Flores' Arrest Decision .......................... 46

II.    The District Court Also Erred In Its Determination on the First Tier of Qualified Immunity For the Unlawful Arrest Claim ....................................................................... 49

    A.    Standard of Review ....................................................... 49

ii

# TABLE OF CONTENTS
## (continued)

Page

      B.      Officer Flores Had Sufficient Probable Cause to Justify the Arrest ........................................................ 50

III.   The District Court Erred In Denying Officer Flores Qualified Immunity on Excessive Force Claim ..................... 55

IV.   Mr. Gregoire's Cause of Action For Battery is Without Merit, Because the Force Used By Officer Flores Was Reasonable and Justified ........................................... 58

V.   Mr. Gregoire's Claim Under California Civil Code Section 52.1 is Without Merit Because There Was Probable Cause for His Arrest ................................. 59

VI.   Mr. Gregoire's Claim For False Imprisonment is Without Merit, as The Arrest Was Supported By Probable Cause ....... 59

VII.  Since Officer Flores is Not Liable on the State Law Tort Claims, the State (CHP) is Also Not Liable ........................... 60

Conclusion ...................................................... 61

Statement of Related Cases ......................................... 62

Addendum of Primary Statutory Authority ............................... 63

# TABLE OF AUTHORITIES

**Page**

CASES

*Acosta v. City of Costa Mesa*
    718 F.3d 800 (9th Cir. 2013) ................................................................ 28

*Alston v. Read*
    663 F.3d 1094 (9th Cir. 2011) .............................................................. 25

*Ames v. King County, Washington*
    846 F.3d 340 (9th Cir. 2017) ................................................................ 50

*Anderson v. Creighton*
    483 U.S. 635 (1987) .............................................................................. 23

*Asgari v. City of Los Angeles*
    15 Cal. 4th 744 (1997) .......................................................................... 59

*Ashcroft v. al-Kidd*
    563 U.S. 731 (2011) .............................................................. 23, 24, 26

*Behrens v. Pelletier*
    510 U.S. 299 (1996) ................................................................................ 3

*Brown v. Ransweiler*
    171 Cal. App. 4th 516 (2009) .............................................................. 58

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*
    654 F.3d 975 (9th Cir. 2011) ................................................................ 23

*City and County of San Francisco v. Sheehan*
    ___ U.S. ___, 135 S. Ct. 1765 (2015) ................................................ 27

*Collins v. City and County of San Francisco*
    50 Cal. App. 3d 671 (1975) .................................................................. 59

# TABLE OF AUTHORITIES
## (continued)

Page

*Devenpeck v. Alford*
    543 U.S. 146 (2004)................................................................... 28

*Edson v. City of Anaheim*
    63 Cal. App. 4th 1269 (1998) .................................................. 58

*Hamilton v. City of San Diego*
    217 Cal. App. 3d 838 (1990) ................................................... 60

*Hansen v. Black*
    885 F.2d 642 (9th Cir. 1989) ................................................... 55

*Huskey v. City of San Jose*
    204 F.3d 893 (9th Cir. 2000) ................................................... 22

*In re Muhhamed C.*
    95 Cal. App. 4th 1325 (Cal. Ct. App. 2002)............................ 29

*Krainski v. Board of Regents of Nevada System of Higher Education*
    616 F.3d 963 (9th Cir. 2010) ................................................... 24

*Lacey v. Maricopa County*
    649 F.3d 1118 (9th Cir. 2011) ................................................. 24

*Miklosy v. Regents of University of California*
    44 Cal. 4th 876 (2008) ............................................................ 60

*Mitchell v. Forsyth*
    472 U.S. 511 (1985).................................................................3

*Mueller v. Auker*
    700 F.3d 1180 (9th Cir. 2012) ................................................. 27

*Mullenix v. Luna*
    577 U.S. ___, 136 S. Ct. 305 (2015) ...................................... 27

v

# TABLE OF AUTHORITIES
## (continued)

Page

*National Ass'n of Optometrists & Opticians v. Harris*
  682 F.3d 1144 (9th Cir. 2012) ................................................. 23

*Oona, R.S. v. McCaffrey*
  143 F.3d 473 (9th Cir. 1998) ................................................. 22

*Palmer v. Sanderson*
  9 F.3d 1433 (9th Cir. 1993) ................................................. 55

*Pearson v. Callahan*
  555 U.S. 223 (2009)................................................. 23, 25, 34

*People v. Ritter*
  115 Cal. App. 3d Supp. 1 (1980)................................................. 29

*Plumhoff v. Rickard*
  ___ U.S. __, 134 S. Ct. 2012 (2014) ................................................. 24, 49

*Reichle v. Howard*
  566 U.S. 658 (2012)................................................. 23

*Reynolds v. County of San Diego*
  84 F.3d 1162 (9th Cir. 1996) ................................................. 59

*Rodis v. City, County of San Francisco*
  558 F.3d 964 (9th Cir. 2009) ................................................. 22

*Saucier v. Katz*
  533 U.S. 194 (2001)................................................. 24

*Sjurset v. Button*
  810 F.3d 609 (9th Cir. 2015) ................................................. 27

*Sorrels v. McKee*
  290 F.3d 965 (9th Cir. 2002) ................................................. 25

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Bernard*
623 F.2d 551 (9th Cir. 1980) ........................................................ 42, 54

*United States v. Bertrand*
926 F.2d 838 (9th Cir. 1991) ................................................................ 41

*United States v. Ramirez*
473 F.3d 1026 (9th Cir. 2007) .............................................................. 41

*Wilkins v. City of Oakland*
350 F.3d 949 (9th Cir. 2003) ................................................................ 22

*Wilkinson v. Torres*
610 F.3d 546 (9th Cir. 2010) ................................................................ 22

**STATUTES**

United States Code, Title 28:

§ 1291 ........................................................................................................3
§ 1331 .................................................................................................... 2, 3
§ 1343 ........................................................................................................2
§ 1367 ........................................................................................................3

United States Code, Title 42:

§ 1983 .................................................................................................... 2, 5

California Government Code:

§ 815 ...................................................................................................... 60
§ 815.2 ................................................................................................. 5, 21
§ 851.2 ................................................................................................... 61
§ 815.2(b) .............................................................................................. 61

California Code of Civil Procedure:

§ 52.1 ............................................................................................... *passim*

# TABLE OF AUTHORITIES
## (continued)

**Page**

California Health and Safety Code:

§ 1798.6 ................................................................ 64
§ 1798.6(c) ...................................................... *passim*

California Penal Code:

§ 148(a) ............................................................ *passim*
§ 409.3 .............................................................. *passim*
§ 835 ............................................................... 58, 61
§ 836 .................................................................. 61
§ 836(a) ............................................................... 59
§ 847 .................................................................. 61
§ 847(b) ............................................................... 59

California Vehicle Code:

§ 2410 .............................................................. *passim*
§ 2412 ............................................................. 31, 65
§ 2800(a) .......................................................... *passim*

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Amendment IV ........................................ *passim*

**COURT RULES**

Federal Rules of Evidence:

106 ...................................................................... 39
602 ...................................................................... 38
602 ...................................................................... 53

Federal Rules of Appellate Procedure:

4(a)(1)(A) ............................................................... 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Federal Rules of Civil Procedure:

56(c)(4) ................................................................................................ 38

**INTRODUCTION**

Appellants California Highway Patrol (hereafter "the CHP") and Sergio Flores (an officer of the California Highway Patrol) respectfully submit their Opening Brief in this appeal of the District Court's Order denying Appellants' Motion for Summary Judgment based on Officer Flores' claim of entitlement to qualified immunity.

Appellee Jacob Gregoire is an Engineer with the City of Chula Vista Fire Department. Officer Flores arrested Mr. Gregoire for violating California Penal Code § 148(a) and California Vehicle Code § 2800(a) because he refused to comply with several CHP commands to move his fire engine off the busy I-805 freeway and out of the lanes of traffic. Mr. Gregoire contends he refused because the engine was necessary to protect the scene of an automobile accident and he was involved in administering medical care to the occupants of the vehicle involved in the accident. However, the undisputed material facts are that the accident was not on the freeway but was instead located out of the lanes of travel in an area protected by walls of concrete K-rails, the occupants of the traffic accident were receiving aid from other emergency medical personnel, and other fire engineers obeyed CHP commands to move their engines off the freeway. Officer Flores ordered the engine moved because it was not needed to

1

protect the accident scene, unnecessarily impeded traffic, and created a danger of secondary accidents. There are no genuine disputes of material fact on the issue of probable cause for the arrest – there was a fair probability to suspect Mr. Gregoire was violating the law.

Also there is no clearly established law addressing this type of situation so as to put a peace officer on notice that the very California statutes which give the CHP authority over traffic accident scene management could not be construed under the circumstances of this case to give an officer lawful authority to command movement of fire trucks.

Additionally, the undisputed material facts demonstrate that Officer Flores should have qualified immunity against Mr. Gregoire's claims of excessive force based on temporary handcuffing.

Mr. Gregoire's remaining state law claims for unlawful arrest under California Civil Code § 52.1, false imprisonment, and battery also fail on the undisputed material facts.

## STATEMENT OF JURISDICTION

### A. Jurisdiction of the District Court

The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, in that Mr. Gregoire's claims for alleged violations of his constitutional rights were brought under 42 U.S.C. § 1983. Also, the CHP

2

and Officer Flores removed this action from state court pursuant to 28

U.S.C. § 1331. The District Court also held supplemental jurisdiction over

Mr. Gregoire's state law claims under 28 U.S.C. § 1367.

### B.  Jurisdiction of the Court of Appeals

The CHP and Officer Flores appeal from the District Court's Order

denying a Motion for Summary Judgment that was based on Officer Flores'

claim of entitlement to qualified immunity against Mr. Gregoire's Fourth

Amendment claims for unlawful arrest and excessive force. A district

court's denial of qualified immunity is immediately appealable as a final

decision within the meaning of 28 U.S.C. § 1291. *Behrens v. Pelletier*, 510

U.S. 299, 301 (1996); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Appellants are primarily asking this Court to review the legal question of

whether Officer Flores violated clearly established law, considering those

facts which were not disputed below and accepting Mr. Gregoire's version

of genuine material facts that the District Court concluded were disputed.

After the Notice of Appeal was filed, Mr. Gregoire requested that the

District Court find the appeal frivolous. (CR 56.)[1] The District Court

disagreed. The Court explained that, while it found disputed issues of

---

[1] "CR" references the ECF trial court docket entries constituting the Court Record below.

3

material fact on the initial question of whether there had been violations of Fourth Amendment rights, it "did not address the second prong of whether the constitutional rights were clearly established." (AER 28:6-10.)[2] The District Court added, "because Defendants have raised a legal issue whether the constitutional rights were clearly established, the Court concludes that the Ninth Circuit has jurisdiction to hear the interlocutory appeal and Defendants' appeal is not frivolous." (AER 29:12-15.)

### C. Timeliness of Appeal

The District Court entered its Order denying the CHP's and Officer Flores' Motion for Summary Judgment on February 16, 2016. (AER 1-25.) The CHP and Officer Flores filed their Notice of Appeal on February 25, 2016. (AER 30-31.) Under Federal Rules of Appellate Procedure 4(a)(1)(A), such notice was timely.

### ISSUES PRESENTED FOR REVIEW

1. Should Officer Flores have been afforded qualified immunity against Mr. Gregoire's unlawful arrest/seizure claim because Mr. Gregoire cannot show that clearly established law was violated?

---

[2] "AER" references Appellants' Excerpts of Record filed in support of this Opening Brief.

2.    Did the District Court err in finding genuine disputed issues of material fact on the question of the existence of probable cause for Mr. Gregoire's arrest?

3.    Does the existence of probable cause for the arrest necessarily defeat the California Civil Code § 52.1 and false imprisonment claims?

4.    Did the District Court err in finding Officer Flores was not entitled to qualified immunity for Mr. Gregoire's excessive force claim?

5.    Does a finding of reasonable force on the excessive force claim necessarily defeat the battery claim?

6.    Does a finding that Officer Flores is not liable on the California Civil Code section 52.1, battery, and false imprisonment claims require a finding that the CHP is not liable under California Government Code section 815.2?

## PRIMARY STATUTORY AUTHORITY

Primary statutes are provided in the attached Addendum.

## STATEMENT OF THE CASE

Mr. Gregoire filed the Complaint in this action in the Superior Court of California, County of San Diego, on June 12, 2014.  (AER 204.)  He alleged two 42 U.S.C. § 1983 claims against Officer Flores for unlawful arrest/seizure and excessive force in violation of the Fourth Amendment to

the United States Constitution.  (AER 207-208.)  He also alleged that the

CHP and Officer Flores were liable for unlawful arrest under California

Civil Code section 52.1, battery, false imprisonment, and intentional

infliction of emotional distress.  (AER 208-210.)

The CHP and Officer Flores filed their Answer in the Superior Court

on July 22, 2014.  (AER 200-203.)  On July 25, 2014, these Appellants filed

a Notice of Removal of the case in the United States District Court for the

Southern District of California.  (AER 197-199.)

On November 23, 2015, the CHP and Officer Flores filed their Motion

for Summary Judgment against all of Mr. Gregoire's claims.  (CR 25.)  On

February 16, 2016, the District Court entered an Order Granting in Part and

Denying in Part Defendants' Motion for Summary Judgment.  (AER 1-25.)

The Order granted summary judgment against Mr. Gregoire's state law

claim for intentional infliction of emotional distress but denied the Motion

with respect to all other claims.  (AER 24-25.)

On February 25, 2016, the CHP and Officer Flores filed their Notice of

Appeal.  (AER 30-31.)  On March 11, 2016, Mr. Gregoire filed a brief

requesting the District Court to find the appeal frivolous.  (CR 56.)  The

Court denied that request on May 13, 2016.  (AER 26-29.)

## STATEMENT OF FACTS

### Events at Traffic Accident Scene Prior to Arrival of Fire Trucks

Just before 9:30 p.m. on February 4, 2014, uniformed CHP Officer Eliazar Colunga responded to a radio call about an overturned vehicle near I-805 and Telegraph Canyon Road. (Defendants' Separate Statement 103, Facts 1, 2 & 7; AER 180-181, ¶¶ 1-3; Plaintiff's Separate Statement, AER 48-49, Facts 1, 2 & 7.)

The collision occurred in the northbound lanes of the I-805, and the vehicle to which Officer Colunga was responding came to rest in a wide construction area between cement K-rail walls separating the northbound and southbound lanes. (AER 49 & 103, Fact 8; AER 181, ¶ 3.) Officer Colunga saw no other on-duty emergency responders at the scene when he arrived. He parked his patrol car south of the collision scene in the center construction area (and out of traffic lanes), where the K-rails on the southbound side ended and the center construction area was accessible. (AER 49 & 104, Fact 9; AER 181, ¶ 3.)

Officer Colunga believed that, as the law enforcement officer on scene, he was the Incident Commander when he arrived. (AER 49 & 104, Fact 10; AER 181, ¶ 4.) He approached the overturned vehicle and made contact with two civilians (one of whom was an off-duty Emergency Medical

7

Technician [EMT]) who had come upon the accident scene before Officer Colunga arrived.  (AER 49 & 104, Fact 11; AER 181, ¶ 5.)  Officer Colunga saw that both occupants of the rollover vehicle were already out of the vehicle and conscious, with one lying on the ground and the other standing.  (AER 49-50 & 104, Facts 12-13; AER 181, ¶ 5.)

On the way to his patrol car to retrieve a first aid bag, Officer Colunga saw an ambulance from American Medical Response (AMR) arrive and park in the center construction area just south of Officer Colunga's patrol car and out of traffic lanes.  The ambulance had its emergency lights activated.  (AER 50 & 104, Fact 15; AER 181-182, ¶ 6; AER 127:2 – 128:2; AER 128:17 – 129:21.)[3]

Seeing the ambulance crew walking to the rollover vehicle with their gear, Officer Colunga determined it was unnecessary for him to retrieve a first aid bag.  (AER 50 & 105, Fact 16; AER 182, ¶ 7.)  He saw three people from the AMR ambulance.  He believed all three were paramedics.  He did

---

[3] Mr. Gregoire disputes Officer Colunga's perception that the AMR ambulance was parked out of lanes.  Mr. Gregoire relies on the testimony of a Fire Captain Albright from a Chula Vista Fire Truck (to be discussed shortly), who testified in deposition that he saw the rear of the AMR ambulance protruding 2 to 3 feet into the number 1 southbound lane.  (AER 50, Fact 15; citing AER 75:13 – 76:2.)

not learn until well after the events of the evening that two of them were paramedics and one was an EMT.  (AER 51 & 105, Fact 17; AER 182, ¶ 7.)

Based on the presence of the ambulance crew, Officer Colunga concluded that sufficient medical care was on scene for the two occupants of the rollover vehicle, so he moved on to engage in other scene management and investigation activities.  (AER 105, Fact 18; AER 182, ¶ 7.)[4]  Based on his training and experience, Officer Colunga considers a CHP officer's responsibilities as Incident Commander at a traffic scene to include assessing the entire scene, making sure that medical care has been summoned for any potentially injured parties, and making sure that the people on scene (civilians and first responders) are safe and not in the way of traffic or in any type of hazard.  He considers CHP Officers to be

---

[4] Mr. Gregoire disputes Officer Colunga's conclusion, stating that, according to the declaration of witness Autumn Mitchell (who was one of the civilians who arrived before Officer Colunga), no CHP officer ever asked about the condition of the patients or consulted about how long the firemen were going to need to help the two patients.  (AER 51, Fact 18.)  The cited portion of Ms. Mitchell's declaration actually states only the following: "While at the scene, I never heard the CHP officer ask about the condition of the patients or consult about how long or how many men were needed to help the two patients."  (AER 98:13-15.)  She discusses only one officer – i.e., the one she associated with the actual arrest, presumably Officer Flores.  (AER 98:5-17.)  She never makes a claim about what other CHP officers were or were not doing.  She also never states that she watched each officer (including Officer Flores) throughout the night, so as to show sufficient personal knowledge of everything they did or did not do.

9

responsible for managing the entire scene, which includes controlling where equipment and personnel are located so as to minimize safety hazards to those on scene and to the motoring public nearby or approaching the scene. (AER 51 & 105, Fact 19; AER 182, ¶ 8.)[5]

## Fire Trucks Arrived on Scene, Blocked Two Lanes, and Created what CHP Officer Colunga Considered to be a Hazard

Soon after the ambulance arrived, fire trucks began arriving. Officer Colunga saw Chula Vista Engine 52 arrive and park in the number 1 southbound lane. (AER 51 & 105, Fact 20; AER 182, ¶ 9; AER 128:6-9; AER 145:18-21.) Two other fire trucks arrived in short succession and parked behind Engine 52, blocking the number 1 and 2 lanes (the lanes closest to the center of the southbound roadway). A fourth fire truck also came to the scene. (AER 51-52 & 105, Fact 21; AER 182, ¶ 9.) Believing the patients were being attended to by paramedics and that there was no collision scene in traffic lanes, Officer Colunga became concerned about fire trucks blocking lanes. (AER 52 & 105, Fact 22; AER 182, ¶ 10.) He

---

[5] Mr. Gregoire did not dispute these facts; rather, he raised objections that the matters were irrelevant, improper lay opinion, and immaterial. In the Argument section below, Appellants will refute Mr. Gregoire's contention that Officer Colunga's observations and actions cannot be considered in deciding the propriety of Officer Flores' conclusions, decisions, and actions.

believed that there were sufficient medical personnel to help the patients, that too many fire crews were on scene, and that the trucks should be moved out of lanes.  (AER 52 & 106, Fact 23; AER 182-183, ¶ 10.)[6]

Officer Colunga talked to crew members from two trucks and explained they were not needed and should leave the scene and return to their stations.  These two trucks left within a few minutes.  (AER 52 & 106, Fact 24; AER 183, ¶ 10.)  Officer Colunga subsequently talked with members of the other two fire crews to ask them to move their trucks to the center median.  (AER 52 & 106, Fact 25; AER 183, ¶ 10.)  Officer Colunga was concerned about the risk of secondary accidents from the placement of trucks in lanes.  (AER 52-53 & 106, Fact 26; AER 183, ¶ 10; AER 175:1-24.)  He knew that placement of emergency equipment at collision scenes creates a serious risk of causing secondary accidents among other motorists approaching the scene.  (AER 53 & 106, Fact 27; AER 183, ¶ 10; AER 175:1-24.)

Officer Colunga made several observations about the layout of the freeway, the traffic conditions, and the accident scene.  He concluded that

---

[6] For Facts 22 & 23 and 24 through 40, Mr. Gregoire offered no factual dispute.  He simply objected that the facts were irrelevant, improper lay opinion, and immaterial.

placement of fire trucks in lanes created a significant risk of secondary

vehicle accidents.  He concluded the vehicle and occupants were safely

enclosed in a construction area shielded by cement K-rails.  (AER 53-55 &

106-107, Facts 29-36, 38-39; AER 183-184, ¶ 11; AER 132:3 – 135:19;

AER 155.)  He determined there was no debris from the collision in the

southbound lanes, as no part of the collision occurred there.  (AER 55 &

107, Fact 37; AER 184, ¶ 11.)

     Despite Officer Colunga's requests to the remaining two Chula Vista

Fire crews to move their trucks, the trucks were not moved.  (AER 55 &

108, Fact 40; AER 184, ¶ 12.)  After making his initial requests, Officer

Colunga went back to the overturned vehicle to try to gather some

information from one of the victims.  (AER 55 & 108, Fact 41; AER 184, ¶

12.)[7]  He subsequently noticed that the two fire trucks were still parked in

---

[7] To dispute this fact, Mr. Gregoire again misstates the import of a
statement (AER 98:13-15) from Autumn Mitchell's declaration to make the
claim that no CHP officer ever came to assess the victims.  Her statement
does not support Mr. Gregoire's attempt to dispute Officer Colunga's actions
and observations.  Also, Facts 24 and 25 (which show that Officer Colunga
did have conversations with all fire crews) were not disputed by Mr.
Gregoire; instead, he simply objected on relevancy grounds.  (AER 52 &
106, Facts 24 & 25.)

lanes, so he went back to speak to the fire crews again and request that they

move the fire trucks.  (AER 55 & 108, Fact 42; AER 184, ¶ 12.)[8]

### Officer Flores Arrived and Determined Mr. Gregoire's Truck was Unnecessary to Protect the Scene and Instead Posed a Hazard

At this point, Officer Colunga saw Officer Flores walk up to where

Officer Colunga was standing with the firefighters, close enough to where,

in Officer Colunga's opinion, Officer Flores could have overheard the

conversation.  (AER 55-56 & 108, Fact 43; AER 184, ¶ 12.)  Since this

collision scene was on Officer Flores' beat, Officer Colunga knew that

Officer Flores was taking over Officer Colunga's role as Incident

Commander.  (AER 56 & 108, Fact 45; AER 184, ¶ 14.)[9]

Officer Flores had driven to the scene after hearing radio traffic about

the collision.  (AER 57 & 109, Fact 49; AER 187, ¶ 3.)  After clearing a

traffic stop in Mission Valley, Officer Flores drove southbound on the I-805

to respond to the accident.  (AER 57 & 109, Fact 50; AER 187, ¶ 3.)  Since

the accident was in his beat area, his intent was to follow normal practice

---

[8] Mr. Gregoire makes the same misstatement of evidence as noted in footnote 7 above to try dispute this fact.

[9] Mr. Gregoire's basis for disputing this fact is Fire Captain Albright's testimony that he radioed to his fire dispatch center that he was establishing "IC."  (AER 56, Fact 45.)  The immateriality of this fact will be discussed in the Argument section below.

among CHP officers and take over the collision investigation and Incident Command.  (AER 57 & 109, Fact 51; AER 187, ¶ 3.)[10]

Upon approaching the scene, Officer Flores saw that traffic was backing up, so he began a traffic break to bring traffic approaching the scene in slowly.  (AER 57 & 109, Fact 52; AER 187, ¶ 4.)  Officer Flores came upon a fire truck that was parked mostly in the number 1 lane (i.e., closest to the center median) and partially into the number 2 lane.  (AER 57 & 109, Fact 53; AER 187, ¶ 4.)  Where this fire truck was stopped, Officer Flores could see there was a cement K-rail immediately butting up against the east side of the southbound number 1 lane.  Thus, from the rear of the fire truck and proceeding back (i.e., northbound) along the eastern edge of the southbound I-805 for a substantial distance, there was cement K-rail abutting the number 1 lane.  (AER 57-58 & 109, Fact 54; AER 187, ¶ 4.)

Because he saw the fire truck blocking the number 1 lane and part of the number 2 lane, Officer Flores initially believed the accident must be located in the number 1 lane in front of the fire truck.  (AER 58 & 109, Fact 55; AER 187, ¶ 5.)  He therefore stopped his patrol car approximately 100 feet behind this fire truck and began laying a flare pattern on the road,

---

[10] Mr. Gregoire raises the same immaterial dispute as in footnote 9 above.

14

proceeding from the rear of his patrol vehicle in a diagonal pattern moving southbound toward the number 2 lane. (AER 58 & 109, Fact 56; AER 187, ¶ 5.) As he moved his flare pattern close to the fire truck, he saw that the actual collision scene was to his left in a construction area on the other side of the K-rails. He determined that the collision had occurred on the northbound side of the I-805 and that the vehicle had come to rest out of traffic lanes in a large construction area that was blocked off from northbound and southbound lanes by cement K-rail walls. (AER 58-59 & 110, Facts 57-58, 60; AER 188, ¶ 6; AER 190-191, ¶¶ 12-13; AER 193-196; AER 132:3 – 135:19; AER 155; AER 135:20 – 136:19; & AER 157.) [11]

Officer Flores saw fire personnel, paramedics, and at least one of the people who had been involved in the collision near the vehicle in this center area. He saw paramedics providing medical care to the vehicle occupants. (AER 58-59 & 110, Facts 59 & 61; AER 188, ¶ 6; AER 190-191, ¶¶ 12-13; AER 193-196.)

---

[11] Mr. Gregoire attempts to dispute Officer Flores' perception of where the collision scene was located by reference to Captain Albright's testimony that he saw the rear corner of the AMR ambulance protruding 2 to 3 feet into the number 1 southbound lane. (AER 58, Fact 58; AER 75:2 – 76:2.)

15

Very soon after completing his flare pattern, Officer Flores saw Officer Colunga speaking to a group of firefighters. (AER 59 & 110, Fact 62; AER 188, ¶ 7.) Officer Flores heard Officer Colunga asking the group why they had not yet moved their fire engine. (AER 59 & 110, Fact 63; AER 188, ¶ 7.) Officer Flores heard Officer Colunga say that he had told them several times that they needed to move their fire engine. (AER 59 & 110, Fact 64; AER 188, ¶ 7.) Officer Flores heard Officer Colunga state that the collision scene was safely within the construction area and that the truck was not providing any protection. (AER 59 & 111, Fact 65; AER 188, ¶ 7.)[12]

Officer Flores assessed scene management issues, including making observations about the layout of the freeway, the location of the rollover vehicle, the apparent location of the ambulance, the absence of any debris field in the southbound lanes, and the risk of fast vehicles approaching the scene without time to react to the presence of fire trucks. (AER 61 & 111-112, Facts 72-73, 75-77; AER 189, ¶ 9; AER 127:2 – AER 128:2; & AER 128:17 – AER 129:21.) Based on his observations, Officer Flores formed the belief that having fire trucks parked in lanes was posing a serious risk to

---

[12] Mr. Gregoire does not dispute that Officer Flores heard Officer Colunga make this statement to the firefighters; instead, he merely repeats that Captain Albright claimed to have seen the AMR ambulance protruding into the number 1 lane. (AER 59, Fact 65.)

16

the public and that they were not needed to protect the accident scene. He believed the accident scene to be fully shielded in a large center construction area by cement K-rail walls. (AER 61 & 112, Fact 75; AER 189, ¶ 9.) He was concerned about secondary accidents occurring and additional people getting injured or killed. (AER 62 & 112, Fact 78; AER 189, ¶ 9; AER 175:1-24.)

**Mr. Gregoire Repeatedly Refused to Follow Orders to Move the Fire Truck that was Causing a Hazard and was Lawfully Arrested**

Since he believed this to be his accident scene, Officer Flores assumed he was taking the role of managing the scene upon his arrival. (AER 62 & 112, Fact 79; AER 189, ¶ 10.) In his efforts to get the truck moved, Officer Flores called out to a group of firefighters and asked who was driving the truck. (AER 62 & 112, Fact 80; AER 189, ¶ 10.) An Engineer (later identified as Mr. Gregoire) stated he was driving the truck. (AER 62 & 112, Fact 81; AER 189, ¶ 10.) Officer Flores directed Mr. Gregoire to move the truck. (AER 62 &112, Fact 82; AER 189, ¶ 10.) Mr. Gregoire stated that he

was not going to move the truck. (AER 62-63 & 112, Fact 83; AER 189, ¶ 10.)[13]

Officer Flores' version of events is that he next told Mr. Gregoire that he was giving a direct order to move the truck because he believed it was causing a hazard. Officer Flores repeated his order as Mr. Gregoire continued to refuse to move the truck. Officer Flores told Mr. Gregoire that, if he did not move the truck, Officer Flores was going to arrest him for disobeying an order and for delaying officers in their investigation. Mr. Gregoire told Officer Flores to go ahead and arrest him and refused to move the truck. (AER 63 & 113, Facts 84-87; AER 189-190, ¶ 10.)

Mr. Gregoire's response to Officer Flores' version of events is an argument that the truck was not causing a hazard but was protecting the safety of the people at the scene. Mr. Gregoire relies on Fire Captain Albright's testimony that the rear of the AMR ambulance was protruding into the number 1 lane. Mr. Gregoire claims that Officer Flores was delaying patient care by telling Mr. Gregoire to go back to the station. Mr. Gregoire claims that he told Officer Flores he could not move the truck

---

[13] Mr. Gregoire disputes Facts 82 and 83, fact, saying that he was told to go back to the station, not just to move the truck off the freeway. He also asserts he told Officer Flores that he was helping patients. (AER 62, Facts 82 & 83, citing AER 82:14 – AER 83:8; AER 92; & AER 95, ¶ 7.)

18

because he was helping with patient care. (AER 63, Facts 84-87 [Mr. Gregoire's response].)

At this point, Officer Flores believed: that Mr. Gregoire was capable of driving the fire truck, that Mr. Gregoire was the driver of the fire truck, that Officer Flores had given Mr. Gregoire an order to move the truck pursuant to Officer Flores' duties to manage the traffic scene for public safety, that Mr. Gregoire was refusing to comply with that order despite several requests, that Officer Flores had warned Mr. Gregoire that he would be arrested if he did not comply, and that Mr. Gregoire was continuing to refuse to comply. (AER 63-64 & 113, Fact 88; AER 190, ¶ 11.) Based on the circumstances, Office Flores formed the belief that Mr. Gregoire was violating California Penal Code § 148(a) and California Vehicle Code § 2800(a). (AER 63-64 & 113, Facts 88-89; AER 190, ¶ 11.)[14]

Officer Flores directed Mr. Gregoire to step over a K-rail (one that was between the two K-rails on the northbound and southbound sides of the center portion of I-805). Officer Flores then handcuffed Mr. Gregoire and placed him under arrest. (AER 64 & 113-114, Facts 90-92; AER 190, ¶ 11.)

---

[14] Mr. Gregoire offers no factual dispute to Facts 88 and 89. He simply objects that they are immaterial. (AER 63-64.)

## SUMMARY OF ARGUMENT

Officer Flores had lawful authority under California Vehicle Code § 2410, California Penal Code § 409.3, and California Health and Safety Code § 1798.6(c) (see attached Addendum for text of statutes) to manage the scene of the traffic accident. He was giving lawful orders to move fire trucks, and Mr. Gregoire refused to comply with those orders. Therefore, Officer Flores reasonably believed he had probable cause to arrest Mr. Gregoire for violations of California Penal Code § 148(a) and Vehicle Code § 2800(a) (see attached Addendum for text of statutes).

Mr. Gregoire contends, and the District Court agreed, that there are disputed material facts as to whether Officer Flores had probable cause to believe Mr. Gregoire was violating lawful orders and could therefore be arrested for violating these two statutes. (AER 15:14-18.) However, the CHP and Officer Flores appeal the District Court's denial of their claim, on Motion for Summary Judgment, that Officer Flores is entitled to qualified immunity. The District Court based its denial of summary judgment solely on findings of disputed facts on the first prong of qualified immunity analysis – whether there was a violation of the Fourth Amendment right. The District Court concurs that it did not address whether clearly established law was violated. (AER 28:6-10.)

20

Taking into account the undisputed material facts, and even assuming resolution of <u>genuine</u> material factual disputes in Mr. Gregoire's favor, Officer Flores did not violate clearly established law in the specific circumstances with which he was confronted. Mr. Gregoire fails to present the requisite binding precedent or robust consensus of persuasive law to demonstrate that a law enforcement officer would be clearly on notice in the circumstances of this case that he lacked authority to order the fire trucks moved.

Officer Flores also respectfully asks this Court to review and reverse the District Court's determination that Mr. Gregoire presented genuine material factual disputes on the first tier of qualified immunity analysis – whether his Fourth Amendment right to be free of unlawful arrest was violated. If this Court agrees with Officer Flores that the District Court erred in finding Mr. Gregoire could show the absence of probable cause for his arrest, then the state law claims for violation of California Civil Code § 52.1 and false imprisonment must also fail. Both claims are defeated if the undisputed material facts demonstrate that Officer Flores had probable cause for the arrest. It would then follow that the CHP cannot be held vicariously liable for those claims under California Government Code § 815.2.

The CHP and Officer Flores also contest the District Court's

21

conclusion that there are genuine disputed material facts on whether Officer

Flores engaged in excessive force by the placement of the handcuffs and

whether clearly established law was violated. There being reasonable force,

the battery claim must also fail.

## ARGUMENT

I. **OFFICER FLORES IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE MR. GREGOIRE CANNOT DEMONSTRATE THAT OFFICER FLORES VIOLATED CLEARLY ESTABLISHED LAW IN ARRESTING MR. GREGOIRE**

### A.   Standard of Review

A district court's denial of a motion for summary judgment based on

qualified immunity is reviewed de novo. *See Rodis v. City, County of San*

*Francisco*, 558 F.3d 964, 968 (9th Cir. 2009); *Huskey v. City of San Jose*,

204 F.3d 893, 899 (9th Cir. 2000). Whether federal rights asserted by a

plaintiff were clearly established at the time of the alleged violation is also a

question of law reviewed de novo. *Oona, R.S. v. McCaffrey*, 143 F.3d 473,

475 (9th Cir. 1998). In conducting its de novo review, this Court may

review any issue of law, including the materiality of the disputed issues of

fact. *Wilkins v. City of Oakland*, 350 F.3d 949, 952 (9th Cir. 2003);

*Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). "The substantive

law determines which facts are material; only disputes over facts that might

22

affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *National Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012).

### B.    Fundamental Principles of Qualified Immunity Analysis

The doctrine of qualified immunity shields a government official from liability for monetary damages unless the plaintiff establishes "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)).  Courts have the discretion to decide which prong of this analysis to address first under the circumstances of a particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  A decision in the defendant's favor on either prong establishes qualified immunity, even without consideration of the other prong.  *See Reichle v. Howard*, 566 U.S. 658, 663 (2012); *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 986 (9th Cir. 2011).

In order to violate clearly established law, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  While this does not require a case directly on point, "existing

precedent must have placed the statutory or constitutional question **beyond debate.**" *Ashcroft v. al-Kidd*, 563 U.S. at 741 (emphasis added). Clearly established law must come from clear "'controlling authority' or a 'robust consensus of cases of persuasive authority.'" *Plumhoff v. Rickard*, ___ U.S. __, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 741-742).

Also, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It must be determined "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

> Under qualified immunity, an officer is protected from suit when he or she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The standard leaves "ample room for mistaken judgments." *Id.* at 343, 106 S.Ct. 1092.

*Lacey v. Maricopa County*, 649 F.3d 1118, 1131 (9th Cir. 2011).

Thus, even if an officer is mistaken about the existence of probable cause to arrest, the officer is still entitled to qualified immunity if the mistake was reasonable. *Krainski v. Board of Regents of Nevada System of*

24

*Higher Education*, 616 F.3d 963, 969 (9th Cir. 2010) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991). "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

As will be discussed below, Mr. Gregoire cannot meet his burden[15] of showing any clear binding authority or even a robust consensus of persuasive authority that would have put Officer Flores on notice that his exercise of authority under California Vehicle Code § 2410, California Penal Code § 409.3, and California Health and Safety Code section 1798.6(c) was unlawful under the circumstances he confronted. Officer Flores did not violate clearly established law in concluding he was giving lawful orders to move the fire truck and that Mr. Gregoire was violating California Penal Code § 148(a) and California Vehicle Code § 2800(a) by refusing to follow those orders.

---

[15] Although qualified immunity is categorized as an affirmative defense, a plaintiff has the burden to demonstrate infringement of a "clearly established" right; if plaintiff fails to do so, defendant prevails. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) ("The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong."); *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) ("[Plaintiff] bears the burden of showing that the right at issue was clearly established.").

**C.    Mr. Gregoire Cannot Defeat the Second Prong of Qualified Immunity Analysis by Simply Asserting It is Clearly Established That a Warrantless Arrest Without Probable Cause is a Violation of the Fourth Amendment**

Mr. Gregoire will likely argue that, because the Fourth Amendment's probable cause standard is "clearly established," any finding of disputed facts on the issue of probable cause means that Officer Flores violated clearly established law. This is the quintessential misstatement of qualified immunity analysis that the United States Supreme Court has repeatedly held must not be followed:

> The Court of Appeals also found clearly established law lurking in the broad "history and purposes of the Fourth Amendment." [Citation omitted.] We have repeatedly told courts − . . . − not to define clearly established law at a high level of generality. [Citations omitted.] The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established. [Citations omitted.]

*Ashcroft v. al-Kidd*, 563 U.S. at 742..

The United States Supreme Court recently repeated this guidance:

> To begin, nothing in our cases suggests the constitutional rule applied by the Ninth Circuit. The Ninth Circuit focused on *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), but *Graham* holds only that the "'objective reasonableness'" test applies to excessive-force claims under the Fourth Amendment. See *Id.* at 388, 109 S. Ct. 1865. That is far too general a proposition to control this case. "We have repeatedly told courts − . . . − not to define clearly established law

26

at a high level of generality." [Citations omitted.] **Qualified immunity is no immunity at all if "clearly established" law can simply be defined as the right to be free from unreasonable searches and seizures.**

*City and County of San Francisco v. Sheehan*, ___ U.S. ___, 135 S. Ct. 1765, 1775-1776 (2015) (with emphasis added by Appellants).

The Supreme Court has also recently declared:

"We have repeatedly told courts ... not to define clearly established law at a high level of generality." *al–Kidd*, *supra*, at 742, 131 S.Ct. 2074. The dispositive question is "whether the violative nature of particular conduct is clearly established." *Ibid.* (emphasis added). This inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam* ) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

*Mullenix v. Luna*, 577 U.S. ___, 136 S. Ct. 305, 308 (2015).

In line with this Supreme Court precedent, the Ninth Circuit has declared that the second tier of the qualified immunity analysis must no longer be addressed by simply concluding there are disputed issues of material fact on whether a broad constitutional right (such as the requirement of probable cause) has been violated. *Sjurset v. Button*, 810 F.3d 609, 615-616 (9th Cir. 2015); *Mueller v. Auker*, 700 F.3d 1180, 1185 (9th Cir. 2012).

27

**D.** **Officer Flores Was Not Clearly on Notice that His Scene Assessment Activities and Resulting Orders to Move the Fire Truck Were Not Lawful**

**1.** **Probable Cause Analysis for Statutory Basis of Arrest**

Since this case involved a warrantless arrest, there was a requirement that the arrest be supported by probable cause to believe a criminal offense had been or was being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* The totality of the circumstances must be examined in determining whether a reasonably prudent person would conclude there was a fair probability the suspect had committed a crime. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 825 (9th Cir. 2013).

Here, Officer Flores formed the belief, based on the totality of the circumstances, that Plaintiff was in violation of California Penal Code § 148(a) and California Vehicle Code § 2800(a) by refusing to move the fire truck. (AER 64 & 113, Fact 89, AER 190, ¶ 11.)

Both statutes appear to be textually congruent with respect to failure to obey law enforcement orders. Thus, while there is little published case law interpreting Vehicle Code § 2800(a), examination of case law interpreting

28

the elements of a violation of Penal Code § 148(a) reasonably extends to the

analysis for Vehicle Code § 2800(a).

> "The legal elements of a violation of section 148, subdivision (a)
> are as follows: (1) the defendant willfully resisted, delayed, or
> obstructed a peace officer, (2) when the officer was engaged in the
> performance of his or her duties, and (3) the defendant knew or
> reasonably should have known that the other person was a peace
> officer engaged in the performance of his or her duties.
> [Citations.]" (*People v. Simons* (1996) 42 Cal.App.4th 1100,
> 1108-1109 [50 Cal.Rptr.2d 351].) The offense is a general intent
> crime, proscribing only the particular act (resist, delay, obstruct)
> without reference to an intent to do a further act or achieve a
> future consequence. (*People v. Roberts* (1982) 131 Cal.App.3d
> Supp. 1, 8-9 [182 Cal.Rptr. 757].)

*In re Muhhamed C.*, 95 Cal. App. 4th 1325, 1329 (Cal. Ct. App. 2002).

As noted by the District Court, both statutes require that orders be

lawful before one can be arrested for violating the orders. (AER 8-9, citing

*Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005); *People v. Ritter*,

115 Cal. App. 3d Supp. 1, 6 (1980).) Mr. Gregoire's central challenge to the

arrest is that Officer Flores' orders to move the truck were not lawful, which

would mean that Officer Flores lacked probable cause to believe Mr.

Gregoire was violating § 148(a) and § 2800 (a). (*See* AER 7, lns. 5-7; AER

12-15.)

29

### 2. Absence of Clearly Established Law Governing Law Enforcement Officers' Assessment of Management Needs for Traffic Accident Scenes

The District Court determined that Officer Flores lacked probable cause to believe his orders were lawful because Mr. Gregoire raised various factual disputes over whether Officer Flores sufficiently investigated and interpreted the accident scene, whether Mr. Gregoire played some role (however minor) in patient care, and whether Mr. Gregoire was told to move the truck off the freeway or back to the station. (AER 12-15.)

Yet, Mr. Gregoire cannot demonstrate that clearly established law would have put Officer Flores on notice that he lacked a reasonable basis, under the circumstances he confronted, for believing he had authority under California Vehicle Code § 2410, California Penal Code § 409.3, and California Health and Safety Code § 1798.6(c) to order the fire truck moved (whether off the freeway or even back to the station).

Both Officer Colunga and Officer Flores had authority under California Vehicle Code § 2410, California Penal Code § 409.3, and California Health and Safety Code § 1798.6(c) (see Addendum for text of statutes) to manage the scene of this traffic accident for public safety, particularly with respect to placement of emergency vehicles. Under these statutes, the Legislature

30

expressly placed command over accident scene management with the responding law enforcement agency. California Vehicle Code § 2412 (see Addendum) establishes that, for this traffic accident on the I-805 freeway, CHP officers had investigative authority. Thus, CHP officers responding to this scene were from the law enforcement agency with primary investigative authority within the meaning of Health and Safety Code § 1798.6(c).

As noted by the District Court, Mr. Gregoire contends that Officer Flores failed to sufficiently "consult" with medical staff within the meaning of California Penal Code § 409.3 and California Health and Safety Code § 1798.6(c) before deciding to order the fire truck moved. (AER 12.) Yet, there is no guiding precedent clearly establishing the minimum levels of scene assessment and management activities that officers must meet under these statutes before they can decide whether any given scene justifies certain scene management orders. There is no case law interpreting what it means for officers to "consult" with medical staff. There are no precedents that would put officers on notice as to whether a particular accident scene requires a certain level of discussion and investigation as compared to what is reasonable at another accident scene.

Traffic accident scenes vary in intensity from the simple rear-ender on a lightly-traveled side street to catastrophic, multiple fatality freeway pileups

31

that, managed improperly, pose serious risks to everyone in the vicinity. Every scene differs in a multitude of factors, such as the perceived number of injured parties and degree of injuries, the balance of number of rescuers versus patients, the location and traffic conditions, the perceptions of relative risks to the motoring public versus risks to involved parties and rescuers, and the scope of the officers' investigative and scene management duties.

Yet, under Mr. Gregoire's application of the statutes, every scene must involve a certain hierarchy of investigation and consultation steps before peace officers can start giving orders to move trucks. He would therefore ask this Court to find, in the absence of any controlling precedent or robust consensus of persuasive authority, that Officer Flores was clearly on notice that his scene management evaluation and decisions in this case were obviously insufficient to justify the orders to move the truck.

### 3. Officer Flores' Scene Analysis and Exercise of Authority

There is no dispute that Officer Flores was a uniformed police officer from the agency with primary investigative authority for this traffic scene. (AER 48 & 103, Facts 4 & 5; AER 186-187, ¶¶ 1-2.) Before giving any orders, Officer Flores correctly ascertained that a collision had occurred in the northbound lanes and that the rollover vehicle and its occupants had

come to rest in a wide construction area shielded between cement K-rail walls separating the northbound and southbound lanes of the I-805. (AER 58-59 & 110, Facts 57-60; AER 188, ¶ 6; AER 190-191, ¶¶ 12-13; AER 193-196; AER 132:3 – 135:19; & AER 155; AER 135:20 – 136:19; & AER 157.)

It is undisputed that, based on his training, experience and personal observations at the scene, Officer Flores believed having fire trucks parked in lanes was not necessary to protect the scene. (AER 59-60 & 111, Facts 66 & 67; AER 188, ¶ 8.) [16] Officer Flores knew that CHP Officers were trained that part of their role in managing traffic scenes is to make sure that the placement of vehicles and equipment is done in such a way as to prevent the serious problem of secondary automobile collisions. (AER 60 & 111, Fact 68; AER 188, ¶ 8.) He knew that secondary accidents are a particular risk on freeways, where traffic can approach at high speeds. (AER 60 & 111, Fact 69; AER 188-189, ¶ 8; AER 175:1-24.) Clearing lanes at traffic scenes to protect the public is a key part of CHP officers' responsibilities as traffic incident managers. (AER 60 & 111, Fact 70; AER 189, ¶ 8.) Officer Flores

---

[16] For Facts 66 through 71, Mr. Gregoire does not raise factual disputes. He simply objects that Officer Flores' conclusions about the scene constitute improper opinion and are immaterial. (AER 59-60.)

knew that CHP officers are responsible for managing the entire scene of a

traffic accident to protect the safety of all people present at the scene and to

protect the motoring public near the scene.  (AER 60-61 & 111, Fact 71;

AER 189, ¶ 9.)

Officer Flores' analysis of the scene management issues at this

particular traffic scene included his perception that the ambulance which had

responded to treat patients was parked in the center median area and out of

traffic lanes.  This is disputed by Mr. Gregoire based on Fire Captain

Albright's testimony that he recalled seeing the rear corner of the ambulance

protruding into the number 1 lane.  (AER 61 & 111, Fact 72; AER 189, ¶ 9;

AER 127:2 – 128:2; & AER 128:17 – 129:21.)  Notably, Mr. Gregoire (who

parked the truck) recalled that the ambulance was parked in the center

divider area, and he did not recall whether any part of the ambulance

protruded into the number 1 lane.  (AER 128:17 – 129:21.)  This

demonstrates there was no clear indication whether the ambulance was

protruding into the number 1 lane.  At the very least, it shows that one could

have been reasonably mistaken about the whether part of the ambulance was

in lane number 1.  Reasonable mistakes of fact do not overcome qualified

immunity.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

34

Further, even assuming the ambulance was protruding into the number 1 lane and that the officers were aware of this, it does not mean that either officer was objectively unreasonable in concluding he still had the statutory authority to order the fire truck moved before turning attention to other scene management tasks (such as subsequently having the ambulance moved, if deemed necessary). No clearly established law shows that peace officers had to agree with the fire crews that the scene was better managed by having the truck in lanes versus having it moved. Indeed, there was an objectively reasonably basis for both officers to perceive sufficient interim protection of the area where the ambulance was parked by virtue of the undisputed fact that Officer Flores had already set out a flare pattern. The flares were set from the rear of his vehicle in the number 1 lane and diagonally toward the number 2 lane to a point just near the fire truck. (AER 58 & 109, Facts 56 & 57; AER 187-188, ¶¶ 5-6.)

Knowing the collision did not occur in any southbound lanes, Officer Flores also knew there was no debris field that could endanger southbound traffic. (AER 61 & 111, Fact 73; AER 189, ¶ 9.) Officer Flores formed the belief that having fire trucks parked in lanes was posing a serious risk to the public and that they were not needed to protect the accident scene. He believed the accident scene to be fully shielded in a large center construction

area by cement K-rail walls. (AER 61 & 112, Fact 75; AER 189, ¶ 9.)[17] He also recognized that the truck he was trying to get to move was on the I-805 freeway, where people commonly travel at high speeds and might unexpectedly come upon the accident scene without time to react. (AER 61-62 & 112, Facts 76-77; AER 189, ¶ 9.) He was concerned about secondary accidents occurring and additional people getting injured or killed. (AER 62 & 112, Fact 78; AER 189, ¶ 9; AER 175:1-24.)

There is no dispute that Officer Flores saw Officer Colunga speaking to a group of firefighters. (AER 59 & 110, Fact 62; AER 188, ¶ 7.) Officer Flores heard Officer Colunga asking the group why they had not yet moved their fire engine. (AER 59 & 110, Fact 63; AER 188, ¶ 7.) Officer Flores heard Officer Colunga say that he had told them several times that they needed to move their fire engine. (AER 59 & 110, Fact 64; AER 188, ¶ 7.) Officer Flores heard Officer Colunga state that the collision scene was safely within the construction area and that the truck was not providing any protection. (AER 59 & 111, Fact 65; AER 188, ¶ 7.)[18]

---

[17] For this Fact 75 and Facts 76 through 78 (following), Mr. Gregoire objects, claiming they are improper opinion and immaterial. Yet, he provides no factual disputes. (AER 61-62.)

[18] Mr. Gregoire does not dispute what Officer Flores heard Officer Colunga say to the firefighters; instead, he merely repeats that Captain

(continued…)

Thus, in overhearing Officer Colunga express his belief that the collision scene was safely in the construction area and that he had already told the fire crews several times to move their truck, Officer Flores gained corroboration of his own scene management analysis from another officer.

Prior to arresting Mr. Gregoire, Officer Flores did not see Mr. Gregoire engaging in activities that Officer Flores perceived to be patient care. (AER 64-65 & 114, Fact 93; AER 191, ¶ 14.) To Officer Flores, it appeared that Mr. Gregoire was standing with a group of other firefighters while others were actually treating patients. Indeed, still shots of news media video images of the scene show points just prior to the arrest where multiple firefighters were present (including a point just prior to Officer Flores calling out for the driver of the truck) and where Mr. Gregoire was standing in a group. (AER 65 & 114, Fact 94; AER 191, ¶ 14; AER 168:21 – 171:4; AER 179; AER 146:24 – 149:24; AER 159.)

Mr. Gregoire disputes Fact 94, claiming that he was engaged in patient care. (AER 65, Fact 94, citing the Hutton, Mitchell, and Rees declarations

---

(…continued)
Albright claimed to have seen the AMR ambulance protruding into the number 1 lane. (AER 59, Fact 65.)

and AER 82:10-13; AER 91-93.)[19] Yet, he provides no evidence that either Officer Flores or Officer Colunga ever perceived him to be involved in providing medical care. The minimal care assistance effort that he describes was not of the nature as to be continuous, open, and obvious.

Prior to ordering Mr. Gregoire to move the fire truck, Officer Flores was aware that the patients were being treated by paramedics from an ambulance. (AER 65 & 114, Fact 95; AER 191, ¶ 14.) Mr. Gregoire attempts to dispute this fact with the assertion that Officer Flores testified at his deposition that he did not know how many people were injured or the extent of their injuries. (AER 65, Fact 95, citing AER 86-87.)[20] Reviewing

---

[19] For purposes of all issues in this appeal, Appellants renew all evidentiary objections they made to Mr. Gregoire's evidence. (AER 38-46.) The District Court decided the Motion for Summary Judgment without oral arguments or specific rulings on each of these objections. (AER 24:22-25; AER 25:3 Mr. Hutton's and Mr. Rees's declarations that a "Latino officer" or "the CHP officer" never consulted with any of the paramedics or firefighters about patient care before arresting Mr. Gregoire lack sufficient foundation under Federal Rules of Evidence § 602 and Federal Rules of Civil Procedure § 56(c)(4). (AER 45 & 46.) There are no foundational facts demonstrating that either witness was watching any of the officers at all times. Thus, they are not competent to state that the officer never consulted with medical staff. Regardless, even assuming that the information is considered, the witnesses are clearly talking about only one officer. They do not attest that none of the officers ever consulted with medical staff. (AER 94-96 & 99-100.)

[20] In the record below, Mr. Gregoire cited pages 120 through 122 of Officer Flores' deposition. Page 120 and 122 are now found at AER 86 and

(continued…)

all three cited pages of Officer Flores' transcript, one sees that Officer Flores was aware there were two occupants of the rollover vehicle. (AER 36:1-4.) At the scene, he believed only one of them was injured. (AER 36:4-21.) Officer Flores acknowledged he was not sure whether both of the occupants were taken away on gurneys, but he specifically recalled at least one of them being treated by medical professionals. (AER 36:24-25 & AER 87:1-6.) Thus, Mr. Gregoire mischaracterizes the import of Officer Flores' testimony. Also, Mr. Gregoire does not dispute that, upon approaching the scene, Officer Flores saw paramedics providing medical care to the vehicle occupants. (AER 58 & 59 & 110, Facts 59 & 61; AER 188, ¶ 6; AER 190-191, ¶¶ 12-13; AER 193-196.)

Mr. Gregoire also relies on the earlier misrepresentation of Ms. Mitchell's declaration, claiming that she said no CHP officer ever inquired about the status of the patients. (AER 65, Fact 95, citing Mitchell Declaration.") The manner in which Ms. Mitchell's testimony is distorted is discussed in footnotes 4 and 7 of this brief.

---

(…continued)

87. However, Mr. Gregoire failed to include page 121 of the Flores transcript. In Reply to Mr. Gregoire's Opposition to the Motion for Summary Judgment, Appellants presented the missing page 121 to the Court for consideration pursuant to Rule 106 of the Federal Rules of Evidence. (AER 32-37, with page 121 now appearing at AER 36.)

Given his belief that the patients were being treated by paramedics, Officer Flores perceived no reason why Mr. Gregoire could not move the truck. (AR 65 & 114, Fact 96; AER 191, ¶ 14.) Mr. Gregoire does not directly dispute this fact. He objects on the grounds of alleged improper opinion and immateriality. He also claims Officer Flores testified he arrested Mr. Gregoire so he would know what the consequences were for disobeying an order. (AER 65, Fact 96, citing AER 88:20 – 89:4.) Officer Flores' full response to the question about his intent in telling Mr. Gregoire that he would be arrested if he did not move the truck was: "For him to understand the severity of the situation that he was causing and explained to him what the consequences would be for failing to obey the order." (AER 88:20 – 89:4.)

### 4. Officer Colunga's Scene Analysis and Actions

#### (i) Relevancy of Officer Colunga's Information

Despite Mr. Gregoire's objections to the admissibility of Officer Colunga's scene analysis and actions, such facts are logically relevant and material because they directly corroborate Officer Flores' observations, analysis, and conclusions before the arrest. There is no improper lay opinion, as the evidence shows an experienced officer (AER 48 & 103, Fact

3, AER 180, ¶ 1) applying his training and experience to scene-management determinations.

Moreover, under the collective knowledge rule, Officer Colunga's information must be considered in support of Officer Flores's conclusions that his orders were lawful and that he had probable cause to arrest Plaintiff for refusing to comply. "[A]n arresting officer need not have personal knowledge of the facts indicating probable cause; rather, an arresting officer may rely on the collective knowledge of the other officers involved in the case." *United States v. Bertrand*, 926 F.2d 838, 844 (9th Cir. 1991). The collective knowledge of officers cooperating in an investigation/scene management must be considered, even if not all of that information was communicated to the officer who ultimately made the arrest. *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007). The rule does not require a briefing among officers before an arrest. As *Ramirez* explains, there is a limited requirement "that there be a communication but not necessarily the conveyance of any actual information among the officers." *Id.* at 1032-1033.

Here, Officer Flores responded to the same accident and was working together with Officer Colunga to manage and investigate the scene. As noted above, Officer Colunga communicated significant information that

41

Officer Flores heard and relied upon. All of Officer Colunga's observations, knowledge, and actions must therefore be imputed to Officer Flores for supporting the lawfulness of the orders and probable cause. *United States v. Bernard*, 623 F.2d 551, 560-561 (9th Cir. 1980).

### (ii) Application of Officer Colunga's Observations and Actions to Determination of Lawfulness of Orders and Probable Cause to Arrest

Upon first approaching the rollover vehicle, Officer Colunga saw that both occupants had already gotten out of the vehicle without the need for extraction equipment or on-duty emergency personnel. (AER 49-50 & 104, Fact 12; AER 181, ¶ 5.) Both individuals were conscious, with one lying on the ground and the other standing. During the evening, Officer Colunga was able to communicate with the two occupants. (AER 50 & 104, Fact 13; AER 181, ¶ 5.) Officer Colunga saw the AMR ambulance arrive and park in the center construction area and out of traffic lanes. (AER 50 & 104, Fact 15; AER 181-182, ¶ 6; AER 127:2 – 128:2; AER 128:17 – 129:21.)

Officer Colunga concluded the three members of the AMR ambulance crew were sufficient for medical care for the two occupants of the rollover vehicle. (AER 50-51 & 105, Facts 16-18; AER 182, ¶ 7.) Mr. Gregoire's reliance on Ms. Mitchell's declaration to dispute Officer Colunga's

42

perception of the sufficiency of paramedic staff is refuted in footnotes 4 and 7 of this brief.

Officer Colunga maintained the same views as did Officer Flores regarding CHP officers' scene management authority, their responsibility for protecting public safety, and the serious risk of secondary accidents from emergency equipment placement. (AER 51, 52-53 & 105-106, Facts 19 & 26-28; AER 182, ¶ 8; AER 183, ¶ 10; & AER 175:1-24.) Officer Colunga made multiple scene observations that largely mirrored observations later made by Officer Flores and which led Officer Colunga to conclude there was a significant risk of secondary accidents from placement of fire trucks in lanes. (AER 53-54 & 106-107, Facts 29-35; AER 183-184, ¶ 11.) Officer Colunga also perceived that the collision scene was enclosed in the construction area, with cement K-rails blocking it from southbound and northbound traffic. (AER 54-55 & 107, Fact 36; AER 183-184, ¶ 11; AER 132:3 – 135:19; AER 155.) He determined there was no debris from the collision in the southbound lanes, as no part of the collision occurred there. (AER 55 & 107, Fact 37; AER 184, ¶ 11.)

Believing that the patients were being sufficiently attended to by AMR paramedics and believing that there was no collision scene in the southbound lanes, Officer Colunga became concerned about fire trucks blocking lanes

and made the determination he needed to start directing them to move out of lanes for public safety. (AER 51-52, 55 & 105, 108, Facts 20-23, & 39; AER 182-183, ¶¶ 9-10; AER 184, ¶ 11; AER 128:6-9; AER 145:18-21.)

Officer Colunga talked to crew members from two trucks and explained they were not needed and should leave the scene and return to their stations. These two trucks left within a few minutes. (AER 52 & 106, Fact 24; AER 183, ¶ 10.) Officer Colunga subsequently had conversations with members of the other two fire crews to ask them to move their trucks to the center median. (AER 52 & 106, Fact 25; AER 183, ¶ 10.)

Despite Officer Colunga's requests to the remaining two Chula Vista Fire Department crews to move their trucks, the trucks were not moved. (AER 55 & 108, Fact 40; AER 184, ¶ 12.) After making his initial requests, Officer Colunga went back to the overturned vehicle to try to gather some information from one of the victims. (AER 55 & 108, Fact 41; AER 184, ¶ 12.) He subsequently noticed that the two fire trucks were still parked in lanes, so he went back to speak to the fire crews again and request that they move the fire trucks. (AER 55 & 108, Fact 42; AER 184, ¶ 12.)[21] As noted

---

[21] See footnotes 4 and 7 for discussion of insufficiency of Autumn Mitchell's declaration to create a genuine material dispute on Facts 41 and 42.

above, there is no dispute that Officer Flores heard significant information from this latter conversation.

Since this collision scene was on Officer Flores' beat, Officer Colunga knew that Officer Flores was taking over Officer Colunga's role as Incident Commander (i.e., in charge of scene management) once Officer Flores arrived. (AER 56 & 108, Fact 45; AER 184, ¶ 14.) Knowing the accident was in his beat area, Officer Flores intended to follow his understanding of normal practice among CHP Officers and respond to the collision scene to take over the collision investigation and act as Incident Commander. (AER 57 & 109, Fact 51; AER 187, ¶ 3.)[22]

Officer Colunga also never witnessed Mr. Gregoire engaging in activities that Officer Colunga perceived to constitute patient care; instead,

---

[22] Mr. Gregoire's basis for disputing Facts 45 and 51 is Fire Captain Albright's testimony that he radioed to his fire dispatch center that he was establishing "IC." (AER 56, Fact 45.) Yet, the material issue for qualified immunity analysis is whether Mr. Gregoire presents clearly established law negating both CHP Officers' reasonable belief under the circumstances that they perceived they had statutory authority giving them incident command responsibilities over scene management. He does not. Furthermore, from a factual standpoint, Captain Albright admitted he did not believe any of the CHP Officers would have heard his radio call proclaiming that he was "IC." (AER 77:9 – 78:15.) There is also no dispute that Officer Colunga arrived on scene before any other on-duty emergency responders and formed the belief that he was Incident Commander. (AER 49 & 104, Facts 9 & 10; AER 181, ¶¶ 3-4.)

prior to the arrest, Officer Colunga saw Mr. Gregoire standing with a group of fire fighters in the center median area. (AER 56 & 108, Fact 46; AER 184, ¶ 15.) Mr. Gregoire does not dispute this. He simply objects that Officer Colunga's testimony is irrelevant, improper lay opinion, and immaterial. (AER 56, Fact 46.)

### 5. Officer Flores' Arrest Decision

There is no genuine dispute that Officer Flores and Mr. Gregoire engaged in a conversation during which Officer Flores was giving orders and Mr. Gregoire was saying he would not comply with those orders. (AER 62-63 & 112, Facts 80-87; AER 189-190, ¶ 10.) There is no genuine dispute that Officer Flores ultimately warned Mr. Gregoire that, if he did not comply with the orders, he would be arrested for delaying the officers in their investigation. Further, there is no genuine dispute that, just before he was directed to step over the K-rail and submit to arrest, Mr. Gregoire affirmatively indicated he was not going to comply with the orders and that Officer Flores should just go ahead and arrest him. (AER 63 & 113, Facts 85-86; AER 189-190, ¶ 10.) Finally, there is no dispute that Officer Flores formed the belief that Mr. Gregoire was violating California Penal Code § 148(a) and California Vehicle Code § 2800(a). (AER 64 & 113, Fact 89; AER 190, ¶ 11.)

46

The only claims that Mr. Gregoire makes on these point is that (1) instead of telling Mr. Gregoire to move the truck, Officer Flores commanded him to drive the truck back to the station; (2) Mr. Gregoire claims he was involved in patient care and was telling this to Officer Flores, and (3) Mr. Gregoire disagrees with the two officers' assessment that the fire truck was causing a hazard rather than protecting the scene. (AER 62-63, Mr. Gregoire's response to Facts 82-87.)

Yet, as noted above, Mr. Gregoire provides no evidence that either Officer Flores or Officer Colunga ever perceived him to be involved in providing medical care. The officers had objectively reasonable grounds for perceiving there was sufficient medical staff (independently of Mr. Gregoire and even his entire crew) to take care of the patients. The officers had objectively reasonable grounds for concluding that the relative risks of having the fire trucks parked in lanes outweighed any conflicting opinions that Mr. Gregoire or others might have had about the potential benefit of keeping the fire truck in lanes. The officers also had objectively reasonable grounds for concluding they had scene command authority under various statutes that imposed on the officers the duty to manage the scene for the safety of the entire public.

Mr. Gregoire will point to language in the scene management statutes indicating that medical personnel were responsible for medical care and that the statutes contemplate law enforcement consultation with medical staff in the course of scene management. Mr. Gregoire's central contention will be that Officer Flores did not sufficiently consult with medical staff about patient needs before giving orders to move the truck. Yet, Mr. Gregoire will make this argument in a complete vacuum of guiding authority over how law enforcement officers must exercise scene management in the infinite variety of accident scene complexities that they confront.

Thus, even assuming the genuine disputed material facts in Mr. Gregoire's favor, this case falls in the center circle of the target of scenarios justifying qualified immunity. This case presents a unique set of circumstances wherein a peace officer had to make an arrest decision in the context of a conflict over which of two agency's representatives had controlling authority, under a variety of state statutes, to determine how various aspects of a traffic accident scene would be managed on a dangerous and busy Interstate at night. The interpretation and application of the relevant statutes have <u>never</u> undergone the crucible of judicial Fourth Amendment analysis under any set of facts that would give clearly established guidance to peace officers as to how to resolve conflicts that

48

emerge between peace officers and firefighters over traffic incident scene management.

Accordingly, Mr. Gregoire cannot establish that Officer Flores violated clearly established law. Officer Flores should be entitled to qualified immunity against Mr. Gregoire's unlawful arrest/seizure claim.

## II. THE DISTRICT COURT ALSO ERRED IN ITS DETERMINATION ON THE FIRST TIER OF QUALIFIED IMMUNITY FOR THE UNLAWFUL ARREST CLAIM

The CHP and Officer Flores respectfully ask this Court to review and reverse the District Court's determination that Mr. Gregoire's Fourth Amendment right to be free from unlawful arrest or seizure was violated.

### A. Standard of Review

Even though the primary issue in this appeal is whether Mr. Gregoire can meet the burden to show violation of clearly established law, this Court can also review whether the District Court erred on the first question of qualified immunity analysis. *See Plumhoff v. Rickard,* ____ U.S. ___, 134 S. Ct. 2012, 2019 (2014) (holding that appellate courts may review both tiers of the qualified immunity analysis). Federal appellate courts "may adjudicate 'legal' interlocutory appeals; that is, [they] may properly review a denial of qualified immunity where a defendant argues . . . that the facts,

49

even considered in the light most favorable to the plaintiff, show no violation of a constitutional right, or no violation of a right that is clearly established in law." *Ames v. King County, Washington*, 846 F.3d 340, 347 (9th Cir. 2017). The denial of both tiers of the qualified immunity claim is reviewed de novo, with the facts and reasonable inferences from those facts considered in the light most favorable to the non-moving party. *Id.* at 347.

### B. Officer Flores had Sufficient Probable Cause to Justify the Arrest

Officer Flores had an objectively reasonable basis for believing his orders were lawful and that Mr. Gregoire was refusing to comply, even assuming that Mr. Gregoire played some role in patient care, that he was told to drive the fire truck back to the station, that Officer Flores did not personally discuss patient needs with medical officials, and that part of the ambulance was protruding into the number 1 lane.

California Vehicle Code § 2410, California Penal Code § 409.3, and California Health and Safety Code § 1798.6(c) provided Officers Flores and Colunga with the lawful authority to manage the accident scene to protect public safety. Both officers reasonably believed that they represented the law enforcement agency with primary investigative authority and that Officer Colunga was the first Incident Commander, followed by Officer

Flores upon his arrival.  (Fact 10[23] [AER 181, ¶ 4]; Fact 45 [AER 184, ¶ 14];

Fact, 51 [AER 187, ¶ 3] & Fact 79 [AER 189, ¶ 10.].)

Congruent with the language of the above three statutes, the officers

reasonably believed their duties as incident managers included assessing the

entire scene, making sure that medical care had been summoned for injured

parties, and controlling where equipment and personnel were located so as to

minimize safety hazards to those on scene and to the motoring public

(including trying to prevent secondary accidents).  (Fact 19 [AER 182, ¶ 8];

Fact 28 [AER 183, ¶ 10]; Fact 68 [AER 188, ¶ 8]; Fact, 70 [AER 189, ¶ 8];

& Fact 71 [AER 189, ¶ 9].)

These officers assessed this scene using their training and experience

and came to the reasonable conclusions that: (1) the accident scene was

well-shielded in the construction area, (2) that there was no debris in the

southbound lanes, (3) that the ambulance appeared to be parked in the center

median area out of lanes, (4) that placement of fire trucks in lanes did not

---

[23] The specific AER page numbers of each parties' Separate
Statements where each cited Fact number appears were included above in
the Statement of Facts and in Section I of the Argument section, along with
citations to the AER locations for supporting evidence.  In the remainder of
this section II (B) of the brief, Fact number citations will not repeat the
Separate Statement page numbers.  Instead, the factual discussions will be
followed by references only to the corresponding Fact numbers and the
supporting evidence locations in brackets.

51

appear necessary to protect the scene, (5) that there was no apparent risk of fire requiring fire suppression activities, (6) that the ambulance would be able to safely enter the freeway at the appropriate time without the need for the fire trucks blocking lanes, and (7) that the two patients were being cared for by sufficient medically-qualified paramedics, independently of any actions by Mr. Gregoire. (Fact 12 [AER 181, ¶ 5]; Facts 15 – 18 [AER 181-182, ¶ 6; AER 127:2 – 128:2; AER 128:17 – 129:21; AER 182, ¶ 7; AER 51-52 & 105-106]; Facts 20-23 [AER 182-183, ¶¶ 9 10; AER 128:6-9; AER 145:18-21]; Facts 36- 37 [AER 183-184, ¶ 11; AER 132:3 – 135:19; AER 155]; Facts 47- 48 [AER 184-185, ¶¶ 16-17]; Facts 57 – 61 [AER 188, ¶ 6; AER 190-191, ¶¶ 12-13; AER 193-196; AER 132:3 – 135:19; AER 155; AER 155; AER 135:20 – 136:19; & AER 157]; Facts 65- 66 [AER 188, ¶¶ 7-8]; Facts 72 – 75 [AER 189, ¶ 9; AER 127:2 – 128:2; & AER 128:17 – 129:21]; & Facts 96 – 98 [AER 191, ¶ 14; AER 130:7 – 131:20; AER 172:9 – 174:25.])

At the same time, they applied their training and experience and assessment of the scene to conclude that the fire trucks were creating a serious risk of causing secondary accidents that could injure or kill other people and should be moved. (Facts 26– 35 [AER 183, ¶¶ 10-11; AER

175:1-24; AER 176], Facts 38-39 [AER 184, ¶ 11]; Facts 67- 69 [AER 188-

189, ¶ 8; AER 175:1-24]; & Facts 75 – 78 [AER 189, ¶ 9; AER 175:1-24].)

It is undisputed that Officer Flores saw fire personnel, paramedics, and

at least one of the people who had been involved in the collision near the

vehicle in this center area. (Fact 59 [AER 188, ¶ 6; AER 190-191, ¶¶ 12-13;

& AER 193-196].) While Mr. Gregoire disputes whether Officer Flores ever

consulted with medical personnel or firefighters about the status of patient

care,[24] it is undisputed that Officer Flores personally saw paramedics

providing medical care to the vehicle occupants. (AER 59 & 110, Fact 61;

AER 188, ¶ 6.) He had an objectively reasonable basis for concluding that

sufficient personnel were in place to treat the two patients independently of

Mr. Gregoire and that there was no need for him to consult with anyone

about medical care before ordering the trucks moved.

---

[24] Mr. Gregoire's claim Officer Flores did not consult with any
medical staff is supported only by conclusory declarations by people who
did not establish foundational facts that they watched the officers at all times
so as to be competent to confirm their every move. Fed. R. Evid. 602. (See
Footnote 19 above.) Regardless, even assuming that the information can be
considered, Mr. Hutton and Mr. Rees were clearly talking about only one
officer. They do not attest that none of the officers ever consulted with
medical staff. (AER 94-96 & 99-100.) In addition, footnotes 4 and 7
demonstrate the failure of Ms. Mitchell's declaration to counter the fact that
Officer Colunga was talking to fire crews and the patients.

There is also no dispute that Officer Flores overheard Officer Colunga telling a group of firefighters that he had told them several times to move their engine and asking why they had not yet done so. (Facts 62-64 [AER 188, ¶ 7].) Officer Flores heard Officer Colunga state that the collision scene was safely within the construction area and that the truck was not providing any protection. (Fact 65 [AER 188, ¶ 7].) Thus, Officer Colunga was discussing the matter of scene management with fire fighters.

As noted above, Officer Colunga's observations, knowledge, and actions are relevant to corroborating Officer Flores' observations and actions and for purposes of showing the lawfulness of Officer Flores' orders and probable cause pursuant to the collective knowledge rule. *United States v. Bernard*, 623 F.2d 551, 560-561 (9th Cir. 1980).

While Mr. Gregoire presents some evidence that he played a minor role in patient care, he provides no evidence that Officer Flores or Officer Colunga ever perceived that Mr. Gregoire was participating in patient care or was even needed for patient care. (Fact 46 [AER 184, ¶ 15]; Facts 93- 94 [AER 191, ¶ 14; AER 168:21 – 171:4; AER 179; AER 146:24 – 149:24; AER 159].) The Mitchell, Rees, and Hutton declarations (AER 94-101) do not refute both officers' reasonable perceptions that Mr. Gregoire did not appear to be engaged in or even essential to patient care. These declarations

54

contain only broad, conclusory statements that Mr. Gregoire was involved in patient care. They do not refute the officers' observations (as supported by pictures of the scene just before the arrest) that Plaintiff appeared to be simply standing with a group of firefighters and the two civilians.

Under the totality of the circumstances known by the officers, they reasonably concluded it was appropriate to direct that the fire trucks be moved out of lanes. Under these circumstances, Officer Flores reasonably concluded that a violation of California Penal Code § 148(a) and California Vehicle Code § 2800(a) was occurring in his presence.

### III. THE DISTRICT COURT ERRED IN DENYING OFFICER FLORES QUALIFIED IMMUNITY ON EXCESSIVE FORCE CLAIM

The standard of review for this claim is the same as for the unlawful arrest claim. Mr. Gregoire bases his excessive force claim on authorities such as *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993), wherein the Court held that qualified immunity was not available for a claim by the plaintiff that he had been handcuffed so tightly as to cause pain and bruising for several weeks and that the officer refused to loosen the handcuffs. *See, also, Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (handcuffing performed in rough manner and left painful bruising requiring medical treatment).

Yet, this case falls far short of such precedent. Mr. Gregoire acknowledges that the only thing he ever said to Officer Flores about the handcuffs was to make two requests in short succession, in the moments just prior to being placed in the patrol car, to loosen them. (AER 67 & 115, Fact 105; AER 139:14 – 142:18.) This means Mr. Gregoire never told Officer Flores that the handcuffs were causing any pain.

Officer Flores never told Mr. Gregoire anything like, "No, I'm not going to loosen them?" or "I'm going to tighten them." (AER 67 & 115, Fact 106; AER 142:19-24.) Officer Flores double locked the handcuffs prior to placing Mr. Gregoire in the car to prevent the handcuffs from tightening. He never intentionally tightened them. (AER 66-67 & 115, Facts 102-104; AER 190, ¶ 11.) Mr. Gregoire claims that the handcuffs were tightened after he first asked for them to be loosened; yet, he simply states the handcuffs just got tighter without any sensation of Officer Flores' wrists taking actions to make them tighter. (AER 140:7 – 141:10.) Mr. Gregoire claims Officer Flores ignored the second request to loosen the handcuffs just before they got in the car. (AER 142:14-24.) Yet, again, he never said anything about the handcuffs causing any pain.

Mr. Gregoire was in handcuffs in the patrol car for only 30 minutes. (AER 69 & 116, Fact 116; AER 191-192, ¶¶ 15-16.) Mr. Gregoire has never

taken any photographs to document any marks that he believed to have been left on his wrists from the handcuffs. (AER 67 & 115, Fact 108; AER 143:12-23.) He never sought any medical care for injuries that he attributes to the handcuffs. (AER 67-68 & 115, Fact 109; AER 143:24 – 144:2.) He never made any claim to anyone that he had marks on his wrists. (AER 68 & 116, Fact 110; AER 144:3-7.)

The only pain Mr. Gregoire claims to have encountered after the time the handcuffs were removed was as follows: "I think they were sore on my walk back, but I had a lot of adrenaline going on from what had just happened, so I may have put it out of my mind at that time. It was just a relief to have them off." (AER 68 & 116, Fact 111; AER 144:8-13.) His wrists were not sore the next morning. (AER 68 & 116, Fact 112; AER 144:14-16.) Since that morning, he has not experienced any pain in his wrists where the handcuffs had been. (AER 68 & 116, Fact 113; AER 144:17-23.)

Other than his claim that the handcuffs were too tight, Mr. Gregoire admits that Officer Flores did not engage in any activity that Mr. Gregoire believed to be improper use of force. He admits no part of his body was physically injured as a result of any of Officer Flores' actions that night. (AER 68-69 & 116, Facts 114-115; AER 150:9-18; AER 151:25 – 152:9.)

57

Under these circumstances, it would not have been readily apparent to a peace officer that there was any excessive force. Mr. Gregoire's Fourth Amendment rights were not violated. Officer Flores did not violate clearly established law. Officer Flores should be entitled to qualified immunity on both grounds.

## IV. MR. GREGOIRE'S CAUSE OF ACTION FOR BATTERY IS WITHOUT MERIT, BECAUSE THE FORCE USED BY OFFICER FLORES WAS REASONABLE AND JUSTIFIED

A California battery claim against a peace officer is based on the same reasonableness standard as a federal excessive force claim. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009). Mr. Gregoire must prove unreasonable force. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998). Also, a peace officer has a privilege under California Penal Code § 835 to use "such restraint as is reasonable for his arrest and detention." Simple handcuffing is a routine incident of arrest. Given the undisputed material facts recited in Section III above, Officer Flores did not use excessive force. Thus, the battery claim is without merit.

## V. MR. GREGOIRE'S CLAIM UNDER CALIFORNIA CIVIL CODE SECTION 52.1 IS WITHOUT MERIT BECAUSE THERE WAS PROBABLE CAUSE FOR HIS ARREST

Mr. Gregoire's California Civil Code § 52.1 (Bane Act) claim is based solely on an alleged violation of the Fourth Amendment's prohibition against unreasonable arrests. Since there was probable cause for the arrest, the § 52.1 claim must be dismissed. *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170-1171 (9th Cir. 1996) (*overruled on other grounds in Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)).

## VI. MR. GREGOIRE'S CLAIM FOR FALSE IMPRISONMENT IS WITHOUT MERIT, AS THE ARREST WAS SUPPORTED BY PROBABLE CAUSE

False imprisonment and false arrest are not separate torts under California law. *Collins v. City and County of San Francisco*, 50 Cal. App. 3d 671, 673 (1975) False imprisonment is "'the unlawful violation of the personal liberty of another.'" *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997) (quoting *Fermino v. Fedco., Inc.*, 7 Cal. 4th 701, 715 (1994)). The confinement must be "'"without lawful privilege."'" *Id.* (quoting *Molko v. Holy Spirit Assn.* (1988) 46 Cal. 3d 1092, 1123.) Yet, Officer Flores had the lawful privilege under California Penal Code §§ 836(a) and 847(b).

59

Section 847(b)(1) precludes civil liability on the part of a peace officer for false imprisonment when, at the time of the arrest, the peace officer had probable cause to believe the arrest was lawful. Under § 836(a)(1), a peace office may arrest a person without a warrant whenever '[t]he officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence." These provisions are analyzed under the same probable cause standard applicable in evaluating Fourth Amendment claims: "'Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.]'" *Hamilton v. City of San Diego*, 217 Cal. App. 3d 838, 844 (1990) (quoting *People v. Fischer*, 49 Cal. 2d 442, 446 (1957)).

As Officer Flores demonstrated above that there was probable cause for the arrest, the false imprisonment claim also fails.

## VII. SINCE OFFICER FLORES IS NOT LIABLE ON THE STATE LAW TORT CLAIMS, THE STATE (CHP) IS ALSO NOT LIABLE

Direct liability against the CHP can only exist by way of statute. Cal. Gov't Code, § 815; *Miklosy v. Regents of University of California*, 44 Cal. 4th 876, 899 (2008). Thus, to the extent that Mr. Gregoire attempts to impose liability for his state law state claims against the State, it can only be

by way of the vicarious liability provision of California Government Code §
851.2. However, having shown that Officer Flores is not liable for the state
law claims of false imprisonment, battery, and California Civil Code § 52.1,
it necessarily follows that the State cannot be vicariously liable. Also, where
Officer Flores' conduct was privileged under Penal Code §§ 836, 835, and
847, the State is also immune. Gov. Code § 815.2(b).

## CONCLUSION

Accordingly, the CHP and Officer Flores respectfully ask this Court to
reverse the District Court's Order and remand for entry of summary
judgment in their favor on all claims.

Dated: February 16, 2017      Respectfully submitted,

                                                         XAVIER BECERRA
Attorney General of California
KRISTIN G. HOGUE
Senior Assistant Attorney General
RICHARD F. WOLFE
Supervising Deputy Attorney General


/S/ DOUGLAS E. BAXTER
DOUGLAS E. BAXTER
Deputy Attorney General
*Attorneys for Defendants - Appellants*
*California Highway Patrol and Sergio*
*Flores*

SD2016700257
81590099.docx

16-55286

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**Jacob Gregoire,**

Plaintiff-Appellee,

**v.**

**California Highway Patrol, an agency of the State of California; Sergio Flores,**

Defendants-Appellants.

---

## STATEMENT OF RELATED CASES

To the best of our knowledge, there are no related cases.

Dated:  February 10, 2017                Respectfully Submitted,

Xavier Becerra
Attorney General of California
Kristin G. Hogue
Senior Assistant Attorney General
Richard F. Wolfe
Supervising Deputy Attorney General


/s/ Douglas E. Baxter
Douglas E. Baxter
Deputy Attorney General
*Attorneys for Defendants - Appellants*
*California Highway Patrol and Sergio Flores*

# ADDENDUM OF PRIMARY STATUTORY AUTHORITY

**TABLE OF CONTENTS**

**ADDENDUM OF PRIMARY STATUTORY AUTHORITY**

California Health and Safety Code § 1798.6 ............................................... 64

California Penal Code § 148(a) .................................................................. 65

California Penal Code § 409.3 ................................................................... 65

California Vehicle Code § 2410 ................................................................ 65

California Vehicle Code § 2412 ................................................................ 65

California Vehicle Code § 2800(a) ........................................................... 66

## ADDENDUM OF PRIMARY STATUTORY AUTHORITY

**California Health and Safety Code § 1798.6:**

(a)  Authority for patient health care management in an emergency shall be vested in that licensed or certified health care professional, which may include any paramedic or other prehospital emergency personnel, at the scene of the emergency who is most medically qualified specific to the provision of rendering emergency medical care.  If no licensed or certified health care professional is available, the authority shall be vested in the most appropriate medically qualified representative of public safety agencies who may have responded to the scene of the emergency.

(b)  If any county desires to establish a unified command structure for patient management at the scene of an emergency within that county, a committee may be established in that county comprised of representatives of the agency responsible for county emergency medical services, the county sheriff's department, the California Highway Patrol, public prehospital-care provider agencies serving the county, and public fire, police, and other affected emergency service agencies within the county.  The membership and duties of the committee shall be established by an agreement for the joint exercise of powers under Chapter 5 (commencing with Section 6500) of Division 7 of Title 1 of the Government Code.

(c)  Notwithstanding subdivision (a), authority for the management of the scene of an emergency shall be vested in the appropriate public safety agency having primary investigative authority.  The scene of an emergency shall be managed in a manner designed to minimize the risk of death or health impairment to the patient and to other persons who may be exposed to the risks as a result of the emergency condition, and priority shall be placed upon the interests of those persons exposed to the more serious and immediate risks to life and health.  Public safety officials shall consult emergency medical services personnel or other authoritative health care professionals at the scene in the determination of relevant risks.

**California Penal Code § 148(a):**

Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

**California Penal Code § 409.3:**

Whenever law enforcement officers and emergency medical technicians are at the scene of an accident, management of the scene of the accident shall be vested in the appropriate law enforcement agency, whose representative shall consult with representatives of other response agencies at the scene to ensure that all appropriate resources are properly utilized. However, authority for patient care management at the scene of an accident shall be determined in accordance with Section 1798.6 of the Health and Safety Code.

For purposes of this section, "management of the scene of an accident" means the coordination of operations which occur at the location of an accident.

**California Vehicle Code § 2410:**

Members of the California Highway Patrol are authorized to direct traffic according to law, and, in the event of a fire or other emergency, or to expedite traffic or insure safety, may direct traffic as conditions may require notwithstanding the provisions of this code.

**California Vehicle Code § 2412:**

All members of the California Highway Patrol may investigate accidents resulting in personal injuries or death and gather evidence for the purpose of prosecuting the person or persons guilty of any violation of the law contributing to the happening of such accident.

**California Vehicle Code § 2800(a):**

It is unlawful to willfully fail or refuse to comply with a lawful order, signal, or direction of a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, when that peace officer is in uniform and is performing duties pursuant to any of the provisions of this code, or to refuse to submit to a lawful inspection pursuant to this code.

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** <u>16-55286</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [13,988] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [          ]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant /s/ Douglas E. Baxter    Date [2/16/2017]

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

## CERTIFICATE OF SERVICE

Case Name:   **Gregoire v. CHP**                    No.   **A16-55286**

I hereby certify that on **February 16, 2017**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1.   **APPELLANT'S OPENING BRIEF**

2.   **APPELLANTS' EXCERPTS OF RECORD – VOL. 1 of 2**

3.   **APPELLANTS' EXCERPTS OF RECORD – VOL. 2 of 2**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **February 16, 2017**, at San Diego, California.

J. L. Hall
Declarant

Signature

SD2016700257
81594726.doc