16-55286

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**JACOB GREGOIRE,**

Plaintiff-Appellee,

v.

**CALIFORNIA HIGHWAY PATROL, an agency of the State of California; SERGIO FLORES,**

Defendants - Appellants.

On Appeal from the United States District Court
for the Southern District of California

No. 3:14-cv-01749-GPC-DHB
The Honorable Gonzalo P. Curiel,
United States District Judge

### APPELLANTS' EXCERPTS OF RECORD – VOL. 1 OF 2

XAVIER BECERRA
Attorney General of California
KRISTIN G. HOGUE
Senior Assistant Attorney General
RICHARD F. WOLFE
Supervising Deputy Attorney General
DOUGLAS E. BAXTER
Deputy Attorney General
State Bar No. 201351
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 738-9567
  Fax:          (619) 645-2581
  Email:  Douglas.Baxter@doj.ca.gov
*Attorneys for Defendants - Appellants*
*California Highway Patrol and Sergio*
*Flores*

INDEX OF APPELLANTS' EXCERPTS OF RECORDS VOL. 1 of 2

| DOCUMENT | TRIAL COURT DOCKET NO. | AER PAGES |
|---|---|---|
| Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment | 46 | 1-25 |

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB GREGOIRE, | CASE NO. 14CV1749-GPC(DHB) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CALIFORNIA HIGHWAY PATROL, an agency of the State of California; SERGIO FLORES; and DOES 1 to 20, | [Dkt. No. 25.] |
| Defendants. | |

Before the Court is Defendants California Highway Patrol and Sergio Flores' motion for summary judgment. (Dkt. No. 25.) An opposition was filed on January 20, 2016. (Dkt. No. 35.) A reply was filed on February 2, 2016. (Dkt. No. 42.) After a review of the briefs, supporting documentation, and the applicable law, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

**Procedural Background**

On June 12, 2014, Plaintiff Jacob Gregoire, a Fire Engineer/ Emergency Medical Technician ("EMT") for the Chula Vista Fire Department filed a 42 U.S.C. § 1983 complaint against Defendant Sergio Flores, a California Highway Patrol ("CHP") officer, and Defendant California Highway Patrol in San Diego Superior Court for

AER 001

unreasonable seizure,[1] excessive force and state law causes of action for violation of California Civil Code ("Civil Code") section 52.1, battery, false imprisonment, and intentional infliction of emotional distress.  (Dkt. No. 1-1, Compl.)  The case was removed to this Court on July 25, 2014.  (Dkt. No. 1.)  Defendants bring a motion for summary judgment on all causes of action in the complaint.  (Dkt. No. 25.)

### Factual Background

The undisputed facts are the following.  During the evening of February 4, 2014, CHP Officers Eliazar Colunga ("Colunga") and Sergio Flores ("Flores") were on duty for C-watch (5:00 p.m. to 5:30 a.m.).  (Dkt. No. 35-1, SSUF[2] Nos. 1, 4.)  Colunga has been a CHP patrol officer for about 17 years and Flores has been a CHP patrol officer since July 1994.  (Id., SSUF Nos. 3, 6.)

Just before 9:30 p.m., Officer Colunga responded to a radio call about an overturned vehicle in the area of Interstate 805 ("I-805") and Telegraph Canyon Road in the City of Chula Vista.  (Id., SSUF No. 7.)  The collision occurred in the northbound lanes of the I-805, and the vehicle to which Colunga was responding came to rest in a wide construction area between cement k-rail walls that separated the northbound and southbound lanes.  (Id., SSUF No. 8.)  Colunga saw no other on-duty emergency responders at the scene when he arrived and parked his patrol car south of the collision in the center construction area, where the k-rails on the southbound side ended and the center construction area was accessible.  (Id., SSUF No. 9.)

Colunga approached the overturned vehicle and made contact with two civilians, James Hutton ("Hutton") and Autumn Mitchell ("Mitchell") who had come upon the accident scene after the accident but before Colunga arrived.  (Id., SSUF No. 11.)

---

[1]In the motion for summary judgment, both parties address unreasonable seizure as an unlawful arrest cause of action.  "Courts generally treat an unlawful arrest as one manner of violating the Fourth Amendment prohibition on unreasonable seizures."  Kyles v. Baker, 72 F. Supp. 3d 1021, 1050 n. 2 (N.D. Cal. 2014) (citing cases) (district court considered separate claims of unlawful arrest and unreasonable seizure under a single unlawful arrest analysis).

[2]Plaintiff's Response to Defendants' Separate Statement of Undisputed Material Facts.  (Dkt. No. 35-1.)

[14CV1749-GPC(DHB)]

AER 002

Hutton was an off-duty EMT.  (Id.)  Officer Colunga saw that both of the occupants of the rollover vehicle were conscious, with one lying on the ground and the other standing.  (Id., SSUF No. 12.)  During the evening, Officer Colunga was able to communicate with the two occupants.  (Id., SSUF No. 13.)  Seeing that the off-duty EMT was holding the head of the person on the ground in a C-spine position and was without equipment, Officer Colunga went to his vehicle to retrieve a first aid bag that would have a C-spine collar.  (Id., SUF No.14.)

On the way to his patrol car, Officer Colunga saw an ambulance from American Medical Response ("AMR") arrive and park just south of Officer Colunga's patrol car.[3] (Id., SSUF No. 15.) The ambulance had its emergency lights activated.  (Id.)  When Colunga saw the ambulance crew walk over to the rolled over vehicle with their gear, Officer Colunga determined that it was not necessary for him to retrieve a first aid bag. (Id., SSUF No. 16.)  Colunga saw three people from the AMR ambulance, and, at the time, he believed all three were paramedics.  (Id., SSUF No. 17.)  Later, he learned that two of them were paramedics and one was an EMT.  (Id.)

Soon after the ambulance arrived, fire trucks began arriving.  (Id., SSUF No. 20.) Officer Colunga saw Chula Vista Engine 52 arrive and park in the number 1 lane on the southbound side.  (Id.)  Firefighter/EMT Gregoire drove Engine 52 with Captain David Albright and Firefighter/EMT Joshua Rees on board.  (Dkt. No. 35-5, Rees Decl. ¶ 3.)  Two other fire trucks arrived within short succession and parked behind Engine 52, blocking the number 1 and 2 lanes.  (Dkt. No. 35-1, SSUF No. 21.)  Then a fourth fire truck also came to the scene.  (Id.)  Colunga talked to crew members from two fire trucks, explained that they were not needed, should leave and return to their stations. (Dkt. No. 25-4, Colunga Decl. ¶ 10.)  Two fire trucks left the scene within a few

---

[3]The parties dispute whether the ambulance was out of traffic lanes.  Colunga asserts that the ambulance was parked outside of traffic lanes. (Dkt. No. 25-4, Colunga Decl. ¶ 6.) However, Captain David Albright testified that as he approached the scene, he spotted the ambulance, meaning where you position your apparatus, and it was about 50% into the dirt shoulder and 50% into the No. 1 or fast lane.   (Dkt. No. 35-2, Luneau Decl., Ex. 1, Albright Depo. at 64:2-65:2.)   He concluded that the AMR ambulance was 2-3 feet into the number 1 southbound lane.  (Id.)

1   minutes. (Id.) Colunga then asked members of the other two fire crews to move their

2   trucks into the center median. (Id.) Despite his requests to the remaining two Chula

3   Vista Fire crews to move their trucks, the trucks were not moved. (Id. ¶ 12.) Later,

4   Officer Colunga noticed that the two fire trucks were not moved, so he went back to

5   speak to the fire crews again and requested that they move the fire trucks. (Id. ¶ 12.)

6   It was at this point that Colunga saw Officer Flores walk up to where he was standing

7   with the fire fighters, close enough so that Flores could have overheard the

8   conversation. (Dkt. No. 35-1, SSUF No. 43.)

9        At around 9:30 p.m., Defendant Officer Flores heard radio traffic regarding the

10  collision. (Id., SSUF No. 49.) After clearing a traffic stop in Mission Valley, Flores

11  began driving southbound on the I-805 to respond to the accident scene. (Id., SSUF

12  No. 50.) Upon approaching the scene, Flores noticed that traffic was backing up so he

13  began a traffic break to bring traffic approaching the scene in slowly. (Id., SSUF No.

14  52.) He came upon a fire truck that was parked mostly in the number 1 lane and

15  partially into the number 2 lane. (Id., SSUF No. 53.) Where the fire truck was stopped,

16  there was a cement k-rail abutting the number 1 lane on the east side of the southbound

17  lanes. (Id., SSUF No. 54.) Flores stopped his patrol car about 100 feet behind the fire

18  truck and started to lay a flare pattern on the road proceeding from the rear of his patrol

19  vehicle in a diagonal pattern moving southbound toward the number 2 lane. (Id., SSUF

20  No. 56.)

21       Flores saw fire personnel, paramedics, and at least one of the people who had

22  been involved in the collision near the vehicle in this center area. (Id., SSUF No. 59.)

23  Flores determined that the collision had occurred on the northbound side and that the

24  vehicle had come to rest in the construction area. (Id., SSUF No. 60.) Officer Flores

25  saw paramedics providing medical care to the vehicle occupants. (Id., SSUF No. 61.)

26  Soon after completing his flare pattern, Officer Flores saw Officer Colunga speaking

27  to a group of firefighters. (Id., SSUF No. 62.) Officer Flores heard Officer Colunga

28  asking the group why they had not yet moved their fire engine and told them several

1  times that they needed to move their fire engine.  (Id., SSUF Nos. 63, 64.)

2       In his efforts to get the fire trucks moved, Officer Flores called out to the group

3  of fire fighters and asked who was driving the truck.  (Id., SSUF No. 80.)  Plaintiff

4  responded and stated he was driving the truck.  (Id., SSUF No. 81.)  The facts are

5  disputed as the conversation between Gregoire and Officer Flores which will be

6  discussed below.  (Id., SSUF Nos. 82-89.)

7       After the conversation, Flores directed Gregoire to step over a k-rail, Gregoire

8  stepped over the k-rail, and Officer Flores placed him under arrest and placed

9  handcuffs on Gregoire's wrists and walked him back to Flores' patrol car.  (Id., SSUF

10  Nos. 90, 92, 101.)  Plaintiff remained in custody for approximately 30 minutes before

11  being released.  (Id., SSUF No. 116.)

12                          **Discussion**

13  **A.   Legal Standard on Motion for Summary Judgment**

14       Federal Rule of Civil Procedure 56 empowers the Court to enter summary

15  judgment on factually unsupported claims or defenses, and thereby "secure the just,

16  speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477

17  U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings,

18  depositions, answers to interrogatories, and admissions on file, together with the

19  affidavits, if any, show that there is no genuine issue as to any material fact and that the

20  moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact

21  is material when it affects the outcome of the case.  Anderson v. Liberty Lobby, Inc.,

22  477 U.S. 242, 248 (1986).

23       The moving party bears the initial burden of demonstrating the absence of any

24  genuine issues of material fact.  Celotex Corp., 477 U.S. at 323.  The moving party can

25  satisfy this burden by demonstrating that the nonmoving party failed to make a

26  showing sufficient to establish an element of his or her claim on which that party will

27  bear the burden of proof at trial.  Id. at 322-23.  If the moving party fails to bear the

28  initial burden, summary judgment must be denied and the court need not consider the

1  nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60
2  (1970).

3      Once the moving party has satisfied this burden, the nonmoving party cannot rest
4  on the mere allegations or denials of his pleading, but must "go beyond the pleadings
5  and by her own affidavits, or by the 'depositions, answers to interrogatories, and
6  admissions on file' designate 'specific facts showing that there is a genuine issue for
7  trial.'"  Celotex, 477 U.S. at 324.  If the non-moving party fails to make a sufficient
8  showing of an element of its case, the moving party is entitled to judgment as a matter
9  of law.  Id. at 325.  "Where the record taken as a whole could not lead a rational trier
10 of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
11 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In
12 making this determination, the court must "view[] the evidence in the light most
13 favorable to the nonmoving party."  Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir.
14 2001).  The Court does not engage in credibility determinations, weighing of evidence,
15 or drawing of legitimate inferences from the facts; these functions are for the trier of
16 fact.  Anderson, 477 U.S. at 255.

17 **B.    42 U.S.C. § 1983 Causes of Action**

18      **1.    Unlawful Arrest as to Defendant Flores**

19      Defendants argue that based on the totality of the circumstances, Flores[4]

20

---

21      [4]Defendants argue that, under the "collective knowledge" doctrine, Officer
22  Colunga's knowledge must be considered in support of Officer's Flores' conclusion
    that his orders were lawful and he had probable cause to arrest Plaintiff for refusing to
23  comply with Flores' orders.  Under the collective knowledge doctrine, the Court must
    look at "the collective knowledge of all the officers involved in the criminal
24  investigation although all of the information known to the law enforcement officers
    involved in the investigation is not communicated to the officer who actually
25  [undertakes the challenged action]."  United States v. Ramirez, 473 F.3d 1026, 1032
    (9th Cir. 2007) (quoting United States v. Sutton, 794 F.2d 1415, 1426 (9th Cir.1986)).
26  Defendants cite to cases addressing the "collective knowledge" rule in probable cause
    cases.  See United States v. Bertrand, 926 F.2d 838, 844 (9th Cir. 1991) ("information
27  possessed by the undercover police woman and the lookout officer provided back up
    team with probable cause to arrest regardless of whether that information was actually
28  communicated to them"); Ramirez, 473 F.3d at 1032 (collective knowledge doctrine
    applied to warrantless stop of automobile by police officer at the request of

1  reasonably believed that it was appropriate to direct that the fire trucks be moved out

2  of lanes for safety reasons.  When Plaintiff failed to comply, it was reasonable for

3  Flores to conclude that Plaintiff was disobeying an order of a peace officer and was in

4  violation of California Penal Code section 148(a) and California Vehicle Code section

5  2800(a).  Plaintiff disputes Defendant's characterization as to what happened and

6  argues that his arrest was not supported by probable cause because Flores' order to

7  move the fire truck was not lawful.  In fact, Plaintiff asserts that Flores was in violation

8  of California Penal Code section 148(a) for delaying and obstructing the work of an

9  EMT.

10       "A claim for unlawful arrest is cognizable under § 1983 as a violation of the

11  Fourth Amendment, provided the arrest was without probable cause or other

12  justification." Lacey v. Maricopa Cnty., 693 F.3d 896, 918 (9th Cir. 2012).  Probable

13  cause exists when the officer has "a reasonable belief, evaluated in light of the officer's

14  experience and the practical considerations of everyday life, that a crime has been, is

15  being, or is about to be committed." Hopkins v. City of Sierra Vista, 931 F.2d 524, 527

16  _____

17  investigating officer within same police department without relaying any factual basis
    for investigating officer's determining of reasonable suspicion or probable cause);

18  United States v. Bernard, 623 F.2d 551, 560-61 (9th Cir. 1979) (collective knowledge
    of all three DEA agents was sufficient to establish probable cause where the DEA

19  agents were working in close concert and where arresting officer relied to a "great
    degree" on the opinion of another agent even though some of the critical information

20  had not been communicated to him.")  While Defendants cite to the general rule in
    these cases that an arresting offer need not have personal knowledge of facts indicating

21  probable cause and may rely on the collective knowledge of other officers in the case,
    the specific facts in these cited cases reveal that there was a close relationship between

22  the officers or a communication to arrest an individual based on the ordering person's
    information that supported probable cause.

23       Here, the facts establish that Flores overheard Colunga asking the group of
    firemen who their Fire Captain was and why they had not yet moved their fire engine.

24  (Dkt. No. 25-5, Flores Decl. ¶ 7.)  He heard someone state their truck was there to
    protect the scene. (Id.)  He heard Colunga say that he told them several times to move

25  the fire engine and that the collision scene was safely within the construction area and
    the truck was not providing protection. (Id.)

26       First, the facts and interaction that Flores witnessed do not rise to the level of
    probable cause especially in light of the statutes concerning the role of EMTs in an

27  accident scene.  Furthermore, there was no indication or direction by Colunga that
    Plaintiff should be arrested.  However, even applying the collective knowledge

28  doctrine, based on the record before this Court, a genuine issue of material fact exists
    as to whether there was probable cause to arrest Plaintiff.

[14CV1749-GPC(DHB)]

AER 007

1   (9th Cir. 1991) (citation and internal quotations omitted).  "Probable cause exists if the

2   arresting officers 'had knowledge and reasonably trustworthy information of facts and

3   circumstances sufficient to lead a prudent person to believe that [the arrestee] had

4   committed or was committing a crime.'"  Maxwell v. Cnty. of San Diego, 697 F.3d

5   941, 951 (9th Cir. 2012) (quoting United States v. Ricardo D., 912 F.2d 337, 342 (9th

6   Cir. 1990)).  "Where the facts or circumstances surrounding an individual's arrest are

7   disputed, the existence of probable cause is a question for the jury."  Harper v. City of

8   Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008) (citing McKenzie v. Lamb, 738 F.2d

9   1005, 1008 (9th Cir. 1984)).

10      Penal Code section 148(a)(1) provides,

11      Every person who willfully resists, delays, or obstructs any public
        officer, peace officer, or an emergency medical technician . . . in the
12      discharge or attempt to discharge any duty of his or her office or
        employment, when no other punishment is prescribed, shall be
13      punished by a fine not exceeding one thousand dollars ($1,000), or by
        imprisonment in a county jail not to exceed one year, or by both that
14      fine and imprisonment.

15   Cal. Penal Code § 148(a)(1).  This section makes it a crime to "willfully resist[], delay

16   [], or obstruct[]"  a peace officer or emergency medical technician "in the *lawful*

17   exercise of his duties."  Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (en

18   banc) (emphasis in original).  The elements of a violation of section 148(a)(1) are "(1)

19   the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the

20   officer was engaged in the performance of his or her duties, and (3) the defendant knew

21   or reasonably should have known that the other person was a peace officer engaged in

22   the performance of his or her duties."  Smith, 394 F.3d at 695 (quoting In re

23   Muhammed C., 95 Cal. App. 4th 1325, 1329 (2002)).  "In California, the lawfulness

24   of the officer's conduct is an essential element of the offense of resisting, delaying, or

25   obstructing a peace officer."  Id. at 695.  It is not a crime to resist unlawful orders.  Id.

26      In addition, California Vehicle Code section 2800(a) states,

27      It is unlawful to willfully fail or refuse to comply with a lawful order,
        signal, or direction of a peace officer . . . when that peace officer is in
28      uniform and is performing duties pursuant to any of the provisions of

- 8 -                                                    [14CV1749-GPC(DHB)]

this code, or to refuse to submit to a lawful inspection pursuant to this code.

Cal. Veh. Code § 2800(a).  This section authorizes traffic officers to make "'an order, signal, or direction' the disobedience of which is illegal, is limited to lawful orders, willfully disregarded or disobeyed."  <u>People v. Ritter</u>, 115 Cal. App. 3d Supp. 1, 6 (1980) (quoting Cal. Veh. Code § 2800).

To determine whether Plaintiff violated these provisions, the Court must look at other related statutes, raised by both parties, that describe and define the role of CHP officers and EMT personnel during a traffic accident involving personal injury.  <u>See</u> Cal. Veh. Code §§ 2410, 2412; Cal. Penal Code § 409.3; Cal. Health & Safety Code § 1798.6.

CHP officers have lawful authority to investigate and direct traffic during accidents involving personal injuries on California highways.  <u>See</u> Cal. Veh. Code § 2412 ("All members of the California Highway Patrol may investigate accidents resulting in personal injuries or death and gather evidence for the purpose of prosecuting the person or persons guilty of any violation of the law contributing to the happening of such accident."); Cal. Veh. Code § 2410 ("Members of the California Highway Patrol are authorized to direct traffic according to law, and, in the event of a fire or other emergency, or to expedite traffic or insure safety, may direct traffic as conditions may require notwithstanding the provisions of this code.")

California Penal Code section 409.3 provides,

> Whenever law enforcement officers and emergency medical technicians are at the scene of an accident, **management of the scene** of the accident shall be vested in the appropriate law enforcement agency, whose representative **shall consult** with representatives of other response agencies at the scene to ensure that all appropriate resources are properly utilized. **However, authority for patient care management at the scene of an accident shall be determined in accordance with Section 1798.6 of the Health and Safety Code.**
>
> For purposes of this section, "management of the scene of an accident" means the coordination of operations which occur at the location of an accident.

Cal. Penal Code § 409.3 (emphasis added).  Lastly, California Health & Safety Code

[14CV1749-GPC(DHB)]

AER 009

section 1798.6 provides,

> (a) Authority for patient health care management in an emergency shall be vested in that licensed or certified health care professional, which may include any paramedic or other prehospital emergency personnel, at the scene of the emergency who is most medically qualified specific to the provision of rendering emergency medical care. If no licensed or certified health care professional is available, the authority shall be vested in the most appropriate medically qualified representative of public safety agencies who may have responded to the scene of the emergency. . . .

> (c) Notwithstanding subdivision (a), **authority for the management of the scene of an emergency shall be vested in the appropriate public safety agency having primary investigative authority. The scene of an emergency shall be managed in a manner designed to minimize the risk of death or health impairment to the patient and to other persons who may be exposed to the risks as a result of the emergency condition, and priority shall be placed upon the interests of those persons exposed to the more serious and immediate risks to life and health. Public safety officials shall consult emergency medical services personnel or other authoritative health care professionals at the scene in the determination of relevant risks.**

Cal. Health & Safety Code § 1798.6 (emphasis added).  "Management of the scene" under section (c) refers to "nonmedical management and therefore vests authority in law enforcement personnel . . . ." Cnty. of San Bernardino v. City of San Bernardino, 15 Cal. 4th 909, 928 (1997).  Based on these statutes, management of the scene of an emergency vests in the CHP officers while patient health care management in an emergency vests in the paramedics/EMTs.  Management of the scene requires the CHP officers to consult "with representatives of other response agencies at the scene to ensure that all appropriate resources are properly utilized", Cal. Penal Code § 409.3, and as it specifically relates to patient care, CHP officers must "consult emergency medical services personnel or other authoritative health care professionals at the scene in the determination of relevant risks," Cal. Health & Safety § 1798.6.  In addition, the accident scene must be managed to "minimize the risk of death or health impairment to the patient and to other persons who may be exposed to the risks as a result of the emergency condition, and priority shall be placed upon the interests of those persons exposed to the more serious and immediate risks to life and health." Id.  Penal Code

[14CV1749-GPC(DHB)]

1  section 409.3 and Health & Safety Code section 1798.6 contain mandatory provisions

2  requiring CHP officers to consult with medical personnel at the scene of an emergency

3  accident.  See Cal. Penal Code § 409.3; Cal. Health & Safety Code § 1798.6.

4          According to Defendant Flores, based on his training and experience and

5  personal observations, he concluded that having fire trucks parked in traffic lanes were

6  not necessary to protect the scene. (Dkt. No. 25-5, Flores Decl. ¶ 8.) CHP officers are

7  responsible for managing the entire accident scene to protect the safety of the people

8  at the scene and the motoring public near the scene.  (Id. ¶ 9.)  Secondary accidents

9  occur at the scene of accidents due to the motoring public's surprise and confusion

10  resulting from suddenly encountering lane blockages from emergency equipment in

11  roadways during an accident scene. (Id.) This risk is higher on freeways where traffic

12  can come upon accident scenes at high speeds. (Id.)

13          At this accident scene, as he heard the conversation between Colunga and the

14  firefighters, Flores assessed that the ambulance which had responded to treat the

15  patients was parked in the center median area and out of traffic lanes and the collision

16  did not occur in any southbound lanes, so there was no debris field in any southbound

17  lanes.  (Id. ¶ 9.)  Flores believed that having fire trucks parked in traffic lanes were

18  posing a serious risk and unnecessary risk to the public and the trucks were not needed

19  to protect the accident scene since it was fully shielded in a large center construction

20  area by cement k-rail walls.  (Id.)  The truck he was trying to get moved was on the

21  I-805, which is a freeway on which people commonly travel at high speeds and he was

22  concerned about vehicles approaching at high speeds and unexpectedly coming upon

23  stopped emergency vehicles without time to react and causing secondary accidents and

24  additional people getting injured or killed.  (Id.)

25          Flores states that prior to arresting Gregoire, he did not see him engaged in any

26  activities that Flores perceived to be patient care. (Id. ¶ 14.)  It appeared that Gregoire

27  was standing with a group of other fire fighters while others were actually treating

28  patients.  (Id.)  Prior to ordering Gregoire to move the fire truck, Officer Flores was

aware that the patients were being treated by paramedics from an ambulance.  (Id. ¶ 14.)  Given his belief that the patients were being treated by paramedics, Officer Flores did not perceive a reason why Engineer Gregoire could not move his fire truck.  (Id.) Officer Flores' purpose in ordering Engineer Gregoire to move the fire truck was to eliminate a risk that Officer Flores believed it was posing to public safety.  (Id.)

When  Flores asked who was driving the truck, Plaintiff said that he was the driver.  (Id. ¶ 10.)  Flores directed Plaintiff to move the fire truck but Plaintiff said he would not move the truck.  (Id.)  Flores told him that he was giving him a direct order to move his fire truck but Plaintiff stated he would not move it.  (Id.)  Flores warned Plaintiff that if he did not comply he would be arrested by disobeying an order and for delaying officers in their investigation.  (Id.)  Plaintiff said to go ahead and arrest him. (Id.)  Flores argues he reasonably believed that Plaintiff was in violation of Penal Code section 148(a) and Vehicle Code section 2800(a) when Plaintiff failed to comply with Flores' order to move the fire truck.

In response, Plaintiff argues that Flores improperly walked on the scene, assumed he was in charge and without any investigation, without consulting with representatives from other responding agencies, and without even consulting with the other CHP officer at the scene before him, ordered Plaintiff to stop assisting with patient care and move the fire truck.  Plaintiff contends that the arrest of Plaintiff was not supported by probable cause because Flores' order was not lawful.  Flores failed to consult with the health care providers concerning the status of the injured victims which is required under Penal Code section 409.3 and Health & Safety Code section 1798.6.  Flores did not consult with any of the paramedics, EMTs or anyone else regarding the care of the patients.  (Dkt. No. 35-3, Hutton Decl. ¶ 7; Dkt. No. 35-4, Mitchell Decl. ¶ 9.)  In fact, Flores testified that he did not know how many people were injured and that one person was lying down on either a gurney or backboard. (Dkt. No. 35-2, Luneau Decl., Ex. 3, Flores Depo. at 120:17-121:21.)  Also, witnesses stated that when Plaintiff asked Flores what he was going to do about the patients,

1  Flores responded that "he did not care about the patients."  (Dkt. No. 35-4, Mitchell
2  Decl. ¶ 8; Dkt. No. 35-3, Hutton Decl. ¶ 7; Dkt. No. 35-2, Luneau Decl., Ex. 4 at 20-
3  21.[5])  Plaintiff raises a trial issue of fact as to whether Flores' order was lawful.

4       In addition, Plaintiff argues that Flores was violating the very same code section
5  that Defendant used to justify the arrest.  He contends that Flores violated Penal Code
6  section 148(a), which applies to EMTs, by delaying Plaintiff in discharging his duties,
7  and  Vehicle  Code  section  2801,  which  requires  compliance  with  any  order  of  a
8  fireman.  Cal. Veh. Code 2801.[6]  By ordering that the fire truck be moved, Flores was
9  refusing to comply with the firefighter's direction.

10      Plaintiff also disputes Flores' assessment of the scene of the accident that the
11  ambulance which responded to treat the patients was parked out of traffic lanes, and
12  therefore the fire trucks were not needed.  Officer Colunga stated that the ambulance
13  was parked outside of traffic lanes.  (Dkt. No. 25-4, Colunga  Decl. ¶ 6.)  However,
14  Captain  David  Albright  testified  that  as  he  approached  the  scene,  he  spotted  the
15  ambulance and it was about 50% into the dirt shoulder and 50% into the No. 1 or fast
16  lane. (Dkt. No. 35-2, Luneau Decl., Ex. 1, Albright Depo. at 64:2-65:2.)  The fire truck
17  was parked in the number one lane, behind the ambulance and provided a 25 foot safety
18  zone between the front of the engine and the ambulance to protect EMS crew during
19  patient packaging and loading.  (Dkt. No. 35-2, Luneau Decl., Ex. 4 at 20.)  This raises
20  a genuine of material fact whether Flores's assessment concerning his decision to order
21  the fire trucks removed was reasonable.

22      Lastly, Plaintiff creates a factual dispute as to Defendants' assertion that Plaintiff
23  had no role in patient care.  Gregoire states he was engaged in patient care when he was

24  _____

25      [5]Page numbers are based on the CM/ECF pagination.

26      [6]California Vehicle Code section 2801 specifically states, "It is unlawful to
27  wilfully fail or refuse to comply with any lawful order, signal, or direction of any
    member of any fire department, paid, volunteer, or company operated, when wearing
28  the badge or insignia of a fireman and when in the course of his duties he is protecting
    the personnel and fire department equipment."  Cal. Veh. Code § 2801.

1  arrested by Flores; Plaintiff was standing and holding the flashlight over the gurney
2  and the patient.  (Dkt. No. 35-2, Luneau Decl., Ex. 2, Gregoire Depo. at 66:10-13.)
3  Witnesses also confirmed that Plaintiff was involved in patient care.  Hutton and
4  Mitchell were the first people on the scene of the accident.  Hutton was an off-duty
5  EMT and stopped his car in the center divider and began C-spine care of the patient on
6  the ground.  (Dkt. No. 35-3, Hutton Decl. ¶ 4.)  The patient was bleeding and it was
7  dark, and the ground was wet and cold.  (Id.)

8       Plaintiff was rendering aid to the patient on the ground with other EMTs
9  preparing the C-spine for transfer to the gurney.  (Id. ¶ 6.)  According to Hutton,
10  Plaintiff was fully engaged in the care of the patient on the ground when a Latino CHP
11  officer approached Plaintiff and arrested him and put him in handcuffs.  (Id. ¶ 6.)  The
12  CHP officer never consulted with any firemen or EMTs about the status of the patient
13  care before arresting Plaitniff.  (Id. ¶ 7.)  He heard Plaintiff tell the CHP officer "I am
14  treating patients here" and the officer responded, "I don't care about your patients, you
15  need to move."  (Id.)  The CHP officer ordered the fireman to take the truck back to the
16  station.  (Id.)

17       Mitchell, who was in the same vehicle as Hutton, stated that when the CHP
18  officer told the fireman to move the truck, the fireman was working on the injured
19  patient at the time.  (Dkt. No. 35-4, Mitchell Decl. ¶ 5.)  The fireman was kneeling next
20  to the patient and said, "I am in the middle of helping this patient."  (Id. ¶ 6.)  The CHP
21  officer told him that he wanted him to stop caring for the patient and move the fire
22  truck off the freeway and take it back to the station.  (Id. ¶ 7.)  The fireman replied
23  "What about the patients?" and the CHP officer replied "I don't care about the patients,
24  I just want you to leave."  (Id. ¶ 8.)  While she was there, she never heard the CHP
25  officer ask about the condition of the patients or consult about how long or how many
26  men were needed to help the two patients.  (Id. ¶ 9.)  The fireman was kneeling and
27  preparing a backboard for the patient when the CHP officer approached and put the
28  fireman in handcuffs.  (Id. ¶ 10.)

1    Joshua Rees was also at the scene of the accident as a City of Chula Vista
2  Firefighter/EMT. (Dkt. No. 35-5, Rees Decl. ¶ 3.) He arrived in the fire truck with
3  Plaintiff. (Id.) They were working with paramedic units rendering care to two injured
4  patients. (Id.) Plaintiff was working with paramedics to move the patient from the
5  ground onto the gurney, using a backboard with straps. (Id.) Plaintiff was helping to
6  move the patient by supplying the light with his flashlight, as it was dark, and securing
7  the gurney in order to move the patient into the ambulance. (Id. ¶ 4.) While Plaintiff
8  was in the process of rendering aid to the immobilized patient, a CHP officer called
9  him. (Id. ¶ 5.) Rees did not hear the conversation but then saw Plaintiff stop caring for
10  the patient and then being placed under arrest by the CHP officer. (Id.) According to
11  Rees, the arrest delayed the entire movement of the patient from the scene to the
12  hospital and delayed all fire equipment and personnel at the scene. (Id.) These facts
13  raise a triable issue of fact whether Plaintiff was involved in patient care.[7]

14    In conclusion, the Court concludes that Plaintiff raises genuine issues of material
15  fact as to whether Flores had probable cause to arrest Plaintiff for a violation of Penal
16  Code section 148(a)(1) and Vehicle Code section 2800. Therefore, the Court DENIES
17  Defendant Flores' motion for summary judgment on the unlawful arrest cause of
18  action.

19  **C.    Qualified Immunity as to Defendant Flores**

20    Next, Defendant Flores contends that he is entitled to qualified immunity for the
21  unlawful arrest and excessive force causes of action because he reasonably concluded
22  he was giving lawful orders under the circumstances he confronted, and no facts are
23  alleged that a reasonable officer would have known that excessive force was being
24  used. Plaintiff argues that the arrest was not reasonable and Plaintiff's right as an EMT

25  ───────────────
26    [7]Plaintiff also argues that CHP's authority to direct traffic pursuant to Vehicle
   Code section 2410 does not apply to fire trucks parked on a highway while engaged in
27  rescue operations and that firefighters are exempt from nearly all Vehicle Code rules
   of the road. Defendants dispute Plaintiff's assertions. However, the Court need not
28  address this issue because Plaintiff has raised sufficient facts to demonstrate that there
   are factual issues as to whether there was probable cause to arrest Plaintiff.

1    to be free from unlawful arrest while engaged in patient care in an emergency situation

2    is clearly established by statute.  In addition, Plaintiff asserts that the facts are disputed

3    on the excessive force allegation.

4         Government officials who perform discretionary functions generally are entitled

5    to qualified immunity from liability for civil damages "insofar as their conduct does not

6    violate clearly established statutory or constitutional rights of which a reasonable

7    person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The

8    United States Supreme Court has presented a two-part analysis for determining

9    qualified immunity claims, which the court may address in any order.  See Pearson v.

10   Callahan, 555 U.S. 223, 236 (2009).  The doctrine of qualified immunity protects

11   government officials from liability for civil damages "unless a plaintiff pleads facts

12   showing (1) that the official violated a statutory or constitutional right, and (2) that the

13   right was 'clearly established' at the time of the challenged conduct."  Ashcroft v.

14   al–Kidd, 563 U.S. 731, ——, 131 S.Ct. 2074, 2080 (2011).

15        Under the first prong, "the court determines whether the facts alleged, construed

16   in the light most favorable to the injured party, establish the violation of a

17   constitutional right."  Dunn v. Castro, 621 F.3d 1196, 1200 (9th Cir. 2010) (citing

18   Saucier v. Katz, 533 U.S. 194, 201 (2001).  As to the second prong, "the court decides

19   whether the right is clearly established such that a reasonable government official

20   would have known that 'his conduct was unlawful in the situation he confronted.'" Id.

21   at 1199 (quoting Saucier, 533 U.S. at 202).  Requiring the alleged violation of law to

22   be "clearly established" "balances. . . the need to hold public officials accountable

23   when they exercise power irresponsibly and the need to shield officials from

24   harassment, distraction, and liability when they perform their duties reasonably."

25   Pearson, 555 U.S. at 231.

26        In the Ninth Circuit, a "district court should decide the issue of qualified

27   immunity as a matter of law when "the material, historical facts are not in dispute, and

28   the only disputes involve what inferences properly may be drawn from those historical

1  facts." Conner v. Heiman, 672 F.3d 1126, 1131 (9th Cir. 2012) (quoting Peng v. Mei

2  Chin Penghu, 335 F.3d 970, 979-80 (2003).

3       **1.     Unlawful Arrest**

4       "In the context of an unlawful arrest, then, the two prongs of the qualified

5  immunity analysis can be summarized as: (1) whether there was probable cause for the

6  arrest; and (2) whether it is *reasonably arguable* that there was probable cause for

7  arrest—that is, whether reasonable officers could disagree as to the legality of the arrest

8  such that the arresting officer is entitled to qualified immunity." Rosenbaum v.

9  Washoe Cnty., 663 F.3d 1071, 1076 (9th Cir. 2011) (citing Jenkins v. City of New

10  York, 478 F.3d 76, 87 (2d Cir. 2007) (noting that an officer will not be entitled to

11  qualified immunity "if officers of reasonable competence would have to agree that the

12  information possessed by the officer at the time of arrest did not add up to probable

13  cause")).

14       In this case, as discussed above, the parties present different accounts concerning

15  the factual circumstances surrounding Flores' arrest of Plaintiff. Viewing the facts in

16  the light most favorable to Plaintiff, Defendants have not demonstrated that there are

17  no questions of fact whether the arrest was unlawful. The Court is unable to assess

18  whether qualified immunity applies because the material facts underlying Plaintiff's

19  claim of unlawful arrest are disputed. See Cameron v. Craig, 713 F.3d 1012, 1022 (9th

20  Cir. 2013) ("The County Defendants are not entitled to qualified immunity at this

21  juncture as the record does not permit us to decide whether they violated clearly

22  established law."); Espinosa v. City and County of San Francisco, 598 F.3d 528, 532

23  (9th Cir. 2010) ("In this case, the district court properly denied the summary judgment

24  motion because there are genuine issues of fact regarding whether the officers violated

25  [the plaintiff's] Fourth Amendment rights. Those unresolved issues of fact are also

26  material to a proper determination of the reasonableness of the officers' belief in the

27  legality of their actions."); Santos v. Gates, 287 F.3d 846, 855 n. 12 (9th Cir.2002)

28  (finding it premature to decide whether the officer-defendants were entitled to qualified

[14CV1749-GPC(DHB)]

AER 017

1   immunity "because whether the officers may be said to have made a 'reasonable
2   mistake' of fact or law may depend on the jury's resolution of disputed facts and the
3   inferences it draws therefrom").

4        As such, the Court DENIES Defendant Flores' motion for summary judgment
5   on the unlawful arrest claim based on qualified immunity.

6        **2.     Excessive Force**

7        The test for whether force was excessive is "objective reasonableness." Graham
8   v. Connor, 490 U.S. 386, 398 (1989). Graham sets out a non-exhaustive list of factors
9   for evaluating reasonability: (1) the severity of the crime at issue, (2) whether the
10  suspect posed an immediate threat to the safety of the officers or others, and (3)
11  whether the suspect actively resisted arrest or attempted to escape. Id. at 396. Because
12  this inquiry is fact-sensitive, summary judgment should be granted sparingly. Santos
13  v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). The "standard requires us to balance the
14  amount of force applied against the need for that force." Deorle v. Rutherford, 272
15  F.3d 1272, 1279 (9th Cir. 2001). Moreover, where force is not needed, any force used
16  is constitutionally unreasonable. Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001);
17  Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir.1998) ("Under the
18  circumstances, the officers were not justified in using any force, and a reasonable
19  officer thus would have recognized that the force used was excessive.")

20       The Fourth Amendment right to be free from the use of excessive force during
21  an arrest is clearly established. Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir.
22  1993). "It is well-established that overly tight handcuffing can constitute excessive
23  force." Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004). The issue of
24  tight handcuffing is usually fact-specific and usually turns on the credibility of the
25  witnesses and is a question for the jury. LaLonde v. Cnty. of Riverside, 204 F.3d 947,
26  960 (9th Cir. 2000). The "relevant, dispositive inquiry in determining whether a right
27  is clearly established is whether it would be clear to a reasonable officer that his
28  conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

[14CV1749-GPC(DHB)]

AER 018

1    Here, it is undisputed that Flores placed handcuffs on Plaintiff's wrists and

2    walked him back to Flores' patrol car. (Dkt. No. 35-1, SSUF No. 101.)  According to

3    Flores, in the course of searching Plaintiff and before placing him in the patrol car,

4    Officer Flores doublelocked the handcuffs, which prevents the handcuffs from

5    tightening. (Dkt. No. 35-1, SSUF Nos. 102, 103.)

6    In contrast, Gregoire testified that when he asked Flores to loosen the handcuffs,

7    he tightened the handcuffs. (Dkt. No. 35-2, Luneau Decl., Ex. 2, Gregoire Depo. at

8    72:17-23.)  Gregoire states that he made two requests to loosen the handcuffs. (Id. at

9    72:17-23; 74:14-18.)  He states that when he asked Flores to loosen the handcuffs,

10   Plaintiff said that they were extremely tight, he was not going anywhere and he was

11   cooperating. (Dkt. No. 35-2, Luneau Decl., Ex. 4 at 22.)  Plaintiff made a second

12   request to loosen the handcuffs because they were making his wrists and his shoulders

13   really hurt, but Flores did not respond. (Id.)  Gregoire testified that he has not had any

14   pain in the wrist area where the handcuffs were and he never sought any medical care

15   from any type of medical provider for injuries that he attributes to the handcuffs. (Dkt.

16   No. 35-2, Luneau Decl., Ex. 2, Gregoire Depo. at 75:24-76:2; 76:17-23.)

17   In looking at the factors laid out in Graham, the crimes allegedly violated,

18   Penal Code section 148(a) and Vehicle Code section 2800(a), are not severe, Plaintiff

19   did not pose an immediate threat to the safety of the officers, and Plaintiff willingly

20   complied with Flores' direction to climb over the wall and go to him. The

21   governmental interest was minimal; therefore, the amount of force used should have

22   been minimal.

23   Based on Plaintiff's version of the facts, if Flores' arrest of Plaintiff was

24   unlawful, use of handcuffs to effectuate his arrest can constitute excessive force.  See

25   Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004) (reversing the grant of

26   summary judgment where the deputy violently arrested the plaintiff, handcuffing his

27   hands tightly, even though there was no probable cause for arrest and the plaintiff was

28   following the deputy's instructions); Devermont v. City of Santa Monica, No. CV 12-

6772 DDP(MRWx), 2014 WL 2969629, at *5 (C.D. Cal. July 1, 2014) (even if defendant used normal handcuffing procedures, the use of handcuffs was excessive if there was no probable cause for the arrest).  Moreover, the fact that Plaintiff requested that the handcuffs be loosened because they were tight, and Flores did not loosen them during the 30 minutes Plaintiff was handcuffed, creates a genuine issue of fact whether the only reasonable conclusion that the evidence permits is that the force used was reasonable.  See Dillman v. Vasquez, No. 13cv404-LJO, SKO, 2015 WL 881574, at *12 (E.D. Cal. Mar. 2, 2015) (plaintiffs allegation that he made numerous requests for defendant to loosen the handcuffs yet defendant refused to loosen them for at least 20 to 30 minutes created an issue for the jury).

Plaintiff has raised an issue of fact whether handcuffing, by itself, was warranted since there may not have been probable cause to arrest him.  In addition, there is an issue of fact whether Plaintiff's request to loosen the handcuffs two times and Flores responded by either tightening the handcuffs and/or not responding constitutes excessive force.  Therefore, the Court cannot determine whether Flores' belief as to the legality of his actions was reasonable.  Thus, the Court DENIES Defendant Flores' motion for summary judgment on the excessive force claim based on qualified immunity.

**D.     State Law Causes of Action as to Defendants Flores and the CHP**

The complaint alleges state causes of action against Defendant Flores and Defendant CHP for violation of California Civil Code section 52.1, battery, false imprisonment, and intentional infliction of emotional distress. (Dkt. No. 1-1, Compl.) CHP is a defendant based on the theory of respondeat superior pursuant to California Government Code section 815.2.  (Id.)

**1.     California Civil Code section 52.1**

Defendant summarily argues that since the California Civil Code section 52.1 claim is based solely on an alleged violation of the Fourth Amendment's prohibition against unreasonable arrests, then this cause of action fails since it has demonstrated

1  that Flores had probable cause to arrest Plaintiff.  Plaintiff also conclusorily opposes
2  contending that Flores violated Civil Code section 52.1 because Flores did not have
3  probable cause to arrest Plaintiff.

4  California Civil Code section 52.1 establishes a private right of action for
5  damages and other relief against a person who "interferes by threats, intimidation, or
6  coercion," or attempts to so interfere, "with the exercise or enjoyment" of an
7  individual's constitutional or other legal right.  Cal. Civ. Code § 52.1.

8  Plaintiff's cause of action under Civil Code section 52.1 is premised on a
9  violation of the Fourth Amendment to be free from arrest without probable cause.
10  (Dkt. No. 1-1, Compl. at 15.)  Since the Court DENIES Defendants' motion for
11  summary judgment on the claim of unlawful arrest, the Court DENIES Defendants'
12  motion for summary judgment on the cause of action under California Civil Code
13  section 52.1 for the same reasons.

14  **2.    Battery**

15  Defendants argue that the facts demonstrate that no excessive force was used
16  against Plaintiff.  Plaintiff argues that the facts are disputed and the question should go
17  to a jury.

18  "The elements of civil battery are: (1) defendant intentionally performed an act
19  that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff
20  did not consent to the contact; and (3) the harmful or offensive contact caused injury,
21  damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-
22  27 (2009).  "A state law battery claim is a counterpart to a federal claim of excessive
23  use of force. In both, a plaintiff must prove that the peace officer's use of force was
24  unreasonable." Id. at 527.

25  Since the Court found that there are genuine issues of disputed material facts on
26  the excessive force cause of action, similarly, this conclusion applies to the state law
27  cause of action for battery.  See id.  Accordingly, the Court DENIES Defendants'
28  motion for summary judgment on the battery claim.

### 3. False Imprisonment

Defendants assert that since they demonstrated that there was probable cause to arrest Plaintiff, the false imprisonment claim fails. Plaintiff disagrees.

In California, false arrest and false imprisonment are not separate torts. <u>Collins v. City and Cnty. of San Francisco</u>, 50 Cal. App. 3d 671, 673 (1975). "False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology." <u>Id.</u> The probable cause standard for unlawful arrest in California is similar to the federal standard. <u>See</u> <u>People v. Campa</u>, 36 Cal. 3d 870, 878 (1984); <u>Ferganchick v. United States</u>, 374 F.2d 559, 560 (9th Cir. 1967).

Defendant Flores contends he had lawful privilege under California Penal Code sections 836(a) and 847(b). Section 836(a) allows a peace officer to arrest a person without a warrant if the officer has probable cause to believe that the person to be arrested committed a public offense in the officer's presence. Cal. Penal Code § 836(a). Section 847(b) precludes liability against a peace officer for false arrest or false imprisonment arising out of a lawful arrest. Cal. Penal Code § 847(b).

Since the basis of the false imprisonment argument is that Flores had probable cause to believe the arrest was lawful, and the Court concluded there are genuine issues of fact as to whether the Plaintiff's arrest was lawful, the Court DENIES Defendants' motion for summary judgment on the false imprisonment cause of action.

### 4. Intentional Infliction of Emotional Distress

Defendants argue that Flores did not engage in outrageous conduct but had substantial grounds for believing he had probable cause to arrest Plaintiff and was not aware that Plaintiff was encountering pain from the handcuffs. Plaintiff opposes.

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." <u>Hughes</u>

1   v. Pair, 46 Cal. 4th 1035, 1050 (2009) (quoting Potter v. Firestone Tire & Rubber Co.,

2   6 Cal. 4th 965, 1001 (1993)); see also Christensen v. Superior Court, 54 Cal. 3d 868,

3   903 (1991).  "A defendant's conduct is 'outrageous' [only] when it is so 'extreme as

4   to exceed all bound of that [which is] usually tolerated in a civilized community.'"

5   Hughes, 46 Cal. 4th at 1050–51 (quoting Potter, 6 Cal. 4th at 1001).  "Severe emotional

6   distress means emotional distress of such substantial . . .  or enduring quality that no

7   reasonable [person] in civilized society should be expected to endure it."  Id. at 1051

8   (quoting Potter, 6 Cal. 4th at 1004).  The California Supreme Court has set a "high bar"

9   to demonstrate severe emotional distress.  Id.  Suffering discomfort, worry, anxiety, an

10  upset stomach, concern and agitation do not constitute emotional distress.  Id.

11       The complaint alleges that the conduct surrounding the alleged unlawful arrest

12  and excessive force constitute outrageous conduct with an intent to cause emotional

13  distress and Plaintiff suffered severe emotional distress as a result of Flores' conduct.

14  (Dkt. No. 1-1, Compl. at 16.)  Plaintiff alleges that Defendant CHP is liable pursuant

15  to California Government Code section 815.2.

16       Defendants assert that the facts in the case do not demonstrate extreme and

17  outrageous conduct.  Flores had grounds to believe he had probable cause to arrest

18  Plaintiff and cites to paragraphs in the SSUF in support.  In addition, as to excessive

19  force, Plaintiff never told Flores he was encountering pain from the handcuffs and did

20  not suffer any physical injuries.  Plaintiff only stated that the handcuffs were too tight

21  and he remained in them for about 30 minutes.

22       In response, Plaintiff only presents the declaration of Rees, the other EMT on the

23  scene with Plaintiff ,who described Flores' action as "shocking" and the patient, at the

24  accident scene, stated "Are you going to fucking leave me here? Are you?"  (Dkt. No.

25  35-5, Rees Decl. ¶¶ 6, 7.)  However, these facts alone do not dispute Defendants' facts

26  as whether Flores' conduct was outrageous "with the intention of causing, or reckless

27  disregard of the probability of causing, emotional distress" or whether plaintiff suffered

28  severe or extreme emotional distress or whether there was actual or proximate cause.

[14CV1749-GPC(DHB)]

AER 023

1  The reaction of the patient or of the other EMT on the scene does not demonstrate
2  Plaintiff's emotional state. Plaintiff has not presented any facts to demonstrate the
3  elements of intentional infliction of emotional distress.

4      Accordingly, the Court concludes that Plaintiff has failed to create a genuine
5  issue of material fact regarding whether the facts surrounding Flores' alleged unlawful
6  arrest and alleged excessive force support a claim for intentional infliction of emotional
7  distress, and GRANTS Defendants' motion for summary judgment on this issue.

8      As to the Defendant CHP, "[a] public entity is liable for injury proximately
9  caused by an act or omission of an employee of the public entity within the scope of
10  his employment if the act or omission would, apart from this section, have given rise
11  to a cause of action against that employee or his personal representative." Cal. Gov't
12  Code § 815.2(a). California's liability on state entities is based on the doctrine of
13  respondeat superior for the acts of its employees. Robinson v. Solano Cnty., 278 F.3d
14  1007, 1016 (9th Cir. 2002); A.D. v. State of California Highway Patrol., No. C 07-5483
15  SI, 2009 WL 733872, at *9 (N.D. Cal. Mar. 17, 2009) (public entity is not vicariously
16  liable under state law if its employee is not liable).

17      In this case, since the Court GRANTS Defendants' motion for summary
18  judgment on this claim as to Flores, and the CHP's liability is based on respondeat
19  superior, the Court also GRANTS Defendants' motion for summary judgment on this
20  claim as to Defendant CHP. See id.

21  **E.    Evidentiary Objections**

22      Defendants filed objections to Plaintiff's evidence. (Dkt. No. 42-1.) The Court
23  notes the objections. To the extent that the evidence is proper under the Federal Rules
24  of Evidence, the Court considered the evidence. To the extent that the evidence is not
25  proper, the Court did not consider it.

26                              **Conclusion**

27      Based on the above, the Court GRANTS in part and DENIES in part Defendants'
28  motion for summary judgment. Specifically, the Court GRANTS Defendants' motion

                              - 24 -                    [14CV1749-GPC(DHB)]

1   for summary judgment on the cause of action for intentional infliction of emotional

2   distress, and DENIES Defendants' motion for summary judgment on the remaining

3   causes of action.  The hearing date set for **February 19, 2016** shall be vacated.

4        IT IS SO ORDERED.

5

6   DATED:  February 16, 2016

7

8                                        HON. GONZALO P. CURIEL
                                         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Case Name: **Gregoire v. CHP**                 No.     **A16-55286**

I hereby certify that on **February 16, 2017**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1.     **APPELLANT'S OPENING BRIEF**

2.     **APPELLANTS' EXCERPTS OF RECORD – VOL. 1 of 2**

3.     **APPELLANTS' EXCERPTS OF RECORD – VOL. 2 of 2**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **February 16, 2017**, at San Diego, California.

J. L. Hall
Declarant

Signature

SD2016700257
81594726.doc