No. 16-55286

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

**Jacob Gregoire**,
*Plaintiff / Appellee*,

v.

**California Highway Patrol, an agency of the State of California;
Sergio Flores**
*Defendants / Appellants.*

---

On Appeal from the United States District Court for the
Southern District of California
No. 3:14-cv-01749-GPC-DHB
Honorable Gonzalo P. Curiel, Judge

# Appellee's Answering Brief

Jeremy Robinson (Bar No. 188325)
*jrobinson@cglaw.com*
**CASEY, GERRY, SCHENK,
FRANCAVILLA,
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
Fax: (619) 544-9232

Steve Hoffman (Bar No. 237466)
*shoffmanlaw@gmail.com*
**LAW OFFICE OF STEVE HOFFMAN**
1320 Columbia Street, Suite 200
San Diego, California 92101
(619) 677-3015 phone
(619) 684-3541 fax

*Attorneys for Appellee Jacob Gregoire*

# Table of Contents

Page

Introduction and Summary of Argument ...................................................... 1

Material Disputed and Undisputed Facts...................................................... 5

Procedural History............................................................................. 13

Argument......................................................................................... 16

    A.   The only issue properly before this Court is whether, taken in the light most favorable to Mr. Gregoire, the evidence establishes constitutional violations by Flores and whether the rights violated were clearly established ....... 16

        1.   The CHP's Opening Brief is defective because it premises all of the arguments on a factual recitation that is one-sided and contrary to the standard of review......................................................... 16

        2.   The CHP has provided no basis for this Court to review the denial of summary judgment as to Gregoire's state law claims and the appeal as to that portion of the ruling should be dismissed ............. 20

    B.   The law on Flores' arrest without probable cause and his use of excessive force during that arrest was clearly established ............................................................................ 23

        1.   The law requiring consultation of medical personnel by public employees at the scene of an accident was clearly established at the time of Officer Flores' misconduct .......................................... 25

        2.   The law concerning excessive force and tightening of handcuffs is clearly established and the CHP's reliance on lack of permanent physical injury is unavailing .................................................................. 34

Conclusion....................................................................................... 39

Certificate of Compliance ....................................................................... 40

i

Statement of Related Cases..........................................................................41

### TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Adams v. Speers*,
　473 F.3d 989 (9th Cir. 2007) ........................................................ 2, 4, 5, 9

*Anderson v. Creighton*,
　483 U.S. 635 (1987) ........................................................................ 23

*Arpin v. Santa Clara Valley Transp. Agency*,
　261 F.3d 912 (9th Cir. 2001) ......................................................... 26

*Ashcroft v. al-Kidd*,
　563 U.S. 731 (2011) ....................................................................... 24

*Blankenhorn v. City of Orange*,
　485 F.3d 463 (9th Cir. 2007) ........................................................ 26

*Borunda v. Richmond*,
　885 F.2d 1384 (9th Cir. 1988) ...................................................... 25

*Carlo v. City of Chino*,
　105 F.3d 493 (9th Cir. 1997) ............................................ 29, 30, 31, 32

*Davis v. Scherer*,
　468 U.S. 183 (1984) ................................................................. 31, 32

*Eng v. Cooley*,
　552 F.3d 1062 (9th Cir. 2009) ........................................................ 2

*George v. Morris*,
　736 F.3d 829 (9th Cir. 2013) .......................................................... 2

*Gillan v. City of San Marino*,
　147 Cal. App. 4th 1033 (2007) ...................................................... 22

*Gray v. Bell*,
　712 F.2d 490 (D.C. Cir. 1983) ....................................................... 31

*Green v. City & Cty. of San Francisco,*
  751 F.3d 1039 (9th Cir. 2014) ............................................... 37, 39

*Headwaters Forest Def. v. Cty. of Humboldt,*
  240 F.3d 1185 (9th Cir. 2000) ....................................................39

*In re Allen,*
  106 F.3d 582 (4th Cir. 1997) ......................................................30

*Johnson v. Bay Area Rapid Transit Dist.,*
  724 F.3d 1159 (9th Cir. 2013) .....................................16, 21, 26

*Johnson v. Jones,*
  515 U.S. 304 (1995) ................................................................... 17

*Kingsley v. Hendrickson,*
  135 S. Ct. 2466 (2015) ........................................................ 36, 37

*KRL v. Estate of Moore,*
  512 F.3d 1184 (9th Cir. 2008) .................................................. 17

*LaLonde v. Cty. of Riverside,*
  204 F.3d 947 (9th Cir. 2000) ....................................................34

*Lenz v. Winburn,*
  51 F.3d 1540 (11th Cir. 1995) .................................................. 31

*Liberal v. Estrada,*
  632 F.3d 1064 (9th Cir.2011) ............................................. 20, 21

*Lolli v. Cty. of Orange,*
  351 F.3d 410 (9th Cir. 2003) .................................................... 37

*Meredith v. Erath,*
  342 F.3d 1057 (9th Cir. 2003) ..................................................34

*Merritt v. Mackey,*
  827 F.2d 1368 (9th Cir. 1987) .................................................. 31

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ...................................................................23

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015) .................................................................. 23, 24, 28

*Palmer v. Sanderson*,
   9 F.3d 1433 (9th Cir. 1993) ......................................................34, 37, 38

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ............................................................................ 28

*People v. Celis*,
   33 Cal. 4th 667 (2004) ......................................................................25

*People v. Espino*,
   247 Cal. App. 4th 746 (2016) ...........................................................25

*People v. Simons*,
   42 Cal. App. 4th 1100 (1996) ...........................................................26

*Pierce v. Multnomah Cty., Or.*,
   76 F.3d 1032 (9th Cir. 1996) ......................................................29, 32

*Ramirez v. City of Buena Park*,
   560 F.3d 1012 (9th Cir. 2009) ......................................................... 22

*Reynolds v. Cty. of San Diego*,
   84 F.3d 1162 (9th Cir. 1996) ........................................................... 21

*Rheaume v. Texas Dep't of Pub. Safety*,
   666 F.2d 925 (5th Cir. 1982) ...........................................................30

*Rich v. City of Mayfield Heights*,
   955 F.2d 1092 (6th Cir. 1992) ......................................................... 31

*Salazar-Limon v. City of Houston, Tex.*,
   137 S. Ct. 1277 (2017) ..................................................................... 18

*Santopietro v. Howell*,
   No. 14-16324, 2017 WL 2261017 (9th Cir. May 24, 2017) .....................25

*Shechter v. Comptroller of City of N.Y.*,
   79 F.3d 265 (2d Cir. 1996) ...............................................................30

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005) .................................................26

*Spruytte v. Walters*,
    753 F.2d 498 (6th Cir. 1985)...................................................29

*Stanley v. Gallegos*,
    852 F.3d 1210 (10th Cir. 2017) ..............................................31

*Wall v. Cty. of Orange*,
    364 F.3d 1107 (9th Cir. 2004).................................................34

*White v. Pauly*,
    137 S. Ct. 548 (2017) ..............................................................23

## **Statutes**

28 U.S.C. § 1291 .......................................................................... 21
42 U.S.C. § 1983........................................................................ 2, 13
California Civil Code § 52.1 ...............................................passim
California Health & Safety Code section 1798.6 ................passim
California Penal Code section 409.3....................................passim
California Penal Code section 851.5 .................................... 29, 32
Penal Code section 148(a)....................................................passim
Vehicle Code section 2800(a) ........................................... 12, 25

## **Rules**

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure ................. 40

## Introduction and Summary of Argument

Assuming he was in charge and wanting to exert his authority, California Highway Patrol ("CHP") Officer Sergio Flores arrested Chula Vista Firefighter and paramedic Jacob Gregoire while Gregoire was providing medical care to people injured in a severe rollover crash. That arrest violated California law. Flores also handcuffed Gregoire unnecessarily and then tightened the handcuffs when Gregoire asked for them to be loosened. That was excessive force.

In the ensuing lawsuit, District Court Judge Curiel denied the CHP's Motion for Summary Judgment as to all of Gregoire's causes of except intentional infliction of emotional distress. The CHP has filed an interlocutory appeal from that ruling, ostensibly (but not in actual fact) limited to the issue of qualified immunity.

In a misguided effort to undermine the analysis of Judge Curiel, the CHP urges this Court to accept positions unsupported by the record or the law. First, the CHP tries to expand this limited interlocutory appeal into a full blown re-hearing on summary judgment. Half of the CHP's "Issues Presented for Review," do not even involve qualified immunity, but rather

1

Mr. Gregoire's state law claims[1]. (Appellants' Opening Brief ("AOB"), at 4-5.) That is improper. This Court consistently rejects attempts to engraft state law claims onto an interlocutory appeal of qualified immunity.

Equally improper is the CHP's challenge to Judge Curiel's finding of disputed issues of fact on the CHP's probable cause to arrest Mr. Gregoire. (AOB at 5.) Not only is Judge Curiel correct, but "[a]ny decision by the district court 'that the parties' evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal …' " *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1067 (9th Cir. 2009)).

Ignoring this dictate, as well as the requirement that a party appealing a denial of qualified immunity state the facts in the light most favorable to the plaintiff, s*ee Adams v. Speers*, 473 F.3d 989, 990–91 (9th Cir. 2007), the CHP's Opening Brief embarks on a lengthy exposition about why the CHP's version of the events is right. The CHP relegates to argumentative

---

[1] Mr. Gregoire's Complaint alleges two causes of action for violation of 42 U.S.C. § 1983 and four causes of action under various state law tort theories. (AER 207-210.)

footnotes or ignores altogether Mr. Gregoire's evidence, presenting a story where every factual dispute is resolved in the CHP's favor.

This brief fixes those inaccuracies, revealing a much different case. Far from the innocent officer concerned with highway safety portrayed by the CHP, Gregoire's evidence shows, to quote Judge Curiel, an officer who "improperly walked on the scene, assumed he was in charge and without any investigation, without consulting with representatives from other responding agencies, and without even consulting with the other CHP officer at the scene before him, ordered Plaintiff to stop assisting with patient care and move the truck." (Appellants' Excerpts of Record ("AER") 12.) [2]

The only genuine issue on this appeal is whether, based on Mr. Gregoire's evidence, Officer Flores is entitled to qualified immunity for arresting and handcuffing Gregoire. The answer is no. Both California Penal Code section 409.3 and California Health & Safety Code section 1798.6 invest emergency medical personnel, *not the CHP*, with authority over

---

[2] The CHP confusingly refers in its Opening Brief to its record excerpts as "Supplemental Excerpts of Record." (AOB, at 4, n. 2.) But, the Excerpts themselves are correctly captioned as "Appellants' Excerpts of Record."

patient care issues at an accident scene. Cal. Penal Code § 409.3, Cal. Health & Safety Code § 1798.6 (a), (c). These statutes also require all other public safety officials to consult with the health care professionals on scene before making decisions that might affect patient care. *Id.*

Officer Flores did not follow that procedure. He admits he did not consult any health care professional on scene before demanding the fire trucks leave and arresting Gregoire. The CHP admits this as well. Instead, it argues there is no case law establishing a minimum level of consultation required by the statutes and thus no "clearly established law." (AOB, 31-32.) That argument is groundless. This is not a case where the CHP is being sued for making a good faith effort to comply with the law. Officer Flores told several people at the scene "I don't care about your patients, you need to move," or "I don't care about the patients, I just want you to leave," or "that's not my problem." The CHP does not need a reported decision to tell it that Flores' total disregard for patient well-being does not satisfy the law, regardless of what degree of consultation the statutes may require.

Likewise, the district court was correct that tightening handcuffs when unnecessary has already been ruled excessive force on many

occasions. Because there was no reason for Flores to use handcuffs at all, his tightening of them on Gregoire and then refusing to loosen them was excessive force. Judge Curiel's order should be affirmed.

## Material Disputed and Undisputed Facts

A defendant "can make an interlocutory appeal from the ruling on immunity only if he accepts as undisputed the facts presented by the appellees…" *Adams*, 473 F.3d at 990–91. As noted previously, the CHP has not done that. Viewing the evidence in the light most favorable to Mr. Gregoire presents a much different story than the one the CHP spins.

The incident that ends with the CHP wrongfully arresting a Chula Vista Fire Department paramedic while that paramedic was providing patient care starts with a rollover crash on Interstate 805. As shown in the picture on the next page (AER 159), a car had flipped over a "K rail" barrier on the northbound side of the 805 and landed in a protected center median. (AER 80.)



At that time, the roadway was under construction and there were K rails on either side of the median next to the leftmost lane (also known as the "number one" lane). (AER 128, 129, 187.)

First arriving were off-duty EMT Justin Hutton and his girlfriend, Korri Mitchell. (AER 94-95, 97.) They saw two people injured in the crash. (AER 98.) Hutton pulled his car into the center divide area and began attending to the patient on the ground, who was bleeding. (AER 94-95.) Mitchell meanwhile called 9-1-1. (AER 95, 97.)

It is unclear who arrived next. Captain David Albright of the Chula Vista Fire Department testified he arrived on the scene and saw an

ambulance from American Medical Response ("AMR") but not anyone from the CHP. (AER 75-76.) Captain Albright was in Engine 52, a truck being driven by Chula Vista Fire Department Engineer and paramedic, Jacob Gregoire. (AER 76-77.) According to Captain Albright, the AMR ambulance was parked partly in the construction area and partly in the number one lane on the southbound side of I-805. (AER 75-76.) Meaning, it was sticking out into the roadway. Albright instructed Gregoire to park behind the ambulance and block the number one lane to protect the ambulance. (AER 79-80, 128.) In contrast to Captain Albright, Officer Eliazar Colunga of the CHP said he arrived before the AMR ambulance and Chula Vista Fire Department. (AER 97-98, 181-182.) Both Albright and Colunga believed they established "Incident Command" or "IC." (AER 77, 78, 181.)

After he parked the truck, Gregoire got out and walked toward the scene to help with patient care. (AER 91.) While Gregoire was doing this, CHP Officer Flores arrived. Flores saw a fire truck parked in the number one lane of southbound I-805, possibly extending into the number two lane, and parked behind it. (AER 187.) Flores then laid out a pattern of road

7

safety flares behind his car extending into the number two lane to warn approaching traffic of the emergency vehicles parked in the roadway. (AER 187-188.) This flare pattern protected all the vehicles parked in front of it, including the truck driven by Gregoire.

Gregoire, meanwhile, started caring for one of the patients on the ground by helping him onto a gurney using a backboard with straps. (AER 95, 100.) At roughly the same time, Officer Colunga ordered crews from two of the fire trucks to move their trucks out of the number one lane and leave the scene. (AER 182-183.) Colunga then told the crews from the other two trucks, which included Mr. Gregoire, to also leave. (AER 183-184.) Flores overheard at least some of this conversation, and understood Colunga wanted the other trucks to leave. (AER 188.)

Without consulting anyone at the scene, Flores approached who he thought was the Fire Captain and told him to move his truck, but the captain declined. (AER 189.) Flores then asked "Who's driving this engine?" (AER 82.) Gregoire, who was in the middle of providing care to one of the patients, said he was the driver. (AER 82, 95, 98.) At the time, Gregoire was working with the other paramedics to move the patient from

8

the ground onto a gurney, which is a careful and difficult procedure requiring several people. (AER 99-100.)

Flores ordered Gregoire to get into the truck and leave. *Id.* He did not provide Gregoire with a reason for the order. *Id.* Gregoire responded to Flores by telling him that he was caring for the injured patients and could not move the truck. (AER 83, 95, 98.) According to EMT Hutton, Flores responded with, "I don't care about your patients, you need to move." (AER 95.) Hutton's girlfriend, Korri Mitchell recalled a similar exchange, but with Flores saying, "I don't care about the patients, I just want you to leave." (AER 98.) And when Captain Albright asked, "who is going to take care of these two people, one of which is laying in the dirt?" Flores responded, "that's not my problem." (AER 92.) Flores then threatened to arrest Gregoire if he did not leave. (AER 92.) Gregoire told Flores he could not leave and Flores became angry, yelling at Gregoire to step over the K rail barricade and be arrested.

As Gregoire was leaving, one of the patients yelled, "are you going to fucking leave me here? Are you?" (AER 100.)

Flores never consulted with any medical personnel at the scene before ordering Gregoire to stop patient care and leave. Off-duty EMT Hutton declared, "The Latino CHP officer never consulted with any firemen or EMTs about the status of patient care before affecting this arrest." (AER 95.) Mitchell said, "[w]hile at the scene, I never heard the CHP officer ask about the condition of the patients or consult about how long or how many men were needed to help the two patients." (AER 98.) And, Joshua Rees, an EMT with the Chula Vista Fire Department declared, "…the CHP officer never consulted with any of the paramedics or firefighters/EMTs prior to arresting Jake Gregoire." (AER 100.)

The CHP does not contend otherwise. Neither Flores nor Colunga testified they consulted with any medical personnel at the scene.

After Gregoire stepped over the K rail, Flores told him to go to Flores's patrol car. (AER 137.) The incident was captured on film by the news media, as shown in the picture below. (AER 194.)



Joshua Rees, another paramedic said: "I was shocked to see this occur. I have been a Firefighter/Emergency Medical Technician for over 15 years and been to over 400 similar injury calls and have never seen a peace officer obstruct and delay patient care like the officer who arrested Jake Gregoire." (AER 100.)

Gregoire asked Flores if he could at least tell Captain Albright what was happening, but Flores said, "no, you are under arrest." (AER 92.) Although Flores did not think Gregoire posed any kind of threat, he nevertheless placed Gregoire in handcuffs. (AER 88, 137.) Gregoire asked if

they could "work it out" without the need for an arrest, but Flores told him, "you already had your chance." (AER 139.)

As they reached Flores's car, Gregoire asked if Flores could loosen the handcuffs. (AER 140.) Flores tightened them instead. (AER 93, 140-141, 151.)

Once they were in the car, Flores got some information from Gregoire and Gregoire asked why he was being arrested. (AER 142.) Flores told him, "148," "obeying." (AER 93, 142.) In his declaration, Flores says he thought Gregoire was violating Penal Code section 148(a) and Vehicle Code section 2800(a). (AER 190.) Gregoire again asked for the handcuffs to be loosened because they were making Gregoire's wrists and shoulders "really hurt," and Flores ignored him. (AER 93, 190.)

About 30 to 40 minutes later, Flores supervisor arrived and commanded Flores to release Gregoire from the back of the patrol car and removed the handcuffs. (AER 143, CR 39.) Flores said, "this is not over, you are not being arrested but I am not done with you! You are going to have to answer for your actions." (AER 93, 151.) Gregoire was never charged with any offense.

## Procedural History

The CHP filed this interlocutory appeal after Judge Curiel granted in part and denied in part the CHP's Motion for Summary Judgment. Judge Curiel granted the motion as to Mr. Gregoire's Sixth Cause of Action for Intentional Infliction of Emotional Distress, but denied it as to the remaining causes of action[3]. (AER 24-25.)

Gregoire asserts two causes of action against the CHP for violations of 42 U.S.C. § 1983, to which the CHP asserts qualified immunity: a cause of action for "unreasonable seizure" and one for "excessive force." (AER 207-209.) As to qualified immunity for the unlawful seizure claim, Judge Curiel analyzed all of the evidence and held the CHP failed to "demonstrate[] that there are no questions of fact whether the arrest was unlawful." (AER 17.) Because Gregoire showed that Flores failed to consult with any healthcare providers as required under Penal Code section 409.3 and Health and Safety Code section 1798.6, did not even know how many

---

[3] That leaves the First Cause of Action for violations of 42 U.S.C. § 1983 (unreasonable seizure), the Second Cause of Action for violations of 42 U.S.C. § 1983 (excessive force), the Third Cause of Action for violations of California Civil Code § 52.1 (the "Bane Act"), the Fourth Cause of Action for Battery, and the Fifth Cause of Action for False Imprisonment. (AER 207-209.)

people were injured or the nature of their injuries, and said "he did not care about the patients," the court held Mr. Gregoire "raises a trial issue of fact as to whether Flores' order was lawful." (AER 12-13.) Likewise, because there are factual disputes about whether the AMR ambulance was parked in the number one lane and whether Engine 52 was needed to provide a safety buffer behind the ambulance, there is "a genuine [issue] of material fact whether Flores's assessment concerning his decision to order the fire trucks removed was reasonable." (AER 13.) Finally, the court noted that Mr. Gregoire "creates a factual dispute as to Defendants' assertion that Plaintiff had no role in patient care." *Id.* Thus, "[t]he Court is unable to assess whether qualified immunity applies because the material facts underlying Plaintiff's claim of unlawful arrest are disputed." *Id.*

Judge Curiel likewise found disputed issues of material fact precluded resolution of qualified immunity from the excessive force claim. Citing the parties' differing versions of what happened, the court held: "Plaintiff has raised an issue of fact whether the handcuffing, by itself, was warranted since there may not have been probable cause to arrest him. In addition, there is an issue of fact whether Plaintiff's request to loosen the handcuffs

two times and Flores responded by either tightening the handcuffs and/or not responding constitutes excessive force." (AER 20.)

Finally, the court denied summary judgment as to the causes of action for violation of Civil Code 52.1, battery, and false imprisonment, finding triable issues of fact for each, but granted summary judgment as to the cause of action for intentional infliction of emotional distress, finding the evidence did not establish "extreme and outrageous" conduct. (AER 20-23.)

Following the CHP's Notice of Appeal (CR 52[4]), the district court directed Mr. Gregoire to address whether the appeal was frivolous. (CR 55.) Ultimately, the district court determined the appeal was not frivolous as to the issue of whether the law was "clearly established" for qualified immunity purposes because the CHP had "summarily raised the issue" in its motion. (AER 28-29.)

---

[4] The CHP uses the abbreviation "CR" to refer to the ECF docket entries at the district court level. For the sake of continuity, Mr. Gregoire adopts this system of citation as well.

## Argument

A. **The only issue properly before this Court is whether, taken in the light most favorable to Mr. Gregoire, the evidence establishes constitutional violations by Flores and whether the rights violated were clearly established**

To start with, it is important to establish what is and what is not at issue in this appeal. The CHP's Opening Brief reads as if it is arguing its summary judgment motion to this Court. The CHP urges this Court to accept its spin on the facts, ignoring the evidence that is unfavorable, and pushes for a complete exoneration from liability without explaining how this Court's review could extend to the many collateral issues raised.

In particular, the CHP's attempt to get this Court to revisit the district court's finding of disputed material facts, and to reverse the court's ruling on the state law causes of action, runs afoul of this Court's role in this interlocutory appeal.

1. **The CHP's Opening Brief is defective because it premises all of the arguments on a factual recitation that is one-sided and contrary to the standard of review**

In an appeal like this, the court "may review only the district court's legal conclusion that an officer is not entitled to qualified immunity."

*Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1164 (9th Cir. 2013);

*see also*, *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). "Our jurisdiction ...

does not extend to qualified immunity claims involving disputed issues of

material fact." *KRL v. Estate of Moore*, 512 F.3d 1184, 1188–89 (9th Cir.

2008).

Here, Judge Curiel found that there are several disputed issues of

material fact about the events leading up to and including the arrest, and

indeed there are. Among other things, there are disputes about: (1) whether

the AMR ambulance was parked in the number one lane; (2) whether

Engine No. 52 was endangering traffic since Officer Flores parked behind it

and placed flares out behind his car; (3) whether Mr. Gregoire was engaged

in patient care when Officer Flores ordered him to leave; (4) whether it

would have been evident to any reasonable officer that Gregoire was

engaged in patient care; (5) whether Flores told Gregoire and the other

medics that he "did not care about the patients"; (6) whether Officer

Flores tightened the handcuffs of Mr. Gregoire after Gregoire asked for

them to be loosened; and (7) whether, on releasing Gregoire, Flores said,

"this is not over, you are not being arrested but I am not done with you!

You are going to have to answer for your actions."

These disputes cannot be resolved either by the district court or this Court. *Salazar-Limon v. City of Houston, Tex.*, 137 S. Ct. 1277, 1281 (2017) ("It is not for a judge to resolve these 'differing versions of the truth' on summary judgment …")

Presumably understanding this, the CHP does not outright ask this Court to resolve factual disputes. But it frames its statement of facts and legal arguments in a way that compels that outcome.

For example, the CHP argues Flores satisfied the legal mandates of Penal Code section 409.3 and Health and Safety Code section 1798.6 because, the CHP contends, Gregoire has "provided no evidence that either Officer Flores or Officer Colunga ever perceived [Gregoire] to be involved in medical care." (AOB 38.) As a factual statement, however, that is simply false.

When Flores barged in, Gregoire was helping to prepare one of the patients for transfer from the ground to a gurney. Three different eyewitnesses all said Gregoire was providing patient care when Flores ordered him to leave. (AER 95, 98, 99-100.) Indeed, off-duty paramedic Justin Hutton lodged an official complaint with the CHP because of Flores'

"arrest of the fireman while he was obviously caring for a patient…" (AER 95.) And, Gregoire himself specifically told Flores that he was helping the injured patients and he could not move the truck. (AER 82-83, 95, 98.) Flores responded with either: "I don't care about your patients, you need to move…" or "I don't care about the patients, I just want you to leave." (AER 95, 98.) Clearly, this is evidence Flores would have seen and understood Gregoire was engaged in patient care.

Yet, this exchange, which is critical to assessing Flores' efforts to comply with the law, is entirely absent from the CHP's Opening Brief. The CHP didn't just casually dismiss these facts, it ignored them altogether.

Likewise, the CHP downplays the declarations from the three witnesses who say neither Flores nor Colunga consulted with any medical personnel before ordering Gregoire to get in the truck and leave to the degree that this Court would be forgiven for not knowing they exist. The CHP mentions only one—the statement of Autumn Mitchell—in a passing footnote arguing Mitchell did not claim to have watched both officers throughout the night "so as to show sufficient personal knowledge of everything they did or did not do." (AOB at 9, n. 4.) The CHP's Statement

of Facts completely ignores the declarations of the other two witnesses who said the exact same thing. (AER 95, 100.)

These types of distortions pervade the CHP's brief. Because the CHP's legal arguments rest on factual predicates that accept the CHP's evidence as incontrovertible and disregard Gregoire's evidence, they are an improper attempt to get this Court to resolve disputed issues of fact.

2. **The CHP has provided no basis for this Court to review the denial of summary judgment as to Gregoire's state law claims and the appeal as to that portion of the ruling should be dismissed**

This Court's jurisdiction also does not encompass Judge Curiel's denial of summary judgment on the state law causes of action for violations of California Civil Code § 52.1, battery, and false imprisonment. Indeed, this Court has already twice rejected a defendant's attempt to have a Civil Code § 52.1 claim reviewed in an interlocutory appeal denying qualified immunity.

In *Liberal v. Estrada,* 632 F.3d 1064 (9th Cir.2011), this Court dismissed the part of a qualified immunity appeal for denial of summary judgment on the plaintiff's claims for assault and battery and Civil Code section 52.1 violations since neither was an appealable final judgment under

28 U.S.C. § 1291. "Because the officers appeal from an ordinary denial of summary judgment on those claims, as opposed to a denial of immunity, that section of the order is not an appealable final judgment ..." *Liberal*, 632 F.3d at 1074.

Undeterred, the defendant in *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, once again attempted to appeal state law claims under the guise of qualified immunity. This Court did not take the bait. "We rejected an identical argument in [*Liberal*], in which we held that we lacked jurisdiction to entertain a defendant's interlocutory appeal that he was entitled to qualified immunity from a section 52.1 claim." *Johnson* at 1171. This court said, "[w]e cannot deviate from *Liberal'*s holding ... [n]or are we inclined to ..." *Id.* citation omitted.

Those cases are controlling here. Gregoire's causes of action based on state law are not reviewable in an appeal addressing only qualified immunity from federal claims. Indeed, the CHP makes no attempt to argue otherwise, ducking this jurisdictional issue entirely. *See*, AOB 3-4. Instead, it cites inapposite cases like *Reynolds v. Cty. of San Diego*, 84 F.3d 1162, 1164 (9th Cir. 1996) *overruled by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.

1997), claiming it mandates dismissal of Gregoire's cause of action under §

52.1. AOB 59. But, *Reynolds*, to the extent it is even still good law, involved

an appeal by the plaintiff in a case where summary judgment was **granted**.

Since it was an appeal from a final judgment rather than an interlocutory

appeal, there was no question the court had jurisdiction to analyze the §

52.1 claim. That issue was not even discussed.

Further, and contrary to the CHP's perfunctory argument, the

standard for finding qualified immunity and for fully disposing of Mr.

Gregoire's state law claims is not the same. In the case of an alleged

wrongful arrest, qualified immunity turns on whether a reasonable officer

would *believe* based on the facts present that there was probable cause to

arrest. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir.

2009). But, state law claims for assault and battery, false imprisonment, or

violations of the Bane Act cannot be defeated merely on a showing of

subjective belief. *See*, *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033,

1045 (2007) (noting that as to Bane Act claim based on lack of probable

cause, "[t]he arresting officer's actual motivations or beliefs should play no

role in the court's determination …")

The CHP's discussion of Mr. Gregoire's state law claims, and the district court's ruling on them, has no place in this appeal. Those issues are reserved for a final judgment following trial.

### B. **The law on Flores' arrest without probable cause and the use of excessive force during that arrest was clearly established**

Turning to qualified immunity, the appealable issue here "is a purely legal one: whether the facts alleged [by the plaintiff] support a claim of violation of clearly established law." *Jones*, 802 F.3d at 999 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 528, n. 9 (1985).) In deciding that, "clearly established law" should not be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Rather, the clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). The law does not require " 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, Mr. Gregoire alleges two violations of his rights under the Fourth Amendment: (1) a wrongful arrest without probable cause; and (2) the use of excessive force in the arrest. In both cases, the law is clearly established.

For the wrongful arrest claim, several California statutes unambiguously require the CHP—and all other law enforcement personnel—to consult with medical professionals at the scene of an accident before making decisions that affect patient care. Indeed, the very statute the CHP relies on to justify the arrest, Penal Code § 148, makes it a criminal offense to interfere with emergency medical personnel like Mr. Gregoire.

For the excessive force claim, the law is clearly established that: (1) use of force during an arrest where none is required is excessive under the Fourth Amendment; and (2) the tightening of handcuffs has been ruled to be excessive force. The CHP does not disagree, or even address that point; instead it simply argues Mr. Gregoire did not suffer permanent injuries from the handcuffs. (AOB 55-57.) As discussed later, that point is of little relevance.

    1.    **The law requiring consultation of medical personnel by public employees at the scene of an accident was clearly established at the time of Officer Flores' misconduct**

It is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). Under California law, "[p]obable cause exists when the facts known to the arresting officer would persuade someone of 'reasonable caution' that the person to be arrested has committed a crime." *People v. Espino*, 247 Cal. App. 4th 746, 758–59 (2016), quoting *People v. Celis*, 33 Cal. 4th 667, 673 (2004). But, where no specific criminal statute validly applies to the facts at hand, an arrest is not supported by probable cause. *Santopietro v. Howell*, No. 14-16324, 2017 WL 2261017, at *4 (9th Cir. May 24, 2017).

Here, the CHP asserts Gregoire's refusal to move the fire truck and leave violated Penal Code § 148(a) and Vehicle Code § 2800(a). (AOB 28.) Penal Code Section 148(a) criminalizes resisting or obstructing a "public officer, peace officer, or an emergency medical technician…" Vehicle Code section 2800(a) likewise provides that it is unlawful to willfully disobey a lawful order of a peace officer.

A key caveat, and the one fatal to the CHP here, however, is that both sections require a **lawful** order. There cannot be a violation of either section "unless the officer was acting lawfully at the time." *People v. Simons*, 42 Cal. App. 4th 1100, 1108–09 (1996). So, for example, a person cannot be arrested for violating section 148 because he evaded an officer's attempt to arrest him unlawfully. *Johnson*, 724 F.3d at 1178; *see also, Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007) (plaintiff cannot be lawfully arrested for resisting arrest under § 148(a) if there was no probable cause to arrest him for underlying offense); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 920 (9th Cir. 2001) (same). As Judge Curiel noted, "[i]t is not a crime to resist unlawful orders." AER 008, citing *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005).

In this case, the order by Officers Colunga and Flores for paramedic Gregoire to get in the fire truck and leave the scene was not lawful under established California law. Two separate California statutes say the authority for patient care at an accident scene is vested in the appropriate medically qualified personnel responding to the accident, not law enforcement. The first is Penal Code section 409.3, which reads:

Whenever law enforcement officers and emergency medical technicians are at the scene of an accident, management of the scene of the accident shall be vested in the appropriate law enforcement agency, whose representative **shall consult** with representatives of other response agencies at the scene to ensure that all appropriate resources are properly utilized. **However, authority for patient care management at the scene of an accident shall be determined in accordance with Section 1798.6 of the Health and Safety Code.**

For purposes of this section, "management of the scene of an accident" means the coordination of operations which occur at the location of an accident.

Cal. Penal Code § 409.3 (emphasis added). Section 1798.6 of the

Health and Safety Code, in turn, states:

(a) Authority for patient health care management in an emergency **shall be vested in that licensed or certified health care professional, which may include any paramedic or other prehospital emergency personnel, at the scene of the emergency who is most medically qualified specific to the provision of rendering emergency medical care.** If no licensed or certified health care professional is available, the authority shall be vested in the most appropriate medically qualified representative of public safety agencies who may have responded to the scene of the emergency.

\* \* \* \* \* \* \* \* \* \*

(c) Notwithstanding subdivision (a), authority for the management of the scene of an emergency shall be vested in the appropriate public safety agency having primary investigative authority. The scene of an emergency shall be managed in a manner designed to minimize the risk of death or health impairment to the patient and to other persons who may be exposed to the risks as a result of the emergency condition, and priority shall be placed upon the interests of those persons exposed to the more serious and immediate risks to life and health. **Public safety officials shall consult emergency**

27

> **medical services personnel or other authoritative health care professionals at the scene in the determination of relevant risks.**

Cal. Health & Safety Code § 1798.6 (a), (c) (emphasis added).

Both of these sections place health care professionals in charge of patient care at an accident scene and direct all responding personnel to manage the scene in a way that will "minimize the risk of death or health impairment to the patient …" Both sections also say law enforcement personnel managing an accident scene "shall consult" health care personnel to determine risks to the patients and to make sure "all appropriate resources are properly utilized."

These statutes are clearly established law. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established **statutory** or constitutional rights …' " *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015), quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (emphasis added). And, in "a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." *Pierce v. Multnomah Cty., Or.*, 76 F.3d 1032, 1038 (9th Cir. 1996).

This Court's decision in *Carlo v. City of Chino*, 105 F.3d 493, 496 (9th Cir. 1997) is on point. There, the defendant peace officer arrested the plaintiff on suspicion of driving while intoxicated and then repeatedly denied her request to make a telephone call from jail. This denial violated California Penal Code section 851.5, which provides arrestees the right to place a phone call.

In the qualified immunity portion of its opinion, the *Carlo* court held the right was clearly established because of the California statute. "In this case, [the defendant officer] cannot argue that he did not know that denying [the plaintiff] a telephone call was illegal. A California statute clearly provided that he should have permitted her up to three phone calls immediately upon being booked or at least within three hours thereof." *Carlo*, 105 F.3d at 500. *See also*, *Spruytte v. Walters*, 753 F.2d 498, 510–11 (6th Cir. 1985), *cert. denied,* 474 U.S. 1054 (1986) (holding that a violation of a state statute "is sufficient to cause officials to forfeit their qualified immunity" when the statute "provides the basis for the cause of action sued upon.")

The reasoning in *Carlo* holds true here as well. Penal Code section 148(a) and 490.3 and Health and Safety Code section 1798.6 establish the right of qualified medical personnel to be free from interference while administering patient care at the scene of an accident. Indeed, section 148(a) makes it a crime to obstruct an "emergency medical technician…" The language in section 148(a) relating to emergency medical technicians was added in 1987 (*see* Stats.1987, c. 257, § 1) and section 490.3 was enacted that same year (*see* Stats.1987, c. 257, § 2). And, the CHP has not argued a reasonable officer would be unaware of these statutes.

Those statutes also limit the lawful authority of peace officers such as Flores. And, this Court, as well as several other circuit courts, hold a public official is not entitled to qualified immunity when he or she engages in acts that are beyond his or her scope of authority. *See*, *e.g.*, *Shechter v. Comptroller of City of N.Y.*, 79 F.3d 265, 268–69 (2d Cir. 1996); *In re Allen*, 106 F.3d 582, 587 (4th Cir. 1997); *Rheaume v. Texas Dep't of Pub. Safety*, 666 F.2d 925, 930 (5th Cir. 1982); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992); *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987); *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995); *Gray v. Bell*, 712 F.2d

490, 502 n.36 (D.C. Cir. 1983); *Stanley v. Gallegos*, 852 F.3d 1210, 1214 (10th Cir. 2017).

The CHP may argue (although it has not so far done so) that under *Davis v. Scherer*, 468 U.S. 183 (1984), a state law cannot form the predicate for a clearly established constitutional right for qualified immunity purposes. But this argument has already been rejected by the court in *Carlo v. City of Chino*, and should likewise be rejected here if raised.

*Davis* held that officials sued for violations of constitutional rights "do not forfeit their immunity by violating some *other* statute or regulation." *Id.* at 194 n. 12 (emphasis in original). *Davis* was careful to point out, however, that in that case there was "no claim that the ... violation of the state regulation either [was] itself actionable under § 1983 or bears upon the claim of constitutional right that appellee asserts under § 1983." *Id.* at 193. It goes on to state that "[n]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—*unless that statute or regulation provides the basis for the cause of action sued upon.*" *Id.* at 194 n. 12. (emphasis added).

As the court in *Carlo* explained, *Davis* does not apply where the basis for the claim is provided by the statute. *Carlo v. City of Chino*, 105 F.3d at 501. In *Carlo*, it was Penal Code section 851.5; here it is Penal Code sections 148(a) and 490.3, and Health and Safety Code section 1798.6. Also, *Davis* did not concern an unlawful arrest, which, as mentioned previously, is analyzed under the applicable state law. *Pierce*, 76 F.3d at 1038.

At present, though, the CHP has not made that argument. Instead, the CHP contends that the law is not clearly established because "there is no guiding precedent clearly establishing the minimum levels of scene assessment and management activities that officers must meet under these statutes before they can decide whether any given scene justifies certain scene management orders." AOB 31. The CHP also argues, "there is no case law interpreting what it means for officers to 'consult' with medical staff." *Id.*

This argument fails for several reasons. First, the CHP does not explain how case law attempting to establish some minimum level of scene assessment or consultation would be helpful, or even possible. As the CHP itself admits, accident scenes vary. (AOB 32.) It is highly unlikely a court

could, or would even try to, carve out some preconceived level of assessment or consultation applicable to various different categories of accidents. The whole point of the statutes is to set out the appropriate decision-making hierarchy at an accident scene to avoid problems like the one the CHP created here. And when it comes to patient care issues, authority is vested in trained medical personnel like Mr. Gregoire, not the CHP.

Second, and more importantly, it does not matter if there is case law setting out minimum levels of consultation or assessment, because the CHP officers did not engage in **any** consultation with the medical personnel at this accident scene. Instead, Flores simply ordered Gregoire to move his truck after overhearing a similar request from Officer Coulnga, and arrested Gregoire when he refused. The extent of Officer Flores' consultation about patient care was to say, "I don't care about your patients, you need to move," AER 95, or "I don't care about the patients, I just want you to leave," AER 98, or "that's not my problem." (AER 92.)

Neither Officer Flores nor the CHP need a reported decision to tell them that saying "I don't care about your patients" is insufficient

33

consultation and assessment under Penal Code section 490.3 or Health and Safety Code section 1789.6. This is not a question of nuance where reasonable minds could differ about whether Flores satisfied the command that he "shall consult" with trained medical personnel. Flores' statements showed clear disregard of any concern for patient health or safety under any interpretation.

> 2. **The law concerning excessive force and tightening of handcuffs is clearly established and the CHP's reliance on lack of permanent physical injury is unavailing**

"It is well-established that overly tight handcuffing can constitute excessive force." *Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *see also*, *Meredith v. Erath*, 342 F.3d 1057, 1061, 1063–64 (9th Cir. 2003); *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000); *Palmer v. Sanderson*, 9 F.3d 1433, 1434–35 (9th Cir. 1993). The CHP does not argue this point, nor could it.

Instead, the CHP argues there was no excessive force, and so no Fourth Amendment violation. (AOB 55-57.) This argument suffers from many of the same defects infesting the CHP's other claims.

As before, rather than accepting Mr. Gregoire's version of events as true, the CHP once again urges this Court to credit its evidence over Mr.

Gregoire's, disputing at some length Gregoire's testimony that Flores

tightened the handcuffs. (*See*, AER 84[5].) Stripped of the CHP's

argumentative gloss, however, the essential facts are straightforward:

1. After Gregoire refused to move the fire truck and leave the

   scene, Flores ordered Gregoire to step over the K rails to be

   arrested (AER 83, 92, 194);

2. Gregoire did so without putting up any resistance (AER 83,

   92);

3. Flores did not perceive Gregoire to be any sort of threat to

   Flores (AER 88);

4. Nevertheless, Flores put Gregoire's hands behind his back and

   handcuffed him (AER 92);

5. Gregoire asked if they could just "work it out," but Flores

   declined (AER 92);

---

[5]   Q.   All right, what happened next?
      A.   Well, when we were to the side of the vehicle, I asked him if he
could loosen the handcuffs.
      Q.   All right, what, if anything, did he say in response?
      A.   He tightened them.

6. Gregoire then asked Flores if he could loosen the handcuffs and in response Flores tightened them (AER 84);

7. Gregoire later again asked if Flores could loosen the handcuffs because they were making Gregoire's wrists and shoulders "really hurt," and Flores ignored the request (AER 93);

8. Gregoire remained handcuffed in the back of Flores' car for roughly 30 minutes (AER 69, 93).

These facts show excessive force under the Fourth Amendment, i.e., they show the "force purposely or knowingly used against [Gregoire] was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

The Supreme Court has set out several factors that bear on the reasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473.

Analysis of those factors shows Judge Curiel's denial of qualified immunity to Flores on the excessive force claim was correct. Gregoire was completely compliant and offering no resistance. Flores did not perceive him to be any threat. And, Flores did not make any effort to temper the amount of force used even though asked to do so repeatedly. Simply stated, there was no need for handcuffs at all. As this Court has said on several occasions, where no force is needed, "*any* force used is constitutionally unreasonable." *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting *Lolli v. Cty. of Orange*, 351 F.3d 410, 417 (9th Cir. 2003).

Further, this Court has found excessive force under similar circumstances. For example, in *Palmer*, 9 F.3d 1433, a panel of the Ninth Circuit ruled that the district court properly denied qualified immunity on excessive force claim where an officer yanked out of a car 67–year-old Palmer who had mobility issues due to a recent stroke, "handcuffed him, and pushed him into the back seat of the patrol car with such force that Palmer fell over sideways. Palmer claims that the handcuffs were tight

enough to cause pain and discoloration to his wrists, and that [the officer] refused his request to loosen them." *Id.* at 1434–1435.

The court held this was a Fourth Amendment violation because the officer "has presented no evidence that would justify handcuffing Palmer so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after Palmer complained of the pain. Under these circumstances, no reasonable officer could believe that the abusive application of handcuffs was constitutional." *Id.* at 1436.

Here too, Officer Flores cannot offer any explanation as to why he would need to handcuff Gregoire or tighten handcuffs after being asked to loosen them. There is no justification for those actions.

The CHP brushes all this aside and focuses solely on the fact that Gregoire does not claim to have any permanent physical injuries from Flores' use of excessive force. But this has little bearing on the legal question of whether Flores' use of force was constitutionally excessive. The fact remains that no force was necessary at all here, and so any force was too much. *Green*, 751 F.3d at 1049. The CHP remains free to argue to the jury

that Mr. Gregoire's injuries from the violation are less than catastrophic, but that is not an issue for this Court.

For those reasons, and because the "determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases...," *Headwaters Forest Def. v. Cty. of Humboldt*, 240 F.3d 1185, 1205–06 (9th Cir. 2000), *cert. granted, judgment vacated on other grounds,* 534 U.S. 801 (2001), the district court was correct to deny qualified immunity on Mr. Gregoire's excessive force claim.

## CONCLUSION

The district court's order denying summary judgment on the claim of qualified immunity should be affirmed and the portion of this appeal involving Mr. Gregoire's state law claims should be dismissed. This Court does not have jurisdiction over the latter and Judge Curiel's ruling was correct on the former because there are disputed issues of material fact about what happened during the arrest and the law delineating responsibilities at an accident scene is clearly established.

## Certificate of Compliance

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font, and contains 8,157 words.


Dated:  June 16, 2017                    Respectfully Submitted,

Jeremy Robinson
CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD,
LLP


/s/   Jeremy Robinson
Jeremy Robinson, Esq.

## Statement of Related Cases

Appellee is not aware of any related cases currently pending in this

Court.


Dated:  June 16, 2017                    Respectfully Submitted,

                                         Jeremy Robinson
                                         Casey Gerry Schenk
                                         Francavilla Blatt & Penfield,
                                         LLP


                                         /s/   Jeremy Robinson
                                         Jeremy Robinson, Esq.

### **Certificate of Service**

I hereby certify that on June 16, 2017, I electronically filed the **Appellee's Brief** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. I certify that all participants in this appeal are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Executed this 16th day of June, 2017, at San Diego, California.


/s/   Jeremy Robinson