16-55286

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JACOB GREGOIRE,

                              Plaintiff-Appellee,

        v.

CALIFORNIA HIGHWAY PATROL, an
agency of the State of California; SERGIO
FLORES,

                    Defendants-Appellants.

On Appeal from the United States District Court
for the Southern District of California

No. 3:14-cv-01749-GPC-DHB
The Honorable Gonzalo P. Curiel,
United States District Judge

**APPELLANTS' REPLY BRIEF**

XAVIER BECERRA
Attorney General of California
KRISTIN G. HOGUE
Senior Assistant Attorney General
RICHARD F. WOLFE
Supervising Deputy Attorney General
DOUGLAS E. BAXTER
Deputy Attorney General
State Bar No. 201351
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  Telephone: (619) 738-9567
  Fax:          (619) 645-2581
  Email:  Douglas.Baxter@doj.ca.gov
*Attorneys for Defendants and Appellants*
*California Highway Patrol and Sergio*
*Flores*

# TABLE OF CONTENTS

**Page**

I.    The California Statues Cited By Mr. Gregoire Do Not Establish the Robust Consensus of Persuasive Authority Required To Show That a Right is Clearly Established ........... 1

    A.    Mr. Gregoire Misapplies the Holding in *Carlo v. City of Chino* ................................................................. 5

    B.    In the Context of This Case, Penal Code § 148(a) Does Not Constitute the Requisite Clearly Established Law .......................................................... 11

    C.    The Undisputed Material Facts Establish That Officer Flores Reasonably Believed He Was Giving Lawful Orders ................................................... 14

II.    This Court May Properly Review the District Court's Decision on the First Prong of the Qualified Immunity Analysis and Those State Law Claims That Are Interwoven with the Issue of Probable Cause to Arrest ......... 24

    A.    Both Tiers of the Qualified Immunity Question Can Be Reviewed in this Interlocutory Appeal ............ 24

    B.    Those State Law Claims that Depend on the Absence of Probable Cause for Arrest Are Logically Reversible on this Appeal if the Court Agrees That the District Court Erred on the First Tier of the Qualified Immunity Issue ........................... 25

CONCLUSION .......................................................................... 26

STATEMENT OF RELATED CASES ..................................... 27

CERTIFICATE OF COMPLIANCE ......................................... 28

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ames v. King County, Washington*
   846 F.3d 340 (9th Cir. 2017) ................................................................ 25

*Anderson v. Creighton*
   483 U.S. 635 (1987) .............................................................................. 10

*Ashcroft v. al-Kidd*
   563 U.S. 731 (2011) .............................................................................. 10

*Carlo v. City of Chino*
   105 F.3d 493 (9th Cir. 1997) ................................................... 4, 5, 6, 7, 9

*Davis v. Scherer*
   468 U.S. 183 (1984) ................................................................. 4, 6, 10, 11

*Krainski v. Board of Regents of Nevada System of Higher
   Education*
   616 F.3d 963 (9th Cir. 2010) ................................................................ 23

*Lacey v. Maricopa County*
   649 F.3d 1118 (9th Cir. 2011) .............................................................. 23

*National Ass'n of Home Builders v. Defenders of Wildlife*
   551 U.S. 644 (2007) .............................................................................. 13

*Pearson v. Callahan*
   555 U.S. 223 (2009) .............................................................................. 23

*Plumhoff v. Rickard*
   ___ U.S. __, 134 S. Ct. 2012,
   188 L. Ed. 2d 1056 (2014) .............................................................. 10, 24

*Professional Engineers in California Government v. Kempton*
   40 Cal. 4th 1016 (2007) ........................................................................ 13

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Bernard*
  623 F.2d 551 (9th Cir. 1980) ................................................................. 21

*United States v. Bertrand*
  926 F.2d 838 (9th Cir. 1991) ................................................................. 21

*United States v. Ramirez*
  473 F.3d 1026 (9th Cir. 2007) ............................................................... 21

**STATUTES**

United States Code, Title 42:

  § 1983 .................................................................................... *passim*

California Civil Code:

  § 52.1 ......................................................................................... 25

California Health and Safety Code:

  § 1798.6 ...................................................................... 8, 12, 13, 14

  § 1798.6(c) ............................................................................ *passim*

California Penal Code:

  § 148(a) ............................................................................ 3, 11, 12, 13

  § 409.3 .................................................................................. *passim*

  § 851.5 ................................................................................. 5, 6, 7

California Vehicle Code:

  § 2410 ...................................................................................... 12, 13

# TABLE OF AUTHORITIES
## (continued)

Page

CONSTITUTIONAL PROVISIONS

United States Constitution, Amendment IV ............................................ 1, 11

United States Constitution, Amendment XIV ................................................5

iv

Mr. Gregoire's brief confirms that he did not have a clearly established right to be free from arrest in the unique circumstances of this case. Because there are no decisions involving a similar fact pattern, Mr. Gregoire attempts to create a right by equating existing language in state statutes concerning medical care at the scene of an accident with a Fourth Amendment right not to be arrested. As discussed in this brief, the argument finds no support in the law.

The straightforward question in this case is whether there was existing precedent that established beyond debate that Officer Flores violated Mr. Gregoire's rights under the particular circumstances of this case. The straightforward answer is "no." Even if the answer was "maybe" or "possibly" – anything other than an unequivocal "yes" – qualified immunity applies. That Mr. Gregoire must work so hard to manufacture a right necessarily means the answer cannot be "yes." Summary judgment should therefore be entered in favor of Officer Flores.

## I. THE CALIFORNIA STATUES CITED BY MR. GREGOIRE DO NOT ESTABLISH THE ROBUST CONSENSUS OF PERSUASIVE AUTHORITY REQUIRED TO SHOW THAT A RIGHT IS CLEARLY ESTABLISHED

Unable to cite any case law guiding police officers in the scope of their emergency scene management authority under California Penal Code

§ 409.3 and California Health and Safety Code § 1798.6(c), Mr. Gregoire claims that these statutes themselves constitute the relevant clearly established law rendering Officer Flores' arrest decision unlawful. Mr. Gregoire's reasoning is as follows:

> (1) California Penal Code § 409.3 and California Health and Safety Code § 1798.6(c) place authority for patient health care management with medically qualified personnel at the scene of a traffic accident;

> (2) Regardless of the fact that both of these provisions provide peace officers with authority to manage the overall accident scene, the provisions direct law enforcement officers to "consult" with health care personnel to determine relative risks;

> (3) CHP Officers did not consult with health care professionals before Officer Flores commanded Mr. Gregoire to move the fire truck;

> (4) Without such consultation, Officer Flores's orders to move the fire truck could not be lawful under the clearly established language of California Penal Code § 409.3, and California Health and Safety Code § 1798.6(c);

2

(5)  If the orders were not lawful, Mr. Gregoire could not

have been in violation of California Penal Code § 148(a) or

California Vehicle Code § 2800(a);

(6)  Therefore, Officer Flores lacked probable cause to

arrest Mr. Gregoire.

(Appellee's Answering Brief, Ninth Circuit ECF Doc. 30, pp. 32-41[1].)

Fundamental to Mr. Gregoire's argument is the contention that

California Penal Code § 409.3 and California Health and Safety Code §

1798.6(c) can constitute clearly established law in the abstract, regardless of

the absence of any interpretive case law on the level of "consultation"

needed before a peace officer can determine that fire trucks in lanes are

causing a serious hazard and need to be moved.  To get to this conclusion,

Mr. Gregoire has to rely on two postulates, both of which are in error.

First, Mr. Gregoire contends that California Penal Code § 409.3 and

California Health and Safety Code § 1798.6(c) establish the requisite federal

constitutional or statutory right upon which he bases his claim in this case.[2]

---

[1] All citations to ECF documents are to the page numbers assigned by
the Court's ECF system.

[2] Appellants will also discuss in Section I(B) below Mr. Gregoire's
reliance on California Penal Code § 148(a) as the source of clearly
established law making the arrest unlawful.

3

For this contention, Mr. Gregoire relies on the holding of *Carlo v. City of Chino*, 105 F.3d 493 (9th Cir. 1997) to try overcome the rule in *Davis v. Scherer*, 468 U.S. 183 (1984) that alleged violations of state statutes do not overcome qualified immunity where the state statutes are not the source of actionable rights under 42 U.S.C. § 1983. (Appellee's Answering Brief, pp. 35-39.) In subsection A below, a review of *Carlo* shows that it is inapposite to California Penal Code § 409.3 and California Health and Safety Code § 1798.6(c).

Second, Mr. Gregoire argues there is no need for guiding case law on the meaning of California Penal Code § 409.3 and California Health and Safety Code § 1798.6(c) because the record below showed no CHP officers conducted any "consultation" with health care officials. (Appellee's Answering Brief, pp. 39-40.) Appellants will explain in subsection (C) below that Mr. Gregoire offered no dispute to the fact that Officer Colunga engaged in several conversations with health care personnel about the scene and the need to move firetrucks. Mr. Gregoire also did not dispute that Officer Flores became aware of essential elements of these conversations by overhearing Officer Colunga talking to firefighters. Mr. Gregoire therefore distorts the record in his Answering Brief when he states that no CHP officers consulted with health care personnel.

4

The key issue for purposes of qualified immunity is that there is no guiding case law stating that the collective actions and observations of the CHP officers in assessing the scene, talking to firefighters about the lack of need for the firetrucks in lanes, and making public safety orders about scene management were insufficient to constitute "consultation" within the meaning of California Penal Code § 409.3 and California Health and Safety Code § 1798.6(c).

### A.   Mr. Gregoire Misapplies the Holding in *Carlo v. City of Chino*

The case of *Carlo v. City of Chino* is distinguishable from the present case.  The *Carlo* Court was faced with the question of whether the state statutory right under California Penal Code § 851.5 to place three telephone calls after being arrested gave rise to a protected liberty interest under the procedural due process component of the Fourteenth Amendment to the United States Constitution.  *Carlo*, 105 F.3d at 496.  The Court noted that a claim under 42 U.S.C. § 1983 requires proof of a violation of a <u>federal</u> statutory or constitutional right.  *Carlo*, 105 F.3d at 497.  The plaintiff in *Carlo* argued that violation of the state statute violated a federal constitutional right.  *Id.* at 497.

5

After examining multiple cases on liberty interests of pretrial detainees, arrestees, and prisoners, the *Carlo* Court concluded that California Penal Code § 851.5 created a liberty interest, the deprivation of which constituted a basis for a suit under 42 U.S.C. § 1983 for violation of federal procedural due process. *Carlo*, 105 F.3d at 499-500. Turning to the question of whether this right was clearly established law, the *Carlo* Court observed that "[i]t was not sufficient to simply say that the right was clearly established by the California statute. [T]he statute is relevant, however, in determining whether Carlo's constitutional right was clearly established." *Carlo*, 105 F.3d at 501. However, the key to the analysis was the fact that the statute provided a liberty interest which was the basis of the plaintiff's lawsuit.

To explain its conclusion, *Carlo* cited the rule from *Davis v. Scherer*, 468 U.S. at 194 n.12, that officials sued for violation of constitutional rights do not lose their qualified immunity defense simply because they are alleged to have violated some separate statute or regulation. *Carlo*, 105 F.3d at 501. The *Carlo* Court then stated the exception to this rule:

> *Davis* was careful to point out, however, that in that case there was "no claim that the . . . violation of the state regulation either [was] itself actionable under § 1983 or bears upon the claim of constitutional right that appellee asserts under § 1983." 468 U.S. at 193. It goes on to state that "neither federal nor state officials lose their immunity by violating the clear command of a

6

> statute or regulation - of federal or of state law - *unless*
> *that statute or regulation provides the basis for the*
> *cause of action sued upon*." *Id*. at 194 n.12 (emphasis
> added).  "State law may bear upon a claim under the
> Due Process Clause when the . . . interests protected by
> the Fourteenth Amendment are created by state law." *Id*.
> at 193 n.11.  Here, the California statute was the basis
> for Carlo's claim and thus bears on whether the federal
> right (procedural protection of the state-defined
> constitutional liberty right) was clearly established.

*Carlo*, 105 F.3d at 501.

The *Carlo* Court then explained that California Penal Code section 851.5 provides a right directly to an arrestee to make three phone calls immediately upon booking or within three hours of arrest, subject only to a case of physical impossibility.  *Carlo*, 105 F.3d at 502.  The statute mandated such action with only limited discretion to the officer to deny the phone calls.  Since it was clearly established that state laws creating liberty interests are protected by federal procedural due process, the *Carlo* Court denied the defense of qualified immunity where the plaintiff was denied the right to make the phone calls.  *Id.* at 502.

*Carlo* is inapposite because it dealt with a state statute that expressly afforded a right of constitutional dimension directly to the arrestee.  Since the state statute provided a liberty interest of federal constitutional dimension directly to the arrestee, she was able to sue under 42 U.S.C. §

7

1983 for its deprivation. While the state statute did not itself constitute clearly established law, it created a liberty interest that was of the type for which there was clearly established procedural due process protection.

Here, Mr. Gregoire assumes, without citation to binding authority or analogous case law, that California Penal Code § 409.3 and California Health and Safety Code § 1798.6(c) afford him a protected federal constitutional right to engage in care of patients at the scene of a traffic accident. They do not. Nothing in the statutes is intended to give fire fighters or other personnel any specific interests that could constitute liberty or property interests.

To be sure, California Penal Code § 409.3 reads:

Whenever law enforcement officers and emergency medical technicians are at the scene of an accident, management of the scene of the accident shall be vested in the appropriate law enforcement agency, whose representative shall consult with representatives of other response agencies at the scene to ensure that all appropriate resources are properly utilized. However, authority for patient care management at the scene of an accident shall be determined in accordance with Section 1798.6 of the Health and Safety Code.

For purposes of this section, "management of the scene of an accident" means the coordination of operations which occur at the location of an accident.

California Health and Safety Code § 1798.6 provides, in relevant part:

8

(a)  Authority for patient health care management in an emergency shall be vested in that licensed or certified health care professional, which may include any paramedic or other prehospital emergency personnel, at the scene of the emergency who is most medically qualified specific to the provision of rendering emergency medical care.  If no licensed or certified health care professional is available, the authority shall be vested in the most appropriate medically qualified representative of public safety agencies who may have responded to the scene of the emergency.

. . . .

(c)  Notwithstanding subdivision (a), authority for the management of the scene of an emergency shall be vested in the appropriate public safety agency having primary investigative authority.  The scene of an emergency shall be managed in a manner designed to minimize the risk of death or health impairment to the patient and to other persons who may be exposed to the risks as a result of the emergency condition, and priority shall be placed upon the interests of those persons exposed to the more serious and immediate risks to life and health. Public safety officials shall consult emergency medical services personnel or other authoritative health care professionals at the scene in the determination of relevant risks.

Unlike the statute in *Carlo* (which expressly provided arrestees with the right to make three phone calls), nothing in the above-quoted statutes provides any rights or interests (especially anything of federal constitutional dimension) directly to emergency personnel at the scene of a traffic accident. Mr. Gregoire cannot show that, by virtue of the above-quoted statutes, he held a constitutional property or liberty interest at the scene of this traffic accident to engage in patient care.

9

Thus, even assuming that Officer Flores failed to sufficiently "consult" with health care professionals before giving orders to move a fire truck, this alleged violation of California Penal Code § 409.3 and California Health and Safety Code § 1798.6(c) would not be a basis for a suit for violation of federal constitutional rights. It follows that these statutes cannot provide the clearly established law showing Officer Flores violated Mr. Gregoire's constitutional rights. "Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation — of federal or of state law — unless that statute or regulation provides the basis for the cause of action sued upon." *Davis v. Scherer*, 468 U.S. at 194 n.12.

In order to violate clearly established law, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). While this does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question **beyond debate.**" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added). Clearly established law must come from clear "'controlling authority' or a 'robust consensus of cases of persuasive authority.'" *Plumhoff v. Rickard*, ___ U.S. __, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 741-742).

10

The key issue here is that neither statute has been interpreted by any courts, much less interpreted in a such a way as to clearly establish a right to be free from arrest under the particular circumstances facing Officer Flores.

**B.    In the Context of This Case, Penal Code § 148(a) Does Not Constitute the Requisite Clearly Established Law**

Mr. Gregoire argues that Officer Flores violated clearly established law because California Penal Code § 148(a) prohibits not only interference with peace officer activities but also prohibits obstruction of an emergency medical technician.  (Appellant's Answering Brief, p. 37.)  Mr. Gregoire posits that, by arresting Mr. Gregoire, Officer Flores necessarily interfered with Mr. Gregoire's clearly established right (as an emergency medical technician) to engage in patient care.

This argument is both flawed and a red herring.  Regardless of whether California Penal Code § 148(a) criminalizes interference with emergency medical technicians, it does not create any federal constitutional right to engage in medical care that can be enforced under 42 U.S.C. § 1983.  Accordingly, under *Davis v. Scherer*, 468 U.S. at 194 n.12, California Penal Code § 148(a) does not create clearly established law showing that Mr. Gregoire's arrest was unreasonable within the meaning of the Fourth Amendment.

11

Mr. Gregoire's argument about Penal Code § 148(a) also misses the point. The question is simply whether Officer Flores was on notice that his arrest of Mr. Gregoire violated a clearly established right to be free from arrest. Officer Flores's authority for accident scene management is found in California Vehicle Code § 2410,[3] California Penal Code § 409.3, and California Health and Safety Code § 1798.6(c). Mr. Gregoire relies upon the "consultation" requirement in the latter two statutes as the basis for claiming that Officer Flores lacked authority to order Mr. Gregoire to move the fire trucks. However, California Penal Code § 148(a) does not speak to that issue. The provision does not limit a peace officer's authority under California Vehicle Code § 2410, California Penal Code § 409.3, and California Health and Safety Code § 1798.6(c) to manage the placement of emergency vehicles at the scene of a traffic accident – and to enforce management decisions.

Mr. Gregoire seems to be arguing that Penal Code § 148(a) takes emergency medical technicians outside the scope of people over whom a

---

[3] California Vehicle Code § 2410 provides: "Members of the California Highway Patrol are authorized to direct traffic according to law, and, in the event of a fire or other emergency, or to expedite traffic or insure safety, may direct traffic as conditions may require notwithstanding the provisions of this code."

12

peace officer can exercise authority at the scene of a traffic accident. Yet, one cannot derive that interpretation from review of the scene-management statutes. If California Penal Code § 409.3 and California Health and Safety Code § 1798.6 are to have any effectiveness in their directive that law enforcement authorities are responsible for overall management of incident scenes, then such authority necessarily includes the ability to give orders to emergency medical staff on such issues as vehicle placement.

True, California Penal Code § 148(a) criminalizes willful resistance, delay, or obstruction of both peace officers and emergency medical technicians. However, this does not constitute an immunity for emergency medical technicians against the authority that the California Legislature has given peace officers over management of emergency vehicle placement under California Vehicle Code § 2410, California Penal Code § 409.3, and California Health and Safety Code § 1798.6(c). Such a construction of California Penal Code § 148(a) would effectively repeal the scene management statutes by implication. Absent clear legislative directions or irreconcilable conflicts, such construction of statutes is improper under both federal and state law. *See National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-663 (2007); *Professional Engineers in California Government v. Kempton*, 40 Cal. 4th 1016, 1038 (2007).

13

### C. The Undisputed Material Facts Establish That Officer Flores Reasonably Believed He Was Giving Lawful Orders

Mr. Gregoire argues that "CHP officers did not engage in any consultation with medical personnel at the accident scene." (Appellee's Answering Brief, p. 40.) However, this argument proceeds from the false premise that "consultation" means something different that what is shown by the undisputed facts.

Concessions that Mr. Gregoire made on the record below reveal that it is undisputed that CHP officers were engaging in contacts with medical staff, were making informed analysis of the risks at the scene, and were giving commands intended to fulfill their mission under California Penal Code § 409.3 and California Health and Safety Code § 1798.6 to protect public safety. Mr. Gregoire makes no attempt to address the importance of the collective knowledge, observations, and analysis of the officers on the scene and the fact that Officer Flores both overheard key interactions between Officer Colunga and the fire fighters and made his own informed scene assessment before giving orders.

The factual discussions on pages 17 through 29 and 42 through 56 of Appellants' Opening Brief thoroughly support these key points. The factual discussions are based on citations to both Appellants' and Appellee's

14

separate statements of undisputed material facts. Where disputes are said to exist (e.g., whether the ambulance was protruding into the Number 1 lane and whether certain witnesses believed that one of the CHP officers never consulted with anyone), the Opening Brief demonstrates that the nature of each dispute raised by Mr. Gregoire is either not material, is based on misstatement of the evidence on which Mr. Gregoire relies, is based on inadmissible evidence, or all of the above. (See, e.g., Appellants' Opening Brief, pp. 17-28 & 46-49, 55, nn. 3-5, 7-13, 18-19, & 22.)

The undisputed material facts demonstrate that Officers Colunga and Flores had objectively reasonable grounds for perceiving there was sufficient medical staff (independently of Mr. Gregoire and even his entire crew) to take care of the patients. The officers had objectively reasonable grounds for concluding that the relative risks of having the fire trucks parked in lanes outweighed any conflicting opinions that Mr. Gregoire or others might have had about the potential benefit of keeping the fire truck in lanes. The officers also had objectively reasonable grounds for concluding they had scene command authority under various statutes that imposed on the officers the duty to manage the scene for the safety of the entire public.

Officer Flores had an objectively reasonable basis for believing his orders were lawful and that Mr. Gregoire was refusing to comply, accepting

15

as true Mr. Gregoire's claims that (1) he played some role in patient care, (2) he was told to drive the fire truck back to the station, (3) that Officer Flores did not personally discuss patient needs with medical officials, and (4) that part of the ambulance was protruding into the Number 1 lane.

Mr. Gregoire also accuses Appellants of distorting the record through alleged failure to discuss the declarations of witnesses on the question of whether Officer Flores ever consulted with medical staff. (AOB at 19 n.4; AER 95, 100.)

Review of the record below plainly shows that Appellants have not distorted anything, nor have they tried to obscure information from declarations. While Mr. Gregoire faults Appellants for only discussing the declaration of Autumn Mitchell on page 19 of Appellants' Opening Brief, Mr. Gregoire fails to recognize that this was the only evidence he cited on the point under discussion. To be sure, on page 19 of the Appellants' Opening Brief, Appellants made the following point:

> Based on the presence of the ambulance crew, Officer Colunga concluded that sufficient medical care was on scene for the two occupants of the rollover vehicle, so he moved on to engage in other scene management and investigation activities.

In support of these facts, Appellants cited AER 105, Fact 18, and AER 182, ¶ 7.) Then, in footnote 4, Appellants refuted Mr. Gregoire's reliance on

16

the following statement by witness Autumn Mitchell in her declaration:

"While at the scene, I never heard the CHP officer ask about the condition of

the patients or consult about how long or how many men were needed to

help the two patients."  Appellants' focused their refutation solely on this

statement because that was the only evidence cited by Mr. Gregoire in his

effort to challenge Fact 18.  Specifically, Mr. Gregoire stated only the

following in response to Fact 18:

> Disputed.  Independent witness Autumn Mitchell in her
> declaration stated that no CHP officer at the scene ever asked
> about the condition of the patients or consulted about how long
> the firemen were going to need to help the two patients.  Decl. of
> Autumn Mitchell, p. 2:13-15.

(AER 51, Fact 18.)

Appellants were responding to the evidence on which Mr. Gregoire was

relying for his alleged dispute of Fact 18.  Mr. Gregoire made no mention of

any statements from other declarations; yet, he now accuses Appellants of

obfuscation.  Notably, Mr. Gregoire relied solely on the declaration of

Autumn Mitchell to try to raise a dispute on other facts related to Officer

Colunga's efforts to consult with firefighters and patients.  (AER 55, Facts

41 & 42.)  Mr. Gregoire never mentioned any other declarations to challenge

Officer Colunga's efforts to consult with medical staff and patients.

17

Even if Mr. Gregoire had cited the declarations that he now references on this issue, it is clear that they suffer from the same flaws as does the Mitchell declaration on the question of whether Officer Colunga consulted with medical staff and patients. First, on pages 26 through 27 of his Answering Brief, Mr. Gregoire now cites to the declaration of Justin Hutton. Mr. Hutton testified only as follows:

> 6. There was one patient standing, one on the ground and I watched Jacob "Jake" Gregoire tending to patient # 1 with other EMTs, preparing the C-spine for transfer to the gurney. Jake was fully engaged in the care of patient # 1 when a Latino CHP officer approached Jake Gregoire and arrested him, putting him in handcuffs. Jake was hands-on, 100 percent directly involved with patient care when he was placed under arrest by the CHP officer. The gurney was in the low position prior to packaging and moving the patient when this occurred. After the arrest, I was alone with the second patient for about 10 minutes.

> 7. The Latino CHP officer never consulted with any firemen or EMT's about the status of the patient care before affecting [sic] this arrest. Jake Gregoire told CHP, "I am treating patients here" when the CHP officer said, "I don't care about your patients, you need to move." I was stunned by this statement. The CHP officer most certainly delayed and obstructed care of both patients by arresting firefighter Gregoire at the scene. During the conversation, the CHP officer ordered the fireman to take the truck back to the fire station.

(AER 95, ¶¶ 6 & 7, lns. 4-18.)

Just like the Mitchell declaration, the Hutton declaration refers solely to the arresting officer, which would have been Officer Flores. Mr. Gregoire

18

spins this declaration in his Answering Brief to claim that neither Officer Colunga nor Officer Flores ever consulted with medical staff. Once again, however, Mr. Gregoire hopes this Court will assume that "consultation" means something different than what occurred. And there is no evidence that any CHP officer ignored medical personnel. To the contrary, Mr. Gregoire was arrested after "consulting" with CHP officers – and refusing lawful orders to move his truck out of the zone of danger.

The other declaration which Mr. Gregoire now cites for the first time on the issue of whether any officer ever consulted with medical staff is the declaration of Joshua Rees. (Appellee's Answering Brief, pp. 26-27, citing AER 100.) The Rees declaration only states the following on the matter: "Equally troubling was the fact that the CHP officer never consulted with any of the paramedics or firefighters/EMTS prior to arresting Jake Gregoire." (AER 100, ¶ 7, lns. 20-22.) Again, this does not contradict Officer Colunga's observations or the fact that he engaged in multiple discussions with medical staff and the patients on scene management issues.

Paragraph 7 of the Hutton declaration was cited by Mr. Gregoire in response to the undisputed fact that Officer Flores saw paramedics providing medical care to the vehicle occupants. (AER 59, Fact 61.) Mr. Gregoire did not dispute Fact 61; rather, he simply offered as "additional facts" the claim

19

that "Flores did not consult with any medical personnel or firefighters about the status of patient care." (AER 59, Fact 61.)

Considering all three declarations as if they were admissible evidence[4], they do not undermine the many scene observations, analysis, and consultation actions that Officer Colunga performed at the accident scene. These undisputed actions are discussed on pages 52 through 56 of Appellants' Opening Brief. Even assuming that Officer Flores never directly discussed patient needs with firefighters, and even assuming he said he did not care about patients, the collective information and actions of Officer Colunga and Officer Flores show that communication occurred and that both officers formed the belief that sufficient medical care was available even without Mr. Gregoire's participation.

It bears repeating that, under the collective knowledge rule, Officer Colunga's information must be considered in support of Officer Flores's conclusions that his orders were lawful and that he had probable cause to arrest Plaintiff for refusing to comply. "[A]n arresting officer need not have

---

[4] Appellants renew the evidentiary objections they raised in footnote 19 on page 48 of their Opening Brief. The declarations are incompetent to show that Officer Flores never consulted with any medical staff because they lack foundational facts to reveal that Ms. Mitchell, Mr. Hutton, or Mr. Rees were watching Officer Flores at all times.

personal knowledge of the facts indicating probable cause; rather, an arresting officer may rely on the collective knowledge of the other officers involved in the case." *United States v. Bertrand*, 926 F.2d 838, 844 (9th Cir. 1991). The collective knowledge of officers cooperating in an investigation/scene management must be considered, even if not all of that information was communicated to the officer who ultimately made the arrest. *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007). The rule does not require a briefing among officers before an arrest. As *Ramirez* explains, there is a limited requirement "that there be a communication but not necessarily the conveyance of any actual information among the officers." *Id.* at 1032-1033.

Here, Officer Flores responded to the same accident and was working together with Officer Colunga to manage and investigate the scene. As noted above and in the Appellants' Opening Brief, Officer Colunga communicated significant information that Officer Flores heard and relied upon. All of Officer Colunga's observations, knowledge, and actions (*see* Appellants' Opening Brief, pp. 52-55) must therefore be imputed to Officer Flores for supporting the lawfulness of the orders and probable cause. *United States v. Bernard*, 623 F.2d 551, 560-561 (9th Cir. 1980).

Contrary to Mr. Gregoire's conclusory argument that Officer Flores simply walked on the scene and gave orders to move trucks without any investigation or thought, the undisputed material facts set forth on pages 42 through 50 of the Appellants' Opening Brief show substantial scene analysis by Officer Flores and his reliance on what he heard Officer Colunga tell the firefighters. Mr. Gregoire violated orders from both Officer Colunga and Officer Flores to move the fire trucks. Officer Flores witnessed firefighters violating Officer Colunga's orders and subsequently Officer Flores's orders.

Thus, under the totality of the circumstances, it was objectively reasonable for both Officer Colunga and Officer Flores to believe that the scene had been thoroughly assessed, that sufficient consultation with firefighters, other medical staff, and patients had occurred, and that there were legitimate public safety reasons for ordering the firetrucks to be moved. The officers had objectively reasonable grounds for perceiving there was sufficient medical staff (independently of Mr. Gregoire and even his entire crew) to take care of the patients. The officers had objectively reasonable grounds for concluding that the relative risks of having the fire trucks parked in lanes outweighed any conflicting opinions that Mr. Gregoire or others might have had about the potential benefit of keeping the fire truck in lanes. The officers also had objectively reasonable grounds for

22

concluding they had scene command authority under various statutes that imposed on the officers the duty to manage the scene for the safety of the entire public.

However, even if one believes Officer Flores was mistaken, he is still entitled to qualified immunity. Where an officer is mistaken about the existence of probable cause to arrest, the officer is still entitled to qualified immunity if the mistake was reasonable. *Krainski v. Board of Regents of Nevada System of Higher Education*, 616 F.3d 963, 969 (9th Cir. 2010) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991). "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

> Under qualified immunity, an officer is protected from suit when he or she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). The standard leaves "ample room for mistaken judgments." *Id.* at 343.

*Lacey v. Maricopa County*, 649 F.3d 1118, 1131 (9th Cir. 2011).

II. **THIS COURT MAY PROPERLY REVIEW THE DISTRICT COURT'S DECISION ON THE FIRST PRONG OF THE QUALIFIED IMMUNITY ANALYSIS AND THOSE STATE LAW CLAIMS THAT ARE INTERWOVEN WITH THE ISSUE OF PROBABLE CAUSE TO ARREST**

A. **Both Tiers of the Qualified Immunity Question Can Be Reviewed in this Interlocutory Appeal**

Mr. Gregoire argues that Appellants improperly challenge the District Court's finding of disputed issues of fact on the question of whether Officer Flores had probable cause to arrest Mr. Gregoire. (Appellee's Answering Brief, p. 9.) Mr. Gregoire's argument lacks merit. Even though the primary issue in this appeal is whether Mr. Gregoire can meet the burden to show violation of clearly established law, this Court can also review whether the District Court erred on the first question of qualified immunity analysis. *See Plumhoff v. Rickard,* ____ U.S. ___, 134 S. Ct. 2012, 2019 (2014) (holding that appellate courts may review both tiers of the qualified immunity analysis). Federal appellate courts "may adjudicate 'legal' interlocutory appeals; that is, [they] may properly review a denial of qualified immunity where a defendant argues . . . that the facts, even considered in the light most favorable to the plaintiff, show no violation of a constitutional right, or no violation of a right that is clearly established in law." *Ames v. King County, Washington*, 846 F.3d 340, 347 (9th Cir. 2017). The denial of both tiers of the qualified immunity claim is reviewed de novo, with the facts and

24

reasonable inferences from those facts considered in the light most favorable to the non-moving party. *Id.* at 347.

**B.** **Those State Law Claims that Depend on the Absence of Probable Cause for Arrest Are Logically Reversible on this Appeal if the Court Agrees That the District Court Erred on the First Tier of the Qualified Immunity Issue**

If this Court determines that the District Court erred in finding genuine disputes of material fact on the existence of probable cause for the arrest, then it follows that the state law claims under California Civil Code § 52.1 and for false imprisonment must inevitably fail without further need for factual resolution. Appellants have demonstrated in their Opening Brief that, even assuming resolution of the limited genuine disputed material facts in Mr. Gregoire's favor, the District Court still erred in finding that Officer Flores lacked probable cause to arrest Mr. Gregoire. (Appellants' Opening Brief, pp. 59-65.) Since there was probable cause for the arrest, the California Civil Code § 52.1 claim cannot prevail as a matter of law. (*See* Appellants' Opening Brief, p. 69.) The same is true for the false imprisonment claim. (*See* Appellants' Opening Brief, pp. 69-70.) Mr. Gregoire's argument that these matters are not before the Court in incorrect.

## CONCLUSION

Defendants and Appellants California Highway Patrol and Sergio Flores respectfully ask this court to reverse the district court's denial of summary judgment and remand with instruction to enter judgment in favor of California Highway Patrol and Sergio Flores on all claims.

Dated:  August 11, 2017          Respectfully submitted,

                                 XAVIER BECERRA
                                 Attorney General of California
                                 KRISTIN G. HOGUE
                                 Senior Assistant Attorney General
                                 RICHARD F. WOLFE
                                 Supervising Deputy Attorney General


                                 /S/ DOUGLAS E. BAXTER
                                 DOUGLAS E. BAXTER
                                 Deputy Attorney General
                                 *Attorneys for Defendants and Appellants California Highway Patrol and Sergio Flores*

SD2016700257
81780930.doc

26

16-55286

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JACOB GREGOIRE,

                    Plaintiff-Appellee,

        v.

CALIFORNIA HIGHWAY PATROL, an
agency of the State of California; SERGIO
FLORES,

                    Defendants-Appellants.

**STATEMENT OF RELATED CASES**

To the best of our knowledge, there are no related cases.

Dated: August 11, 2017          Respectfully submitted,

                              XAVIER BECERRA
                              Attorney General of California
                              JONATHAN L. WOLFF
                              Chief Assistant Attorney General
                              KRISTIN G. HOGUE
                              Senior Assistant Attorney General
                              RICHARD F. WOLFE
                              Supervising Deputy Attorney General


                              /S/ DOUGLAS E. BAXTER
                              DOUGLAS E. BAXTER
                              Deputy Attorney General
                              *Attorneys for Defendants and Appellants*
                              *California Highway Patrol and Sergio Flores*

27

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-55286

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [5,563] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2)☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [        ]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [        ] words or [        ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant /s/ Douglas E. Baxter     Date August 11, 2017

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev. 12/1/16)*

## CERTIFICATE OF SERVICE

Case Name:   **Gregoire v. CHP et al**          No.   **16-55286**

I hereby certify that on **August 11, 2017**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**APPELLANTS' REPLY BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 11, 2017**, at San Diego, California.

|  |  |
| --- | --- |
| J. L. Hall | Signature |
| Declarant | |

SD2016700257
81780898.doc